1  Juli E. Farris (SBN 141716)
   Derek W. Loeser
2  KELLER ROHRBACK, L.L.P.
   1201 Third Avenue, Suite 3200
3  Seattle, Washington 98101
   Telephone: (206) 623-1900
4  Facsimile: (206) 623-3384
   jfarris@kellerrohrback.com
5
6  Attorneys for Plaintiffs
   *Additional Counsel on Signature Page*
7

8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10

11  RICHARD WOOL, on behalf of the Sitrick and
    Company Employee Stock Ownership Plan,          No. ___ **CV 10-02741** JHN
12                                                                          PJWx
                     Plaintiff,                     **COMPLAINT**
13          v.

14  MICHAEL S. SITRICK and NANCY SITRICK,
    husband and wife; THE MICHAEL AND
15  NANCY SITRICK TRUST, a trust; RELIANCE
    TRUST COMPANY, a Georgia corporation;
16

17                   Defendants,

18  SITRICK AND COMPANY, INC., a California
    corporation; SITRICK AND COMPANY
19  EMPLOYEE STOCK OWNERSHIP PLAN;

20                   Nominal Defendants.

21

22

23

24          Plaintiff Richard Wool, on behalf of the Sitrick and Company Employee Stock

25  Ownership Plan, alleges as follows.

26

COPY

1                                                              Complaint

## PARTIES

1.      Plaintiff Richard Wool is a resident of New York, and was employed by Defendant Sitrick and Company from April 2001 until May 2004. Plaintiff Wool was and is a participant in the Sitrick and Company Employee Stock Ownership Plan (the "ESOP") and maintained an ESOP account containing employer securities through October 2009. As such, Plaintiff Wool has standing to pursue this action.

2.      Defendant Michael S. Sitrick ("Sitrick") is an individual residing in Pacific Palisades, California. At all relevant times, Sitrick was the founder and Chief Executive Officer of Sitrick and Company, Chairman of the Board of Directors, and trustee for the ESOP. Defendant Nancy Sitrick (hereinafter sometimes referred to as "Nancy") is the wife of Defendant Sitrick and upon information and belief, was an officer and director of Sitrick and Company. At all times referred to herein, Sitrick and Nancy were acting in the furtherance of their own interests and the interests of their marital community.

3.      Defendant Michael and Nancy Sitrick Trust ("Sitrick Trust") is a trust formed on or about March 26, 1996, in which Michael and Nancy Sitrick are and were, at all times referred to herein, the trustees and beneficial owners of all trust assets.

4.      Defendant Reliance Trust Company ("Reliance") is a Georgia corporation whose headquarters are in Atlanta, Georgia and is engaged in the business of providing trust and fiduciary services, *inter alia*.

5.      Nominal Defendant Sitrick and Company Employee Stock Ownership Plan ("ESOP") is an employee stock ownership plan governed by ERISA and established by SCI on or about March 1, 1999. The Sitrick ESOP has been joined as a Nominal Defendant so

Complaint

1   that complete relief can be accorded among the existing parties and without subjecting

2   Defendants to incurring multiple or otherwise inconsistent obligations.

3        6.        Nominal Defendant Sitrick and Company, Inc. ("SCI") is a California

4   corporation whose headquarters are in Los Angeles, California, and is engaged in the business

5   of public relations and crisis communications.  In 2009, the assets of SCI were acquired by

6   Sitrick Brincko Group, LLC, which in turn was acquired by Resources Connection, Inc. of

7   Irvine, California (NASDAQ, RECN).   SCI has been joined so that complete relief can be

8   accorded among the parties and so that SCI may assert any interest that it may have in these

9   proceedings.

10

11                          **JURISDICTION AND VENUE**

12       7.        Plaintiff brings this action seeking legal and equitable relief for violation of

13  The Employee Retirement Income Security Act ("ERISA") §§ 404, 406, and 408.  29 U.S.C.

14  §§ 1104, 1106, and 1108.  This Court has jurisdiction over these claims pursuant to 28 U.S.C.

15  § 1331 and § 502 of ERISA, 29 U.S.C. § 1132.

16       8.        ERISA provides that an ERISA plan participant or beneficiary has standing to

17  bring a civil action under ERISA § 502, 29 U.S.C. § 1132(a), when that person "is or may

18  become eligible to receive a benefit of any type from an employee benefit plan."  ERISA §

19  3(7), 29 U.S.C. § 1002(7).

20

21       9.        Plaintiff brings these claims in his capacity as a plan participant under 29

22  U.S.C. § 1132(a)(2), on behalf of the ESOP as a whole to recover appropriate relief under

23  ERISA § 409(a), 29 U.S.C. § 1109(a), including restoration to the ESOP of any losses to the

24  plan resulting from ERISA violations and any profits of each fiduciary that have been

25  accumulated through use of the assets of the plan by the fiduciary and such other equitable or

26

Complaint

1   remedial relief as the Court may deem appropriate under ERISA § 502(a)(3), 29 U.S.C. §

2   1132(a)(3), including constructive trust, that will redress violations and enforce the provisions

3   of ERISA.

4       10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C.

5   § 1132(e)(2) because this is the District where the Plan is administered, where the breach took

6   place and where Defendants Sitrick, Nancy Sitrick, and the Sitrick Trust reside or may be

7   found.

8                                    **FACTUAL BACKGROUND**

9       11.     In 1989, Sitrick founded SCI to engage in the business of providing strategic

10  communication services to public and private companies, government agencies, and high

11  profile individuals in need of financial, transactional, and crisis communications.  Sitrick has

12  served as the company Chairman of the Board of Directors and Chief Executive Officer since

13  inception.

14      12.     According to the SCI website, virtually since its inception, SCI has been

15  ranked either the number one or the number two strategic public relations firm in the United

16  States by Inside PR Magazine.

17      13.     Sitrick has been quoted in the wire services as stating that historically over the

18  last 20 years, SCI has done well in almost any type of economy and "that in a good economy,

19  our Company does well, and in a bad economy, it does better."

20      14.     As of 2007, SCI had offices in five cities (Los Angeles, Miami, Santa Clara,

21  New York, and San Francisco), with over 70 employees.

22      15.     Effective on or about March 1, 1999, SCI established the ESOP and the

23  Employee Stock Ownership Trust ("ESOT") to provide stock ownership to eligible

Complaint

employees.  The ESOP is a stock bonus plan qualified under § 401(a) of the Internal Revenue Code of 1986 as amended and is an employment stock ownership plan as defined under ERISA.

16.     Sitrick was the sole shareholder of SCI prior to the formation of the ESOP.

17.     At the time of formation of the ESOP, the SCI Board of Directors, controlled by Sitrick, appointed Sitrick as the sole trustee of the ESOP.

18.     Thereafter, upon information and belief, SCI authorized a new class of shares designated as Class B shares with rights to non-cumulative discretionary dividends.

19.     Upon information and belief, SCI then issued 1,702,400 shares of Class B stock to Sitrick as the sole shareholder of the Company.

20.     Effective on or about March 1, 1999, Sitrick sold 1,702,400 shares of Class B stock to the ESOP for a total purchase price of approximately $15,321,600 or $9.00 per share. After the ESOP stock purchase, the ESOP owned 24.32% of the total equity in SCI through its Class B shares, while Sitrick owned 75.68% of the total equity through his Class A shares.

21.     To finance the stock purchase, SCI borrowed the amount of the purchase price from a financial institution and loaned it to the ESOP.  The ESOP paid Sitrick for the Class B shares and executed and delivered to SCI a promissory note payable in installments of principal and interest (referred to as the "ESOP loan").  The ESOP's promissory note was secured by Class B shares.

22.     Pursuant to ERISA and applicable regulations of the Department of Labor, SCI was required to make annual contributions to the ESOP (which were tax deductible) to enable the ESOP to meet its principal and interest payments to SCI.  To the extent SCI issued

Complaint

discretionary dividends to the ESOP pursuant to the Class B shares, said dividends were also available to pay down the promissory note.

23.    Upon information and belief, the total equity of SCI exceeded the sum of $60 million in or about March 1999.

24.    In determining the value of the Class B shares purchased by the ESOP, none of the assets owned or used by SCI, nor any part of its income stream, were declared or treated as personal goodwill of Sitrick and deducted from the valuation.

25.    After the stock purchase transaction was completed, Sitrick reported for publication in the media that SCI had recorded a 75% growth in revenue in 1997 and a 60% growth in 1998, and that the ESOP had been set up to reward the staff and "give employees of the firm a chance to share not only what we created in the past, but what we will create in the future." Adam Leyland, *Crisis firm Sitrick Sells Interest to Staff Stock Plan,* PR Week US, Mar. 15, 1999. Sitrick also reported that the firm's ESOP advisors had said the benefits to the firm's employees were among the most generous they had ever seen. *Id.*

26.    For the Plan year ending December 31, 2000, the gross value of Plan assets rose from $15,321,600 to $17,364,480, and the value per share rose from $9.00 to $10.20 per share.

27.    Upon information and belief, SCI continued to prosper and grow between 2001 and 2008. For the year ending December 31, 2008, SCI reported over $22.5 million in total revenues with adjusted Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA") of over $10.1 million.

28.    Despite the profitability and growth of the Company, as well as the reduction of the ESOP indebtedness each year, the ESOP reported to its participants and beneficiaries a

decline in the value of Plan assets and share value virtually every year from 2001 through 2008.

29.     As a result, the gross value of Plan assets declined from a reported high of approximately $17.36 million in 2000, to a reported low of approximately $1.7 million in 2008, despite the fact that the original ESOP indebtedness of approximately $15.3 million was almost fully repaid by December 31, 2008.

30.     The disappearance of almost 90% of the ESOP's original fair market value in the 1999 stock repurchase was neither coincidence nor the result of market risk.  Rather, it was the result of self-dealing by Sitrick and breach of his fiduciary duties as trustee of the ESOP.

A.     **Personal Goodwill Transaction.**

31.     During the years 2000 through 2004, SCI received offers to purchase the Company assets or stock at purchase prices at or above $60 million.  Sitrick disclosed these offers to certain SCI management level employees, but indicated that he wanted to receive in the ballpark of $100 million before he would agree to sell the Company.

32.     Upon information and belief, Sitrick thereafter decided that the ESOP would receive too much from the future sale of the Company and conceived a plan to misappropriate and transfer to himself, certain of the corporate assets through its income stream.

33.     To effectuate his plan, Sitrick for the first time declared SCI's income stream the result of "personal goodwill" that Sitrick would license SCI to employ in its business.  Sitrick defined his "personal goodwill" as intangible assets comprising Sitrick's personal business relationships, reputation, contacts with public figures, referral networks, and media contacts (hereinafter referred to as the "Personal Goodwill").

Complaint

34.     Upon information and belief, between 2004 and 2008, Sitrick entered into a verbal or written royalty agreement with SCI under which SCI was granted the nonexclusive and revocable right to use Sitrick's Personal Goodwill in consideration for an annual royalty payment to Sitrick to be agreed upon annually (hereinafter referred to as the "Personal Goodwill Transaction").

35.     The Personal Goodwill Transaction was a conflicted transaction in which Sitrick acted in both his individual capacity and in his corporate capacity as SCI Chief Executive Officer and Director in approving the Transaction and in agreeing to the annual royalty payments.

36.     Sitrick concealed the Personal Goodwill Transaction and the royalty payments from SCI employees and ESOP participants.  These facts were not discovered until 2009 when SCI's financial statements for December 31, 2008, and June 30, 2009 (unaudited), were filed with the Securities Exchange Commission by Resources Connection, Inc. ("Resources") as part of a Form 8k filing.

37.     These financial statements revealed that Sitrick caused SCI to expend $3,400,000 for the year ended December 31, 2008, and $2,683,000 for the six month period ended June 30, 2009, as the royalty due for use of the Personal Goodwill.

38.     The Personal Goodwill Transaction was an improper misappropriation and diversion of corporate assets and the royalty payments and/or royalty obligations constituted the payment of excessive and unreasonable compensation and/or improper dividends to Sitrick.

Complaint

39.     Sitrick in his capacity as a corporate officer and director of SCI, never objected to the Personal Goodwill Transaction nor took any legal or other action to protect the interests of the Company and all of its shareholders.

40.     Sitrick in his capacity as ESOP Trustee never objected to the Personal Goodwill Transaction nor took any legal or other action to protect the interests of the ESOP.

41.     The Personal Goodwill Transaction substantially diluted the value of SCI's assets and employer securities owned by the ESOP.

**B.     2008 Stock Repurchase Transaction**

42.     In 2007 and 2008, Sitrick engaged in discussions with representatives of Resources regarding its interest in acquiring SCI in a merger and acquisition transaction. During that period, SCI and Resources shared their respective financial information and, upon information and belief, Resources made a formal or informal offer to purchase the SCI assets or stock for an unknown sum exceeding $70 million.

43.     Upon information and belief, during these discussions Sitrick conceived the plan to purchase all of the ESOP's stock in SCI for a fraction of its fair market value and thereafter to sell the SCI assets and his Personal Goodwill to Resources for a sum approaching $90 million or more.

44.     To carry out his plan, Sitrick caused the SCI Board of Directors to engage Defendant Reliance as an independent fiduciary for the ESOP to consider and approve the sale of all of the ESOP's Class B shares in SCI to the Sitrick Trust and to engage an unknown financial advisor to prepare a valuation and/or fairness opinion to support the Transaction.

45.     At a date unknown but prior to December 31, 2008, Sitrick had transferred all of his Class A shares in SCI to the Sitrick Trust.  Thus, after the proposed stock repurchase

Complaint

transaction, the Sitrick Trust would own and control 100% of SCI Class A and Class B shares issued and outstanding.

46.     In connection with the due diligence by Reliance and its financial advisor, Sitrick intentionally failed to disclose information or made false or misleading statements of facts which were material to the fairness of the proposed Transaction and the fair market value of the ESOP's Class B shares.  By reason of such omissions and/or false or misleading statements, Defendants Sitrick and Nancy Sitrick were **de facto discretionary fiduciaries for the Stock Repurchase Transaction, by omission or misrepresentation.**

47.     Specifically, Sitrick failed to disclose or misrepresented the substantial offers to purchase SCI made by multiple companies since 2000, the formal or informal offers to acquire SCI made by Resources in 2007 and 2008, and the conflicts and prohibited transaction in which Sitrick engaged with respect to the Personal Goodwill Transaction.

48.     Reliance and its financial advisor failed to make a careful and prudent investigation of the circumstances prevailing at the time of the proposed Stock Repurchase Transaction and failed to determine in good faith the fair market value of the ESOP's Class B shares.

49.     Instead, Reliance and its financial advisor assumed that the Personal Goodwill Transaction was contractual, valid, and binding and determined that the ESOP's Class B shares had a total aggregate value of only $1.04 per share or approximately $1.7 million.

50.     Because the ESOP owned approximately 23.8% of all SCI shares issued and outstanding on a pre-transaction basis, this meant that Sitrick, Reliance, and the financial advisor had determined and/or approved a total implied value for 100% of the Company equity in the amount of approximately $7.23 million.

51.     This represented a reduction in the value of Class B shares from $15.3 million in 1999 to $1.7 million in 2008 (a 90% reduction) and a reduction in the value of 100% of the Company equity from approximately $63 million in 1999 to approximately $7.2 million in 2008 (a 87.5% reduction), **despite the fact that Sitrick had received offers to purchase SCI in excess of $60 million from in or about 2000 through 2008.**

52.     Upon information and belief, Sitrick persuaded Reliance and their financial advisor to assume that Sitrick's Personal Goodwill represented approximately 89.5% of the SCI income stream and therefore any valuation utilizing the SCI income stream should be treated approximately 89.5% as the property of Sitrick and 10.5% as the property of SCI for purposes of valuing the ESOP's Class B shares.

53.     The valuation of the ESOP's Class B shares was a colossal understatement of the fair market value of employer securities.

54.     In the 2008 Stock Repurchase Transaction, the ESOP received far less than adequate consideration in this prohibited transaction between the ESOP and parties in interest.

55.     In 2009, Sitrick caused the ESOP to make distributions to participant accounts, including Plaintiff's, based upon the value realized from the 2008 Stock Repurchase Transaction.

56.     After the 2008 Stock Repurchase Transaction was completed, the Sitrick Trust owned 100% of all of the equity of SCI.

57.     During the period January 2009 through July 2009, Sitrick continued and completed his negotiations for the acquisition of SCI assets by Resources.  This was to be accomplished in a complex three party transaction involving SCI, Resources, and Brincko Associates, Inc. ("Brincko").

Complaint

58.     First, SCI and Brincko merged to create Sitrick Brincko Group, LLC, a Delaware limited liability company with Brincko owning 52.02% of the member interests and SCI owning 47.98% of the member interests, **but exclusive of Sitrick's Personal Goodwill which was allocated 89.5% of the value of the SCI income stream.**

59.     At a later date, SCI and Brincko sold their membership interests in Sitrick Brincko Group LLC to Resources, and Sitrick sold his Personal Goodwill to Resources.

60.     In the Resources acquisition reported in October 2009, Sitrick and the Sitrick Trust received cash, Resources stock and an earn-out arrangement with an aggregate estimated value in excess of $92 million for the sale of the Personal Goodwill and the member interests in Sitrick Brincko Group, LLC.  By agreement, Resources and Sitrick allocated approximately $87.4 million to the purchase of Sitrick's Personal Goodwill, and only approximately $5 million to the purchase of the SCI assets.

61.     In a public conference call hosted by Resources on October 30, 2009, to explain the acquisition of SCI and Brincko, Resources' representatives indicated that the purchase price including the earn out payments were based upon a value for SCI representing 7 times the SCI adjusted EBITDA of approximately $11 million.  In response to an analyst question regarding how long Resources due diligence process had taken before this transaction was announced, Resources' President and Chief Operating Officer Tony Cherbak stated: "We'd been talking to Mike [Sitrick] for over two years.  And we've been looking at each other's businesses for over two years."  Mr. Cherbak further stated "Mike has had offers before to sell out at a much higher price."

62.    Upon learning of these illegal transactions, and based on the investigation of public facts and circumstances regarding the transactions at issue, Plaintiff filed suit to recover losses on behalf of the ESOP and all of its participants and beneficiaries.

## CLAIMS FOR RELIEF

## COUNT I

### AGAINST DEFENDANTS MICHAEL S. SITRICK, NANCY SITRICK, AND RELIANCE TRUST COMPANY VIOLATION OF § 404 OF ERISA, 29 U.S.C. § 1104

63.    Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64.    Pursuant to § 404 of ERISA, 29 U.S.C. § 1104, a fiduciary with respect to a qualified retirement plan is required to discharge his duties solely in the interests of the participants and beneficiaries of the plan and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use for the conduct of an enterprise of like character with like aims.

65.    Defendants Sitrick and, upon information and belief, his wife Nancy, were each conflicted ERISA fiduciaries that acted with discretionary authority in structuring, approving, and executing the Personal Goodwill Transaction and the Stock Repurchase Transaction, which personally benefitted them to the extreme detriment of the ESOP.

66.    Defendant Reliance was an ERISA fiduciary who acted with discretionary authority in approving and closing the 2008 Stock Repurchase Transaction.

67.    Defendant Sitrick, in his capacity as a corporate director and ESOP trustee, breached his fiduciary duties to the ESOP in the following respects.

Complaint

a. By failing to object to the Personal Goodwill Transaction which diluted the value of the ESOP's stock interest;

b. By failing to act prudently on the basis of his knowledge of the proposed Personal Goodwill Transaction to prevent same;

c. By directing and approving the prohibited Personal Goodwill Transaction;

d. By failing to obtain an ESOP appraisal and/or fairness opinion before approving the prohibited Personal Goodwill Transaction;

e. By failing to at least temporarily remove himself as corporate director and ESOP trustee and appoint an independent person to serve in connection with considering and/or approving the prohibited Personal Goodwill Transaction;

f. By failing to bring suit against himself for breaching his fiduciary duties and engaging in a prohibited transaction with respect to the Personal Goodwill Transaction;

g. By failing to bring suit against himself for failing to pursue offers to sell the Company prior to December 2008;

h. By omitting to disclose to Reliance material information and/or making false or misleading statements of fact which were material to the proper determination of financial fairness and adequate consideration to be received by the ESOP in the 2008 Stock Repurchase Transaction;

i. By directing Reliance and its financial advisor to assume that the Personal Goodwill Transaction was contractual, valid and binding, and that the ESOP equity in SCI was equal to only 10.5% of the SCI income stream;

j. By causing the ESOP to engage in the 2008 Stock Repurchase Transaction without disclosing the pending Resources' offers to purchase and before any transaction with Resources would be consummated;

k. By failing to discharge his duties solely in the interests of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and

l. By violating the terms of the ESOP Plan and Trust documents.

68.     Defendant Reliance acted imprudently and breached its fiduciary duties to the ESOP in the following respects:

a. By failing to conduct a prudent investigation of the Personal Goodwill Transaction in light of its impact upon the 2008 Stock Repurchase Transaction;

b. By failing to question the validity of the Personal Goodwill Transaction;

c. By agreeing to assume that the Personal Goodwill Transaction was contractual and binding upon the ESOP;

d. By causing the ESOP to approve the Stock Repurchase Transaction upon terms that were unfair to the ESOP and that did not constitute adequate consideration under all prevailing circumstances;

e. By failing to negotiate with Sitrick over the terms of the Stock Repurchase Transaction;

f. By causing the ESOP to receive substantially less than fair market for its SCI shares;

g. By failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims;

h. By failing to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries;

i. By knowingly undertaking to conceal Sitrick's breaches of fiduciary duty with respect to Personal Goodwill Transaction and the 2008 Stock Repurchase Transaction;

j. By failing to make reasonable efforts to remedy Sitrick's breaches in the Personal Goodwill Transaction; and

k. By failing to initiate suit against Sitrick on behalf of the ESOP with respect to the Personal Goodwill Transaction.

69.    Upon information and belief, Defendant Nancy Sitrick, in her capacity as a corporate director of SCI and ESOP fiduciary, breached her fiduciary duties to the ESOP in the following respects:

a. By omitting to disclose to Reliance and its financial advisor information and/or making false or misleading statements of fact which were material to a proper determination of the financial fairness and adequate consideration to be received by the ESOP in the 2008 Stock Repurchase Transaction;

b. By directing Reliance and its financial advisor to assume that the Personal Goodwill Transaction was contractual, valid, and binding, and that the ESOP's equity in SCI was equal to only 10.5% of the SCI income stream; and

c. By causing the ESOP to engage in the 2008 Stock Repurchase Transaction without disclosing the pending Resources' offers to purchase and before any transaction with Resources would be consummated.

70.     Pursuant to § 409 of ERISA, 29 U.S.C. § 1109, Defendants are jointly and severally liable to make good to the ESOP any losses of the ESOP resulting from each breach and to disgorge to the ESOP any and all profits generated from their wrongdoing.

71.     As a direct and proximate result of Defendants' breaches of fiduciary duty, the ESOP has been damaged in an amount to be determined at or before trial.

## COUNT II

**AGAINST DEFENDANTS MICHAEL S. SITRICK,
NANCY SITRICK, AND THE MICHAEL AND NANCY SITRICK TRUST
VIOLATION OF §§ 406 AND 408 OF ERISA, 29 U.S.C. §§ 1106 AND 1108**

72.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

73.     Pursuant to § 406 of ERISA, 29 U.S.C. § 1106, transactions between a plan and a party in interest or a fiduciary are prohibited, and a fiduciary is prohibited from dealing with the assets of the plan for his own interests or for his own accounts unless the transactions are exempt as set forth in § 408 of ERISA, 29 U.S.C. § 1108.

74.     The Goodwill Purchase Transaction and the 2008 Stock Repurchase Transaction were prohibited transactions between a plan and parties in interest, as defined in § 406 of ERISA, 29 U.S.C. § 1106.

75.     Defendant Sitrick and, and upon information and belief, his wife Nancy, were ERISA fiduciaries who engaged in the prohibited Personal Goodwill Transaction.

76.     Defendants Reliance, Sitrick, and upon information and belief, Nancy, were ERISA fiduciaries who engaged in the prohibited 2008 Stock Repurchase Transaction.

77.     At all relevant times, Defendants Sitrick, Nancy Sitrick, and the Sitrick Trust were parties in interest to the prohibited transactions as defined in § 3(14) of ERISA, 29 U.S.C. § 1002(14).

78.     By engaging in the acts and transactions set forth hereinabove, Defendants Reliance, Sitrick, Nancy, and the Sitrick Trust failed to make a careful and independent investigation of the circumstances prevailing at the time of each sale or purchase and caused the ESOP to approve transactions that were for less than adequate consideration and were unfair to the ESOP from a financial point of view.

79.     Each of said transactions were not exempt prohibited transactions under § 408 of ERISA, 29 U.S.C. § 1108.

80.     Pursuant to §§ 406 and 408 of ERISA, 29 U.S.C. §§ 1106 and 1108, Defendants are jointly and severally liable to make good to the ESOP any losses of the ESOP resulting from each breach and to disgorge to the ESOP any and all profits generated from their wrongdoing.

81.     As a direct and proximate result thereof, the ESOP has been damaged in an amount to be determined at or before trial.

## COUNT III

### AGAINST DEFENDANTS MICHAEL S. SITRICK, NANCY SITRICK, AND RELIANCE TRUST COMPANY

82.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

Complaint

83.     Pursuant to § 405 of ERISA, 29 U.S.C. § 1105, ERISA fiduciaries are also liable as co-fiduciaries with respect to a transaction where they participated knowingly in each other's fiduciaries breaches and/or knowingly undertook to conceal such breaches and/or failed to make reasonable efforts to remedy such breaches.

84.     Defendants Sitrick and Nancy Sitrick are liable as co-fiduciaries for each other's breaches regarding the Personal Goodwill Transaction and the Stock Repurchase Transaction, as each participated knowingly in the other's fiduciary breaches, each knowingly undertook to conceal the other's fiduciary breaches, and each failed to make a reasonable effort to remedy the other's fiduciary breaches.

85.     By turning a blind eye to the obvious deficiencies in the Goodwill Transaction and assuming without reasonable basis that the Personal Goodwill Transaction was contractual, valid, and binding, Reliance Trust Company is liable as a co-fiduciary for the breaches of Defendants Sitrick and Nancy Sitrick regarding the Stock Repurchase Transaction as it participated knowingly in their fiduciary breaches, knowingly undertook to conceal their fiduciary breaches, and failed to make a reasonable effort to remedy their fiduciary breaches.

86.     Defendants Sitrick and Nancy Sitrick are liable as co-fiduciaries for the Reliance Trust Company's fiduciary breaches regarding the Stock Repurchase Transaction, as each participated knowingly in the Reliance Trust Company's fiduciary breach, each knowingly undertook to conceal the Reliance Trust Company's fiduciary breaches, and each failed to make a reasonable effort to remedy the Reliance Trust Company's fiduciary breaches.

Complaint

## COUNT IV

### AGAINST DEFENDANT
### THE MICHAEL AND NANCY SITRICK TRUST
### EQUITABLE REMEDIES
### § 502(a)(3) OF ERISA, 29 U.S.C. § 1132(a)(3)
### § 409(a), 29 U.S.C. § 1109(a)

87.     Plaintiff repeats and realleges each of the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants Sitrick, Nancy, and/or the Sitrick Trust must disgorge the wrongful benefits which they received from their involvement in ERISA violations and all profits derived from the improper use of the Plan's assets.

89.     Alternatively, Defendants Sitrick and Nancy Sitrick transferred all or part of their wrongful benefits and profits derived from their ERISA violations to the Sitrick Trust.

90.     The Sitrick Trust received transfer of such assets without payment of any consideration and with knowledge that such assets had been obtained as part of a breach of fiduciary duties and prohibited transaction in violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106.  As a result, the Sitrick Trust was not a bona fide purchaser for value.

91.     A constructive trust remedy is available under the catchall relief provisions of both ERISA §§ 409(a) and 502(a)(3).  *Amalgamated Clothing & Textile Workers Union v. Murdock,* 861 F.2d 1406, 1431 (9th Cir. 1988); *Johnson v. Couturier,* 572 F.3d 1067 (9th Cir. 2009).

92.     This remedy may be imposed in favor of plan participants against fiduciaries who were personally enriched by these wrongful acts as well as against their assignees of the

wrongful assets who were not bona fide purchasers for value. *Harris Trust and Savings Bank v. Salomon, Smith, Barney,* 530 U.S. 238 (2000).

93.     As a proximate result thereof, Plaintiff is entitled to the imposition of a constructive trust against Defendants Sitrick, Nancy, and the Sitrick Trust with respect to all assets and profits obtained from the Personal Goodwill Transaction, the 2008 Stock Repurchase Transaction, and the 2009 Resources acquisition, in violation of ERISA and all profits derived therefrom.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     That judgment be granted against Defendants Michael S. Sitrick, Nancy Sitrick, Reliance Trust Company, and The Michael and Nancy Sitrick Trust, jointly and severally, to restore to the ESOP all losses resulting from their breaches of fiduciary duty and co-fiduciary liability under ERISA, plus prejudgment interest;

B.     That judgment be granted against Michael S. Sitrick, Nancy Sitrick, Reliance Trust Company, and The Michael and Nancy Sitrick Trust, jointly and severally, to restore to the ESOP all losses resulting from Defendants' engagement and participation in a prohibited transaction under ERISA, plus prejudgment interest;

C.     That the Court order each of the Defendants to disgorge and restore to the ESOP all profits which have been generated as a result of the Resources acquisition or otherwise;

D.     That the Court impose a constructive trust upon any amounts by which any of the Defendants were unjustly enriched at the expense of the ESOP as a result of the breaches of fiduciary duty or prohibited transactions alleged herein;

Complaint

E.      That the Court award Plaintiff his reasonable attorney fees and expenses, pursuant to 29 U.S.C. § 1132(g) and other applicable law;

F.      That the Court award Plaintiff his costs pursuant to 29 U.S.C. § 1132(g); and

G.      That the Court grant such further equitable relief to which Plaintiff or the ESOP may be entitled, whether or not otherwise specifically demanded pursuant to Fed.R.Civ.P. 54(C).

DATED: April 14, 2010.


KELLER ROHRBACK, LLP


By:
Juli E. Farris
Derek W. Loeser
1201 Third Avenue, Suite 3200
Seattle, Washington 98101


KELLER ROHRBACK, P.L.C.
Gary D. Greenwald
Gary A. Gotto
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile:  (602) 248-2822
ggreenwald@krplc.com
ggotto@krplc.com
Of Counsel

Attorneys for Plaintiffs

22                                          Complaint