1  JAMES J. BROSNAHAN (CA SBN 34555)
   JBrosnahan@mofo.com
2  PAUL FLUM (CA SBN 104424)
   PaulFlum@mofo.com
3  GEORGE C. HARRIS (CA SBN 111074)
   GHarris@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000; Facsimile: 415.268.7522
6
   Attorneys for Defendants
7  MICHAEL S. SITRICK, NANCY SITRICK, and the
   MICHAEL AND NANCY SITRICK TRUST
8
   GREGORY A. GARBACZ (CA SBN 167007)
9  ggarbacz@klinedinstlaw.com
   CONNIE M. ANDERSON (CA SBN 210286)
10 canderson@klinedinstlaw.com
   KLINEDINST PC
11 777 South Figueroa Street, 47th Floor
   Los Angeles, California  90017
12 Telephone: 213.607.2115; Facsimile: 213.607.2116
13 Attorneys for Defendants
   MICHAEL S. SITRICK and NANCY SITRICK
14
15              UNITED STATES DISTRICT COURT
16              CENTRAL DISTRICT OF CALIFORNIA
17
   RICHARD WOOL and ALAN MAYER,        Case No. CV10-02741 JHN (PJWx)
18 on behalf of the Sitrick and Company
   Employee Stock Ownership Plan,
19                                      **SITRICK DEFENDANTS'**
                 Plaintiffs,            **NOTICE OF MOTION AND**
20                                      **MOTION TO DISMISS THE**
         v.                             **FIRST AMENDED COMPLAINT;**
21                                      **SUPPORTING MEMORANDUM**
   MICHAEL S. SITRICK and NANCY         **OF POINTS AND AUTHORITIES**
22 SITRICK, husband and wife; THE
   MICHAEL AND NANCY SITRICK           Date:    August 2, 2010
23 TRUST, a trust; RELIANCE TRUST      Time:    2:00 p.m.
   COMPANY, a Georgia corporation,     Ctrm:    790
24                                     Judge:   Hon. Jacqueline H. Nguyen
                 Defendants.
25
   SITRICK AND COMPANY, INC., a
26 California corporation; SITRICK AND
   COMPANY EMPLOYEE STOCK
27 OWNERSIHP PLAN,
28               Nominal Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 2, 2010, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Jacqueline H. Nguyen, located at the United States District Court, Western – Roybal Division, 255 East Temple Street, Los Angeles, California, Defendants Michael S. Sitrick, Nancy Sitrick, and the Michael and Nancy Sitrick Trust (collectively, the "Sitrick Defendants") will and hereby do move the Court pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' First Amended Complaint ("FAC").

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the concurrently filed Request for Judicial Notice and supporting Declaration of James J. Brosnahan, the reply brief that the Sitrick Defendants anticipate filing, and any other written or oral argument presented by the Sitrick Defendants to the Court.

Pursuant to Local Rule 7-3, counsel for the Sitrick Defendants conferred telephonically with plaintiffs' counsel regarding the substance of this motion on June 14, 2010.  The parties were unable to resolve their differences.

Dated:  June 21, 2010

GREGORY A. GARBACZ
CONNIE M. ANDERSON
KLINEDINST PC

Attorneys for Defendants
MICHAEL S. SITRICK and
NANCY SITRICK

JAMES J. BROSNAHAN
PAUL FLUM
GEORGE C. HARRIS
MORRISON & FOERSTER LLP

By: _____*/s/ James J. Brosnahan*_____
          James J. Brosnahan
     Attorneys for Defendants
     MICHAEL S. SITRICK, NANCY
     SITRICK, and the MICHAEL AND
     NANCY SITRICK TRUST

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................i

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION ..............................................................................................1

STATEMENT OF FACTS ................................................................................2

    Michael Sitrick and the Company He Founded ............................................2

    Mr. Sitrick Establishes the ESOP for the Benefit of Employees. .................3

    The 2008 "Stock Repurchase Transaction"...................................................4

    The So-Called "Goodwill Transaction" .........................................................5

    Mr. Sitrick Sells the Company to Resources.................................................5

ARGUMENT .....................................................................................................6

I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 404 (COUNT I). .............7

    A.    Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim Based On The Repurchase Transaction. ........................................7

         1.    Mr. And Ms. Sitrick Were Not ERISA Fiduciaries With Respect To The Repurchase Transaction....................................7

         2.    The Alleged Misrepresentations And Omissions By Mr. And Ms. Sitrick Do Not Support An ERISA Breach Of Fiduciary Duty Claim. .................................................8

    B.    The Goodwill Transaction Is Not Actionable Under Section 404......12

         1.    Mr. And Ms. Sitrick Were Not ERISA Fiduciaries With Respect To The Goodwill Transaction. ....................................12

         2.    Plaintiffs Fail To Allege A Breach Of Fiduciary Duty By Mr. Or Ms. Sitrick As To The Goodwill Transaction. .............15

         3.    Plaintiffs Do Not Allege Facts Showing That The Goodwill Transaction Resulted In Losses To The Plan. ..........17

    C.    Plaintiffs Fail To Establish That Ms. Sitrick Had Any Involvement In Or Knowledge Of The Challenged Transactions. .....18

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER ERISA SECTION 406 (COUNT II). ..........................................................18

    A.    The Section 406(a) Claim Fails As A Matter Of Law. ......................19

         1.    The Goodwill Transaction Is Not Actionable Because It Was Not Caused By A Plan Fiduciary And Did Not Involve The Plan Or Plan Assets. .............................................19

         2.    The Sitrick Defendants Are Not Liable As Fiduciaries Or Parties In Interest To The Repurchase Transaction.................21

    B.    The Section 406(b) Claim Fails As A Matter Of Law.......................24

III.   PLAINTIFFS FAIL TO STATE A CO-FIDUCIARY CLAIM UNDER ERISA SECTION 405 (COUNT III). .........................................24

IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE
      RELIEF (COUNT IV). ..........................................................................25

CONCLUSION ........................................................................................25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3    CASES

4

*Akers v. Palmer*,
5        71 F.3d 226 (6th Cir. 1995) .............................................................................13

6

*Andrade v. Parsons Corp.*,
7        No. CV83-3344 RJK,
        0090 WL 757367 (C.D. Cal. June 21, 1990)...................................................7, 16
8

9    *Ashcroft v. Iqbal*,
        129 S. Ct. 1937 (2009)..................................................................................*passim*
10

*Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers and Employees of*
11      *Outside Local Unions and Dist. Counsel's Pension Plan*,
        404 F. Supp. 2d 145 (D.D.C. 2005)....................................................................21
12

13   *Bd. of Trs., Basic Crafts Workers' Comp. Benefits Trust Fund v. Siemers*,
        No. C-10-0731EMC,
14      2010 U.S. Dist. LEXIS 44784 (N.D. Cal. May 6, 2010)....................................20
15

*Bell Atl. Corp. v. Twombly*,
16      550 U.S. 544 (2007).......................................................................................6, 11
17

*Benaoud v. Hodgson*,
18      578 F. Supp. 2d 257 (D. Mass. 2008)................................................................14
19

*Blaw Know Ret. Income Plan v. White Consol. Indus., Inc.*,
20      998 F.2d 1185 (3d Cir. 1993) .........................................................................9, 14
21

*Cal. Pub. Employees Retirement Sys. v. Chubb Corp.*,
22      394 F.3d 126 (3d Cir. 2004) ................................................................................9
23

*Crowley v. Corning, Inc.*,
        234 F. Supp. 2d 222 (W.D.N.Y. 2002)...............................................................18
24

25   *Cunha v. Ward Foods, Inc.*,
        804 F.2d 1418 (9th Cir. 1986) ...........................................................................13
26

*DeFazio v. Hollister, Inc.*,
27      636 F. Supp. 2d 1045 (E.D. Cal. 2009) .............................................................22
28

*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ........................................................................25

*E & E Co., Ltd. v. Kam Hing Enters., Inc.*,
   No. C-08-0871MMC,
   2009 WL 482240 (N.D. Cal. Feb. 25, 2009) ...................................................9

*Eckelkamp v. Beste*,
   201 F. Supp. 2d 1012 (E.D. Mo. 2002) ..........................................................14

*Eyler v. Comm'r of Internal Revenue*,
   88 F.3d 445 (7th Cir. 1996) ...........................................................................22

*Friend v. Sanwa Bank Cal.*,
   35 F.3d 466 (9th Cir. 1994) .....................................................................12, 17

*Harpster v. AARQUE Mgmt. Corp.*,
   Case No. 4:03CV1282,
   2005 U.S. Dist. LEXIS 30811 (N.D. Oh. July 22, 2005) .................................14

*Harris Trust and Savings Bank v. Salomon Smith Barney*,
   530 U.S. 238 (2000).........................................................................19, 22, 23

*Harris v. Amgen*,
   Case No. CV07-5442 PSG,
   2010 U.S. Dist. LEXIS 26283 (C.D. Cal. Mar. 2, 2010)..............................8, 13

*Henry v. Champlain Enters., Inc.*,
   445 F.3d 610 (2d Cir. 2006) ..........................................................................22

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996) ..................................................................22, 24

*In re Calpine Corp. ERISA Litig.*,
   No. C 03-1685,
   2005 WL 3288469 (N.D. Cal. Dec. 5, 2005)..........................................9, 15, 18

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) .....................................................................10, 12

*In re Honeywell Int'l ERISA Litig.*,
   No. Civ. 03-1214,
   2004 WL 3245931 (D.N.J. Sept. 14, 2004).....................................................23

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 812 .................................................................................16, 17

*In re McKesson HBOC, Inc. ERISA Litig.*,
   No. C00-20030 RMW,
   2002 WL 31431588 (N.D. Cal. Sept. 30, 2002)................................................18

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ..........................................................................15

*Kalda v. Sioux Valley Physician Partners Inc.*,
   481 F.3d 639 (8th Cir. 2007) ......................................................................13, 14

*Kanawi v. Bechtel Corp.*,
   590 F. Supp. 2d 1213 (N.D. Cal. 2008)......................................................19, 21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................10

*Kerstein v. Plast-O-Matic Valves, Inc.*,
   Civil Action No. 07-4156,
   2008 WL 2942135 (D.N.J. July 30, 2008) ........................................................14

*Kling v. Fidelity Mgmt. Trust Co.*,
   323 F. Supp. 2d 132 (D. Mass. 2004)................................................................24

*Laborers' Pension Fund v. Arnold*,
   No. 00C4113,
   2001 U.S. Dist. LEXIS 2062 (N.D. Ill. Feb. 26, 2001) .....................................23

*Leber v. Citigroup, Inc.*,
   No. 07 CIV. 9329,
   2010 WL 935442 (S.D.N.Y. Mar. 16, 2010)......................................................23

*Lee v. Burkhart*,
   991 F.2d 1004 (2d Cir. 1993) ............................................................................25

*Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*,
   828 F.2d 710 (11th Cir. 1987) ...........................................................................14

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)......................................................................................18, 19

*Mangindin v. Wash. Mut. Bank,*
  637 F. Supp. 2d 700 (N.D. Cal. 2009)................................................................10

*Martin v. Feilen,*
  965 F.2d 660 (8th Cir. 1992) ..............................................................................13

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) ..................................................................................10

*New York State Teamsters Council Health & Hosp. Fund v. Centrus Pharm.
  Solutions,*
  235 F. Supp. 2d 123 (S.D.N.Y. 2002) ................................................................23

*Nieto v. Ecker,*
  845 F.2d 868 (9th Cir. 2004) ................................................................................7

*Pegram v. Herdrich,*
  530 U.S. 211 (2000)..........................................................................9, 13, 14, 19

*Qualey v. Jackson,*
  No. 07-CV-10910-DT,
  2007 WL 1836028 (E.D. Mich. June 25, 2007) ................................................22

*Saxton v. Central Pa. Teamsters Pension Fund,*
  No. CIV A.02-CU986,
  2003 WL 22952101 (E.D. Pa. Dec. 9, 2003)................................................19, 20

*Shafer v. Eden,*
  209 F.R.D. 460 (D. Kan. 2002) ..........................................................................10

*State of California ex rel. Mueller v. Walgreen Corp.,*
  175 F.R.D. 638 (N.D. Cal. 1997)........................................................................12

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) ........................................................................10, 12

*Tibble v. Edison Int'l,*
  639 F. Supp. 2d 1122 (C.D. Cal. 2009) ..............................................................20

*Tullis v. UMB Bank, N.A.,*
  640 F. Supp. 2d 974 (N.D. Ohio 2009) ..............................................................22

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ..............................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vivien v. Worldcom, Inc.*,
   No. C02-01329 WHA,
   2002 U.S. Dist. LEXIS 27666 (N.D. Cal. July 26, 2002) ...............................7, 9

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ...................................................*passim*


**STATUTES**

29 U.S.C.
   § 1002(21)(A) ...............................................................................................8
   § 1104..........................................................................................................15
   § 1104(a)(1)(A) ..........................................................................................16
   § 1104(a)(1)(B) ...........................................................................................15
   § 1104(a)(1)(D) ...........................................................................................17
   § 1105(a) ......................................................................................................24
   § 1106(a) ...............................................................................................18, 22
   § 1106(b)(1) .................................................................................................24
   § 1107(d)(6)(A) .............................................................................................4
   § 1108..........................................................................................................18
   § 1108(e) ......................................................................................................22
   § 1109(a) ........................................................................................................7
   § 4975(e)(7)(A) ..............................................................................................4


**OTHER AUTHORITIES**

29 C.F.R.
   § 2510.3-101(a)(2) ......................................................................................21
   § 2510.3-101(c)...........................................................................................21

Federal Rules of Civil Procedure
   Rule 8 ...................................................................................................*passim*
   Rule 9(b) .................................................................................2, 9, 10, 12
   Rule 12(b)(6).......................................................................................6, 14

**INTRODUCTION**

The First Amended Complaint should be dismissed in its entirety because it fails to allege non-conclusory facts that raise a reasonable inference that the Sitrick Defendants[1] violated any duties arising under ERISA's precisely delineated and comprehensive statutory provisions.

Plaintiffs in this action are two former participants in an employee stock ownership plan ("ESOP" or "Plan") formed for employees of Sitrick And Company ("SCI" or the "Company") and funded entirely by Company contributions.  In 2008, the ESOP sold its SCI stock to the Company at a price established by an independent fiduciary, and the proceeds were allocated to individual retirement accounts.  In October 2009, SCI was acquired by Resources Connection, Inc. ("Resources").  Also in 2009, *after the completion of the ESOP stock sale*, SCI changed the accounting treatment, but did not increase the amount, of the remuneration paid to SCI's CEO and Board Chairman, Michael Sitrick, allocating some of that remuneration for the first time as royalties for his personal goodwill.

Based on conclusory allegations and sheer speculation without factual basis, including allegation of a phantom "Personal Goodwill Transaction" ("Goodwill Transaction"), Plaintiffs contend that these events were part of a scheme by the Sitrick Defendants to acquire the ESOP shares at less than fair value.  In fact, the valuation and sale of the ESOP shares was conducted entirely by an independent fiduciary, Defendant Reliance Trust Company ("Reliance"), working with an independent valuation firm that Reliance hired and independent legal counsel that Reliance retained.  And the so-called Goodwill Transaction was nothing more than a change in the accounting treatment of Mr. Sitrick's bonus payments for 2008 and 2009, which was done *after* the repurchase of the ESOP's stock.

As explained below, accepting the well-pled allegations of the Complaint as

---

[1] Defendants Michael and Nancy Sitrick and the Michael and Nancy Sitrick Trust ("the Sitrick Trust") are referred to herein collectively as "the Sitrick Defendants."

1    true for purposes of this motion only,[2] Plaintiffs' claims against the Sitrick

2    Defendants fail under well-established ERISA law.  The breach of fiduciary duty

3    claim alleged in Count I fails as a threshold matter because neither Mr. nor Ms.

4    Sitrick was acting in a fiduciary capacity with respect to the conduct challenged in

5    this case.  To the contrary, Plaintiffs' allegations establish that the sole fiduciary as

6    to the valuation and approval of the ESOP stock repurchase was Reliance, not Mr.

7    or Ms. Sitrick, and confirm that the Goodwill Transaction was a corporate act

8    concerning executive compensation, not a fiduciary function involving plan assets.[3]

9         Plaintiffs' claim in Count II that the Goodwill Transaction and the stock

10   repurchase were prohibited transactions under ERISA Section 406 fares no better.

11   As with Count I, Plaintiffs' conclusory allegations are insufficient to establish that

12   any of the Sitrick Defendants was an ERISA fiduciary with respect to either

13   transaction.  In addition, Plaintiffs do not and cannot allege that the ESOP was a

14   party to the Goodwill Transaction, or that the transaction involved the ESOP's

15   assets.  Likewise, Plaintiffs fail to allege facts raising a reasonable inference that the

16   Sitrick Defendants knew that the consideration for the stock repurchase was

17   inadequate or that the transaction was otherwise unlawful.[4]

18                          **STATEMENT OF FACTS**

19              **Michael Sitrick and the Company He Founded**

20        In 1989, Michael Sitrick, already a nationally recognized and respected

21   expert in the strategic communications business, founded his own company, Sitrick

22   And Company, which specializes in corporate, financial, transactional, and crisis

---

23   [2] The Sitrick Defendants deny any wrongdoing in connection with the matters
24   alleged in the Complaint.

     [3] Count I fails for several additional reasons, including Plaintiffs' (1) failure to
25   plead non-conclusory facts establishing how the Goodwill Transaction constituted a
     breach of ERISA's duties of prudence, loyalty, or compliance with plan documents;
26   and (2) failure to plead the particulars of the alleged misrepresentations and
     omissions regarding the stock repurchase as required by Federal Rule of Civil
27   Procedure 9(b).

28   [4] Plaintiffs' co-fiduciary claim (Count III) and claim for equitable relief (Count IV)
     are derivative of Counts I and II, and fail for the same reasons.

1   communications.  (First Amended Complaint ("FAC" or "Complaint") ¶ 12.)

2   Virtually since its inception, the Company has been ranked among the top strategic

3   public relations firms in the United States by *Inside PR* magazine and its successor

4   publication the *Holmes Report*.  (FAC ¶ 13.)  The Company's success has been

5   publicly recognized as being and in fact is highly dependent on Mr. Sitrick himself.

6   Since founding SCI, Mr. Sitrick has been its Chairman and CEO, and the go-to

7   communications advisor to over 1000 companies, non-profit entities, government

8   agencies, and individuals, including some of the largest corporations and highest

9   profile individuals in the United States.  (FAC ¶ 12.)  As a nationally recognized

10   expert in strategic communications, Mr. Sitrick personally created and developed

11   the unique business, media, and political relationships, reputation, referral network,

12   and trade secrets that have made him and his Company so successful.

13   **Mr. Sitrick Establishes the ESOP for the Benefit of Employees.**

14   Until 1999, Mr. Sitrick owned 100% of his Company.  (FAC ¶ 18.)  In 1999,

15   he chose to share the benefits of his Company's success with its employees through

16   the establishment of an employee stock ownership plan ("ESOP").  To establish the

17   ESOP, Mr. Sitrick selected an independent trustee, who selected an independent

18   valuation firm and an independent attorney to value the Company, and then "sold"

19   1,702,400 Class B shares to the ESOP for approximately $15 million.  (FAC ¶ 22.)

20   Employees then could earn vested rights to Company shares held by the ESOP.

21   (FAC ¶ 17.)  Company employees did not pay any of their own money into the

22   ESOP; nor were their salary or benefits reduced in any way to fund the ESOP's

23   purchase of the Class B shares.  Instead, the Company borrowed, and Mr. Sitrick

24   personally guaranteed, the entire purchase price and loaned it to the ESOP.  (FAC

25   ¶ 23.)  In exchange, the ESOP gave SCI a promissory note secured by the Class B

26   shares.  (*Id*.)  Over time, the note was paid down with funds provided by SCI,

27   including through Company dividend payments.  (*Id*. ¶ 24.)  After establishment of

28   the ESOP, Mr. Sitrick owned 75.68% of the Company, and the ESOP owned

1   24.32%.  (*Id.* ¶ 22.)  After the transaction (including the transfer of the funds to the

2   ESOP in 1999) was complete, the SCI Board of Directors appointed Mr. Sitrick as

3   the ESOP's fiduciary.  (*Id.* ¶ 19.)

4         Plaintiff Wool is a former employee of the Company who was terminated in

5   May 2004.  Although Wool admitted under oath to secret and unauthorized copying

6   of confidential and proprietary material from the Company, in 2009 he received a

7   cash distribution as part of the ESOP's conversion to a 401(k) plan.  (FAC ¶¶ 1,

8   17.)  Plaintiff Mayer, who ceased working for the Company after October 2006

9   (FAC ¶ 2), also received a cash distribution as part of the ESOP's conversion.

10                **The 2008 "Stock Repurchase Transaction"**

11        As an employee stock ownership plan governed by ERISA and the Internal

12  Revenue Code, the ESOP had to be primarily invested in shares of the Company

13  (29 U.S.C. § 1107(d)(6)(A) (ERISA); 29 U.S.C. § 4975(e)(7)(A)), and was,

14  therefore, limited in its ability to diversify its assets and reduce the risk inherent in

15  owning only one company's stock.[5]  In 2008, the SCI Board of Directors hired

16  Reliance to replace Mr. Sitrick as the ESOP's fiduciary, so that Reliance, as an

17  independent fiduciary with no ties to the Company, could consider whether the

18  ESOP should sell its Company shares to the Sitrick Trust, and, if so, at what price.

19  (FAC ¶ 46.)  As part of this transaction, the ESOP would be converted to a 401(k)

20  plan, and plan participants would be freed from the ESOP's restrictions and allowed

21  to diversify funds allocated to their individual accounts.

22        To fulfill its duties as an independent fiduciary on behalf of the ESOP,

23  Reliance engaged an independent financial advisor to assess the fair value of the

24  ESOP's shares in the Company and whether the proposed sale transaction was fair

25  to and in the best interests of the ESOP participants.  (FAC ¶ 46.)  Mr. Sitrick

26  played no role in the work of Reliance or its financial advisor other than to provide

27

28  _____
    [5] This risk was significantly exacerbated by the fact that the Company and its
    results were so dependent upon Mr. Sitrick.

1  all of the information they requested to fulfill their duties.  After a thorough and

2  independent investigation of SCI and the proposed transaction, Reliance and its

3  independent financial advisor approved the sale of the ESOP's assets for $1.7

4  million (after the forgiveness of $760,000 in ESOP debt).  (*Id.* ¶ 51.)  This

5  transaction, which Plaintiffs refer to as "The Stock Repurchase Transaction"

6  ("Repurchase Transaction"), was completed in 2008 with distributions thereafter in

7  2009.  (*Id.* ¶¶ 56-58.)

8              **The So-Called "Goodwill Transaction"**

9          Without any factual support, Plaintiffs allege upon "information and belief"

10 that Mr. Sitrick and SCI entered into the Goodwill Transaction sometime "between

11 2004 and 2008" whereby SCI "was granted the nonexclusive and revocable right to

12 use Mr. Sitrick's Personal Goodwill in consideration for an annual royalty payment

13 to be agreed upon annually" (FAC ¶ 36), and that this transaction "substantially

14 diluted" the value of stock owned by the ESOP.  (*Id.* at ¶ 43.)  Plaintiffs aver no

15 well-pled facts showing there ever was such a transaction.  The only evidence they

16 reference in support of this supposed transaction is that Mr. Sitrick received

17 "royalty" payments "for the year ended December 31, 2008" and "the six month

18 period ended June 30, 2009."  (*Id.* ¶ 39.)  Plaintiffs make no allegation that those

19 payments were made or agreed to prior to the completion of the Repurchase

20 Transaction in 2008 or that the alleged royalty payments increased Mr. Sitrick's

21 total remuneration.  That Plaintiffs make no allegations to support the existence of

22 the Goodwill Transaction prior to the conclusion of the ESOP stock repurchase is

23 not surprising *since there was no such transaction*.[6]

24             **Mr. Sitrick Sells the Company to Resources**

25         After more than 20 years at the head of SCI and over 40 years in the

26 communications business, at age 62, Mr. Sitrick agreed in 2009 to sell his Company

27 ───────────────
   [6] Although the Court need not reach this issue to decide this motion, the royalty
28 payments merely reflected a change in the accounting treatment of the annual
   bonuses paid to Mr. Sitrick.

1  to Resources.  (FAC ¶¶ 60-61.)  As stated in its public filings, Resources

2  recognized Michael Sitrick was himself the critical, key asset, and wanted to ensure

3  that SCI continued to benefit from his work after Resources purchased the

4  Company.  (*See* Declaration of James J. Brosnahan in Support of Sitrick

5  Defendants' Request for Judicial Notice in Support of Sitrick Defendants' Motion

6  to Dismiss the First Amended Complaint ("Brosnahan Decl.") Ex. A at 125.)

7  Resources therefore determined, after reviewing the analysis of an independent

8  valuation firm, that 89.5% of the total purchase price should go to Mr. Sitrick to

9  purchase his own skill, reputation, and expertise, and 10.5% should go to the

10  purchase of the Company's own assets in a separate transaction.  (FAC ¶ 54;

11  Brosnahan Decl. Ex. A at 130.)[7]  Resources also required that Mr. Sitrick enter his

12  first employment agreement since founding SCI (a 4.5-year agreement) and his first

13  non-competition agreement since founding SCI (a 7-year agreement), so Resources

14  would have assurances that the most valuable aspect of SCI's success—Mr. Sitrick

15  himself—would remain a part of SCI after the purchase.  (Brosnahan Decl. Ex. A at

16  126.)  Resources also required that Mr. Sitrick agree to a $40 million life insurance

17  policy with Resources as the beneficiary.  (*Id.* at 96.)

18  **ARGUMENT**

19  Under Rule 12(b)(6), a complaint must be dismissed if it fails to "offer…

20  [more than] labels and conclusions or a formulaic recitation of the elements of a

21  cause of action."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal

22  quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

23  Dismissal is required where the complaint does not plead "enough facts to state a

24  claim to relief that is plausible on its face."  *Twombly* at 570.  A claim is not

25  facially plausible unless, after setting aside all conclusory allegations, the complaint

26  contains "factual content that allows the court to draw the reasonable inference that

27

28  _____
   [7] As these documents show, this allocation was not made until October 2009, and
   thus could not have been the subject of any misrepresentations to Reliance in 2008.

1    the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

2    **I.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF**
3    **FIDUCIARY DUTY UNDER ERISA SECTION 404 (COUNT I).**

4           To state a claim under ERISA Section 404, a plaintiff must allege facts

5    raising a reasonable inference that "(1) a defendant was a fiduciary of the plan

6    (2) when in acting within his or her capacity as a fiduciary (3) engaged in conduct

7    constituting a breach of fiduciary duty." *Vivien v. Worldcom, Inc.*,

8    No. C02-01329 WHA, 2002 U.S. Dist. LEXIS 27666, at *9 (N.D. Cal. July 26,

9    2002) (citing *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)).  In addition, a

10   plaintiff must establish that the alleged breach of fiduciary duty resulted in losses to

11   the plan.  29 U.S.C. § 1109(a).

12          Plaintiffs allege that Mr. and Ms. Sitrick (but not the Sitrick Trust) breached

13   their duties as fiduciaries to the Plan by engaging in conduct relating to the

14   Repurchase Transaction and the purported Goodwill Transaction.  As discussed

15   below, Plaintiffs fail to state a claim under Section 404 based on either transaction.

16          **A.     Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim Based**
17          **On The Repurchase Transaction.**

18                  **1.     Mr. And Ms. Sitrick Were Not ERISA Fiduciaries With**
     **Respect To The Repurchase Transaction.**

19          A defendant "must be a fiduciary" to be subject to a claim for breach of

20   fiduciary duty under ERISA.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090,

21   1093-94 (9th Cir. 2004); *Nieto v. Ecker*, 845 F.2d 868, 871 (9th Cir. 2004).  Under

22   Rule 8, a defendant's purported fiduciary status—like any other essential element

23   of a claim—must be established by "factual content that allows the court to draw

24   the reasonable inference that the defendant is liable for the misconduct alleged."

25   *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (2009).  Mere "labels and conclusions" or

26   "formulaic recitations" are insufficient.  *Id*.  A party acts as a plan fiduciary only

27   when "exercis[ing] any discretionary authority or discretionary control" over plan

28   management or plan assets.  *Wright*, 360 F.3d at 1101; *Andrade v. Parsons Corp.*,

---

1  No. CV83-3344 RJK, 0090 WL 757367, at *2 (C.D. Cal. June 21, 1990); 29 U.S.C.

2  § 1002(21)(A) (defining fiduciary functions).

3      Here, the allegations in the Complaint establish that Mr. and Ms. Sitrick were

4  not fiduciaries with respect to the Repurchase Transaction.  As Plaintiffs

5  acknowledge, the SCI Board of Directors appointed Reliance "as an independent

6  fiduciary for the ESOP to consider and approve the sale" of the Plan's assets.  (FAC

7  ¶ 46.)  Plaintiffs concede that Reliance and its independent financial advisor

8  determined the sales price for the ESOP's stock (FAC ¶ 51), and that Reliance

9  "acted with discretionary authority in approving and closing the 2008 Stock

10 Repurchase Transaction" (FAC ¶ 68).  There is no allegation that Reliance shared

11 its fiduciary responsibilities with Mr. or Ms. Sitrick at any time.

12     The only plausible inference from the First Amended Complaint is that

13 Reliance, not Mr. or Ms. Sitrick, exercised fiduciary authority over the sale of the

14 Plan's shares.  Plaintiffs' conclusory allegations to the contrary (FAC ¶ 67) are

15 entitled to no weight.  *Iqbal*, 129 S. Ct. at 1949; *Harris v. Amgen*, Case No. CV07-

16 5442 PSG, 2010 U.S. Dist. LEXIS 26283, at *19-*20 (C.D. Cal. Mar. 2, 2010).

17 Accordingly, as a matter of law, the Repurchase Transaction is not actionable as to

18 Mr. or Ms. Sitrick under ERISA Section 404.  *Wright*, 360 F.3d at 1101.[8]

19          **2.    The Alleged Misrepresentations And Omissions By Mr. And
                    Ms. Sitrick Do Not Support An ERISA Breach Of Fiduciary
20                  Duty Claim.**

21     Plaintiffs assert that Mr. and Ms. Sitrick breached their fiduciary duties to the

22 Plan by making intentional misrepresentations and omissions to Reliance and its

23 financial advisor concerning matters "which were material to the fairness of the

24 proposed transaction and the fair market value of the ESOP's Class B shares."

25 (FAC ¶ 48.)  These allegations do not establish a breach of fiduciary duty as to

26 Mr. or Ms. Sitrick for two reasons.

27 ───────────────
[8] Plaintiffs allege that Mr. Sitrick "caused" SCI to engage Reliance as an
28 independent fiduciary for the Plan (FAC ¶ 46), but do not contend that Mr. Sitrick
   breached any fiduciary duties in doing so.

1    *First*, as discussed, Mr. and Ms. Sitrick were not Plan fiduciaries with respect

2    to the Repurchase Transaction.  Accordingly, any statements or omissions to

3    Reliance by those Defendants were made in their non-fiduciary corporate

4    capacities, and are thus not actionable under ERISA Section 404.  *Pegram*, 530

5    U.S. at 226.

6    *Second*, even if the purported misrepresentations and omissions could be

7    properly characterized as fiduciary acts, they still cannot support Plaintiffs' claims

8    because they are not pled with particularity as required by Rule 9(b).  Where a

9    complaint contains allegations of fraudulent conduct, those allegations must satisfy

10   Rule 9(b), even if fraud is not a necessary element of the asserted claims.  *Vess v.*

11   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104-1105 (9th Cir. 2003).

12   Courts routinely apply Rule 9(b) to allegations of fraudulent conduct offered

13   in support of ERISA breach of fiduciary duty claims.  *See, e.g., In re Calpine Corp.*

14   *ERISA Litig.*, No. C 03-1685, 2005 WL 3288469, at *6 (N.D. Cal. Dec. 5, 2005);

15   *Vivien*, 2002 U.S. Dist. LEXIS 27666, at *20.  Here, Rule 9(b) applies to the

16   purported misrepresentations and omissions, which Plaintiffs explicitly characterize

17   as intentional.  Specifically, Plaintiffs allege that:

18   •   the purported "Stock Repurchase Transaction" resulted from
19       Mr. Sitrick's "*plan* to purchase all of the ESOP's stock in SCI for a
         fraction of its fair market value" ( FAC ¶ 45) (emphasis added);

20   •   "*[t]o carry out his plan*, Sitrick caused the SCI Board of Directors to
21       engage Defendant Reliance as an independent fiduciary" (*id.* ¶ 46)
22       (emphasis added); and

23   •   "[i]n connection with the due diligence by Reliance and its financial
         advisor, Sitrick *intentionally* failed to disclose information or made
24       false or misleading statements of facts" (*id.* ¶ 48) (emphasis added);

25   Rule 9(b) applies to these allegations of intentionally deceptive conduct.  *See, e.g.,*

26   *E & E Co., Ltd. v. Kam Hing Enters., Inc.*, No. C-08-0871MMC, 2009 WL 482240,

27   at *3 (N.D. Cal. Feb. 25, 2009); *Cal. Pub. Employees Retirement Sys. v. Chubb*

28   *Corp.*, 394 F.3d 126, 160-61 (3d Cir. 2004).

1    To comply with Rule 9(b), Plaintiffs must identify "the time, place, and

2  content of representations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.

3  2007).  In addition, Plaintiffs must "set forth what is false or misleading about a

4  statement, and why it is false." *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548

5  (9th Cir. 1994).  The allegations must be "specific enough to give defendants notice

6  of the *particular* misconduct ... so that they can defend against the charge and not

7  just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666,

8  671 (9th Cir. 1993) (emphasis added).

9    Plaintiffs fail to satisfy these requirements.  Plaintiffs allege that Mr. and

10  Ms. Sitrick "failed to disclose or misrepresented":  (1) unspecified offers to

11  purchase SCI from unspecified companies; (2) "formal or informal" offers to

12  purchase SCI from Resources; and (3) and the Goodwill Transaction.  (FAC ¶ 49.)

13  Plaintiffs make no attempt to describe the specific content of those

14  misrepresentations or identify what specific information was concealed by Mr. or

15  Ms. Sitrick.  Nor do they identify what was false or misleading about any

16  statements made by Mr. or Ms. Sitrick to Reliance or explain why they were false.

17    Courts routinely find allegations such as these insufficient under Rule 9(b).

18  For example, in *Shafer v. Eden*, 209 F.R.D. 460 (D. Kan. 2002), Plaintiffs asserted

19  ERISA breach of fiduciary claims against company officials who allegedly "failed

20  to provide [to company employees] information regarding offers to purchase" the

21  company's assets.  *Id*. at 463 (internal quotations omitted).  The court ruled that this

22  "general statement" failed to meet "plaintiffs' burden [under Rule 9(b)] to specify

23  the content of the alleged misrepresentations." *Id*.  Similarly, in *Kearns v. Ford*

24  *Motor Co*., 567 F.3d 1120 (9th Cir. 2009), the plaintiff alleged that Ford

25  "misrepresent[ed] the benefits of its CPO program." *Id*. at 1125.  The Ninth Circuit

26  ruled that these allegations were insufficient under Rule 9(b) because the plaintiff

27  failed to specify what the purported misrepresentations "specifically stated." *Id*.

28  at 1126; *see also Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D.

1  Cal. 2009) (rejecting allegation that defendants misrepresented a loan transaction,

2  where the complaint did not "allege the specific content of the misrepresentations").

3  The same reasoning applies here.

4      Plaintiffs also allege that Mr. and Ms. Sitrick "direct[ed] Reliance and its

5  financial advisor to assume that the Personal Goodwill Transaction was contractual,

6  valid and binding, and that the ESOP equity in SCI was equal to only 10.5% of the

7  SCI income stream."  (FAC ¶ 69(i); *see also id.* ¶ 54.)  Plaintiffs do not set forth the

8  time or place or context of this purported representation or any facts showing that

9  any portion of this alleged statement, if made, was false.  Indeed, they do not even

10 set forth specific facts supporting the allegation that there was a Goodwill

11 Transaction to disclose at the time that Reliance did its valuation in 2008.

12     Instead, based solely on "information and belief" and two "royalty

13 payments" to Mr. Sitrick "for the year ended December 31, 2008" and "for the six

14 month period ended June 30, 2009," disclosed in a Form 8-K filing on January 5,

15 2010, Plaintiffs vaguely assert that a "verbal or written royalty agreement" occurred

16 sometime between 2004 and 2008.  (FAC ¶¶ 36, 39.)  The Supreme Court rejected a

17 similarly speculative pleading strategy in *Twombly*.  There, the court held that

18 alleged parallel conduct by business competitors did not plead the existence of an

19 agreement by them to act in concert.  550 U.S. at 566.  Likewise here, the "royalty

20 payments" to Mr. Sitrick "could equally have been prompted by lawful,

21 independent goals which do not constitute a conspiracy," such as a reclassification

22 of his remuneration for tax purposes, and are thus insufficient to plead an unlawful

23 agreement between Mr. Sitrick and SCI.  *Id.* at 567.[9]

24     The Complaint fails to allege facts showing that Mr. or Ms. Sitrick

25 misrepresented the transaction to Reliance.  Even if a Goodwill Transaction had

26

27 _____

   [9] The evidence will show that the "royalty payments" were in fact a change in
   accounting treatment only that did not change Mr. Sitrick's total remuneration by a
28 penny.  It is not surprising that Plaintiffs are unable to describe the purported
   Goodwill Transaction with any specificity.  It never happened.

1   ever existed (which it did not), Plaintiffs allege no facts supporting their claim that

2   the Goodwill Transaction was not contractual, valid, or binding, or that the Plan's

3   holdings of SCI stock were not equal to 10.5% of SCI's income stream.  Absent

4   such particularized facts, the purported misrepresentations cannot survive scrutiny

5   under Rule 9(b).  *See, e.g., Glenfed*, 42 F.3d at 1548 (under Rule 9(b), a plaintiff

6   must specify "*the reasons for* [the statement's] *falsity*") (emphasis in original).[10]

7        *Third*, Plaintiffs fail to plead facts raising a reasonable inference that the

8   purported misrepresentations and omissions resulted in a loss to the Plan.  A party

9   is liable for a purported breach of fiduciary duty under ERISA "only to the extent

10  that losses to the plan result from the breach."  *Friend v. Sanwa Bank Cal.*, 35 F.3d

11  466, 469 (9th Cir. 1994) (citing 29 U.S.C. § 1109).  The Complaint contains no

12  facts showing that Reliance relied on the purported misrepresentations in

13  determining a valuation of the Plan's assets or that the purported omissions would

14  have made a material difference in that valuation.  Thus, even accepting as true

15  Plaintiffs' allegations concerning misrepresentations by Mr. and Ms. Sitrick, those

16  misrepresentations are not alleged to have caused a lower price for the Plan's

17  shares, and thus do not support a breach of fiduciary claim under ERISA.

18        **B.    The Goodwill Transaction Is Not Actionable Under Section 404.**

19             **1.    Mr. And Ms. Sitrick Were Not ERISA Fiduciaries With
                    Respect To The Goodwill Transaction.**

20

21        As noted, a defendant "must be a fiduciary" to be subject to a claim for

22  breach of fiduciary duty under ERISA.  *Wright*, 360 F.3d at 1093-94.  Courts

23  recognize that "[i]t is neither the purpose nor the domain of ERISA to regulate

---

24  [10] In alleging the purported misrepresentations and omissions, Plaintiffs violate
    Rule 9(b) by lumping Mr. and Ms. Sitrick together, without bothering to
25  "differentiate their allegations ... and inform each defendant separately of the
    allegations surrounding his [or her] alleged participation in the fraud."  *Swartz v.*
26  *KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  These claims violate Rule 9(b)
    for the further reason that they are alleged "[u]pon information and belief," (FAC
27  ¶ 54), without setting forth "a factual basis upon which [the] belief is reasonably
    founded," *State of California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638,
28  640 (N.D. Cal. 1997).

1   purely corporate behavior that is adequately covered elsewhere." *Akers v. Palmer*,

2   71 F.3d 226, 231 (6th Cir. 1995).  Accordingly, a party can be an ERISA fiduciary

3   only with respect to "transactions that involve investing the ESOP's assets or

4   administering the plan." *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992); *see*

5   *also Akers*, 71 F.3d at 230 ("only actions respecting the *administration* or

6   *management* of plan 'assets' are subject to fiduciary standards").

7       In accord with this "dual capacity" principle, a corporate officer or director

8   does not breach any fiduciary duties under ERISA when "acting in [his] corporate

9   capacity." *Cunha v. Ward Foods*, *Inc.*, 804 F.2d 1418, 1432 (9th Cir. 1986); *see*

10  *also Harris*, 2010 U.S. Dist. LEXIS 26283, at *20 (same); *Feilen*, 965 F.2d at 666

11  (same).  A "normal business decision" is not subject to scrutiny under ERISA even

12  where it may have "potential collateral effects" on plan participants.  *Kalda v. Sioux*

13  *Valley Physician Partners Inc*., 481 F.3d 639, 646 (8th Cir. 2007); *Pegram*,

14  530 U.S. at 226 (corporate officers, when acting in a non-fiduciary capacity, can

15  "take actions to the disadvantage of employee beneficiaries").

16      Here, no breach of fiduciary liability can arise from the purported Goodwill

17  Transaction because, assuming it occurred at all, Plaintiffs' own allegations

18  demonstrate that it was a business decision by SCI that did not involve the

19  administration or management of Plan assets.  Plaintiffs allege that the purported

20  transaction was caused by Mr. Sitrick while "act[ing] in both his individual capacity

21  and in his corporate capacity," not in his capacity as Plan fiduciary.  (FAC ¶ 37.)

22  Plaintiffs further allege that the purported transaction constituted a misappropriation

23  of "corporate assets," not Plan assets. (FAC ¶ 40.)   The alleged "royalty payments"

24  to Mr. Sitrick under the purported Goodwill Transaction were paid by SCI, not the

25  Plan, and were consideration for Mr. Sitrick's services and value to SCI's business

26  operations, not for his services as a Plan trustee.  (FAC ¶¶ 35, 36.)

27      Courts recognize that a transaction of this sort concerning executive

28  compensation "is a business decision or judgment made in connection with the on-

1  going operation of a business" which "does not involve the administration of an

2  ERISA plan or the investment of an ERISA plan's assets." *Eckelkamp v. Beste*,

3  201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002).  For example, in *Benaoud v.*

4  *Hodgson*, 578 F. Supp. 2d 257 (D. Mass. 2008), ERISA breach of fiduciary claims

5  were brought against company officers based on their authorization and receipt of

6  backdated stock options.  The plaintiffs argued that the officers were plan

7  fiduciaries because their backdating activities "materially affected the value of [the

8  company's] common stock, and thereby the Plan participant's holdings" of

9  company stock.  *Id*. at 276.  The court rejected that argument, observing that

10  "setting (and receiving) executive compensation—even improper compensation—is

11  a classically corporate act."  *Id*.  The court explained that even where poor

12  corporate decisions affect plan participants by rendering company stock worthless,

13  those decisions do not constitute a breach of ERISA fiduciary duties.  *Id*. at 277.[11]

14       Echoing the plaintiffs' argument in *Benaoud*, Plaintiffs here contend that the

15  "Goodwill Transaction substantially diluted the value of SCI's assets and employer

16  securities owned by the ESOP."  (FAC ¶ 43.)  As discussed below, there are no

17  facts in the Complaint supporting this false contention.  But even if accepted as true

18  for purposes of this Rule 12(b)(6) motion, it is insufficient to transform a manifestly

19  corporate decision into a fiduciary decision actionable under ERISA.  *Pegram*,

20  530 U.S. at 225-226.  Count I thus fails as a matter of law to the extent it rests on

21  the Goodwill Transaction.  *See, e.g., Kalda v. Sioux Valley Physician Partners Inc*.,

22  481 F.3d 639, 646 (8th Cir. 2007) (affirming dismissal of claims based on business

23  decisions); *Blaw Know Ret. Income Plan v. White Consol. Indus., Inc*., 998 F.2d

24  1185, 1189-90 (3d Cir. 1993) (same).  Plaintiffs' conclusory allegation that Mr. and

25

26  [11] *See also Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710, 713-14 (11th Cir. 1987) (payment of employee salaries is a business decision, not a fiduciary act governed by ERISA); *Harpster v. AARQUE*

27  *Mgmt. Corp.*, Case No. 4:03CV1282, 2005 U.S. Dist. LEXIS 30811, at *30-*31 (N.D. Oh. July 22, 2005) (same); *Kerstein v. Plast-O-Matic Valves, Inc.*, Civil

28  Action No. 07-4156, 2008 WL 2942135, at *6 (D.N.J. July 30, 2008) (same).

1    Ms. Sitrick were Plan fiduciaries as to the transaction (FAC ¶ 67), is nothing more

2    than a "formulaic recitation of the elements of a cause of action" that cannot

3    support a claim under Rule 8.  *Iqbal*, 129 S. Ct. at 1949; *see also Calpine*, 2005

4    U.S. Dist. LEXIS 9719, at *3.[12]

5
6
                    **2.      Plaintiffs Fail To Allege A Breach Of Fiduciary Duty By
                             Mr. Or Ms. Sitrick As To The Goodwill Transaction.**

7            Section 404 of ERISA imposes on plan fiduciaries a duty of prudence, a duty

8    of loyalty, and a duty to comply with plan documents.  29 U.S.C. § 1104.  Even if

9    the Goodwill Transaction could be deemed a fiduciary act under ERISA (which it

10   cannot), Count I fails as to Mr. and Ms. Sitrick because Plaintiffs allege no facts

11   plausibly suggesting that either of them breached any of these duties in connection

12   with the transaction.

13           Duty of Prudence.  The duty of prudence requires fiduciaries to discharge

14   their duties "with the care, skill, prudence, and diligence under the circumstances

15   then prevailing that a prudent man acting in a like capacity and familiar with such

16   matters would use in the conduct of an enterprise of a like character and with like

17   aims."  29 U.S.C. § 1104(a)(1)(B).  To state a claim for breach of this duty, a

18   plaintiff must allege facts showing that the defendants, at the time of the challenged

19   transaction, failed to "employ[] the appropriate methods to investigate the merits of

20   the [transaction] and to structure the [transaction]."  *Wright*, 360 F.3d at 1097.

21           Here, Plaintiffs plead no facts reasonably suggesting that Mr. or Ms. Sitrick

22   failed to properly "investigate the merits"—with respect to the Plan—of the

23   ─────────────────────
     [12] The Ninth Circuit's decision in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir.
24   2009), does not compel a different result.  Unlike in *Couturier*, where new shares
     were issued that diluted the ESOP's 100% equity interest, the challenged Goodwill
25   Transaction represents a purely corporate compensation decision.  Indeed,
     *Couturier* acknowledged that "[d]ecisions relating to corporate salaries generally do
26   not fall within ERISA's purview," but held that it was appropriate to impose
     ERISA duties on the transaction because it was tainted by "obvious self-dealing"
27   that permitted the defendant to "directly profit." *Id*. at 1077.  Here, in contrast,
     there are no facts showing that the Goodwill Transaction resulted in *any* increase in
28   Mr. Sitrick's remuneration or *any* reduction in the Company's earnings or the
     ESOP's share of SCI's equity.

─────────────────────

1   Goodwill Transaction.  Plaintiffs' conclusory allegations to the contrary (FAC ¶ 69

2   (a), (b), (d), (e)) should be rejected.  *Iqbal*, 129 S. Ct. at 1949.  Nor does the

3   Complaint allege any facts indicating that a prudent fiduciary would have

4   concluded that the transaction would adversely impact the Plan.  The Complaint

5   alleges only one fact concerning the impact of the transaction on the company:  SCI

6   made "royalty" payments to Mr. Sitrick of $3.4 million and $2.683 million for 2008

7   and 2009.  (FAC ¶ 39.)  Plaintiffs do not claim that the alleged transaction resulted

8   in a net increase in the amounts paid by SCI to Mr. Sitrick, a net decrease in SCI's

9   assets, or any adverse effect at all on the Company's "income stream."  (*Id.* ¶ 34.)

10  Nor do Plaintiffs allege that the transaction caused a decrease in the benefits

11  enjoyed by SCI from Mr. Sitrick's services and "intangible assets."  As noted, the

12  Complaint also fails to allege facts showing that the transaction was a factor in the

13  purported undervaluation of the Plan's shares, or that a prudent fiduciary would

14  have known it would have that effect.

15       Most importantly, Plaintiffs allege no facts whatsoever suggesting that Mr. or

16  Ms. Sitrick had any reason to believe, at the time of the purported transaction, that

17  it would harm SCI or the Plan or that any further investigation into the merits of the

18  transaction was warranted.  At most, the Complaint alleges that, pursuant to a

19  transaction that occurred at some unspecified time, Mr. Sitrick received payments

20  from SCI for his services.  These neutral facts fall well short of "the line between

21  possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949.

22       <u>Duty of Loyalty</u>.   For the same reasons, Plaintiffs fail to state a breach of the

23  duty of loyalty as to the Goodwill Transaction.  The duty of loyalty requires

24  fiduciaries "to act solely and exclusively in the interests of the plan participants."

25  *Andrade*, 0090 WL 757367, at *6; 29 U.S.C. § 1104(a)(1)(A).  To state a claim for

26  breach of this duty, a plaintiff must demonstrate that the defendants did more than

27  "merely creating *the potential* for a conflict of interest."  *In re McKesson HBOC,*

28  *Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834.  Instead, the complaint must allege

1   facts plausibly suggesting that the defendants engaged in "actual disloyal conduct."

2   *Id*. at 834-35.

3         As discussed, Plaintiffs fail to plead any facts raising a reasonable inference

4   that Mr. or Ms. Sitrick knew or should have known that the Goodwill Transaction

5   would adversely affect SCI or the Plan or that the transaction favored Mr. Sitrick at

6   the expense of SCI or the Plan.  Nor are there facts suggesting that any "royalty

7   payments" to Mr. Sitrick were not in lieu of bonuses, dividends, or salary in the

8   same amounts.  Under these circumstances, the Complaint fails to allege "actual

9   disloyal conduct," precluding a duty of loyalty claim based on the transaction as a

10  matter of law.  *McKesson*, 391 F. Supp. 2d at 834-35.

11        <u>Duty to Comply with Plan Documents</u>.  The duty to comply with plan

12  documents requires fiduciaries to act in accordance with the documents and

13  instruments governing the plan. 29 U.S.C. § 1104(a)(1)(D).  Plaintiffs allege that

14  Mr. Sitrick "violat[ed] the terms of the ESOP Plan and Trust documents" (FAC

15  ¶ 69(1)), but fail to identify a single term from those documents, let alone allege

16  facts suggesting that Mr. or Ms. Sitrick violated a Plan term.  Plaintiffs'

17  "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient under

18  Rule 8 to support a breach of fiduciary duty claim.  *Iqbal*, 129 S. Ct. at 1949.

19
20          **3.**     **Plaintiffs Do Not Allege Facts Showing That The Goodwill Transaction Resulted In Losses To The Plan.**

21        As noted, a party asserting a breach of fiduciary duty under ERISA must

22  establish loss causation.  *Friend*, 35 F.3d at 469.  Plaintiffs fail to satisfy that

23  requirement with respect to the Goodwill Transaction.  Plaintiffs do not allege facts

24  plausibly suggesting that the transaction caused a decreased valuation of the Plan's

25  assets, or of SCI's assets for that matter.  Nor do they allege that the transaction was

26  funded by the Plan or resulted in a decrease in dividends paid on SCI stock owned

27  by the Plan.  Instead, they cryptically allege that the transaction "substantially

28  diluted" the value of Plan assets.  (FAC ¶ 43.)  In violation of Rule 8, Plaintiffs do

1  not explain what that means, nor do they provide facts suggesting that the

2  transaction had that effect. *Iqbal*, 129 S. Ct. at 1949.  Because the Complaint fails

3  to allege non-conclusory facts establishing harm to the Plan from the purported

4  Goodwill Transaction, Count I fails as a matter of law with respect to that

5  transaction. *See Wright*, 360 F.3d at 1100; *In re McKesson HBOC, Inc. ERISA*

6  *Litig.*, No. C00-20030 RMW, 2002 WL 31431588, at *8 (N.D. Cal. Sept. 30,

7  2002).[13]

8          **C.**    **Plaintiffs Fail To Establish That Ms. Sitrick Had Any Involvement**

9                **In Or Knowledge Of The Challenged Transactions.**

10  In addition to all the reasons set forth above, Count I must be dismissed as to

11  Ms. Sitrick because Plaintiffs plead no facts reasonably suggesting that she had any

12  involvement in the Repurchase Transaction or the Goodwill Transaction, or that she

13  knew or should have known of those purported transactions.  Count I fails as to

14  Ms. Sitrick for that reason alone. *Calpine*, 2005 WL 3288469, at *9; *Crowley v.*

15  *Corning, Inc.*, 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002).

16  **II.**    **PLAINTIFFS FAIL TO STATE A CLAIM UNDER ERISA**

17         **SECTION 406 (COUNT II).**

18  Section 406 of ERISA "prohibits fiduciaries from involving the plan and its

19  assets in certain kinds of business deals." *Lockheed Corp. v. Spink*, 517 U.S. 882,

20  888 (1996).  A party is not liable under Section 406 if one of the "[e]xemptions

21  from prohibited transactions" in Section 408 applies.  29 U.S.C. §§ 1106(a), 1108.

22  There are two types of transactions covered by Section 406:  fiduciary-

23  caused transactions between a plan and a party in interest (Section 406(a)) and

24  transactions between a plan and a fiduciary (Section 406(b)).  Plaintiffs allege that

25

26  [13] Plaintiffs also insinuate, based on "information and belief," that the Goodwill Transaction resulted in a loss to the Plan because Reliance assumed the validity of

27  the transaction and attributed most of SCI's income to Mr. Sitrick's "Personal Goodwill," thus undervaluing the Plan's SCI shares.  (FAC ¶¶ 51, 54.)  The

28  Complaint alleges, however, no facts to support the insinuation that Reliance even considered the purported Goodwill Transaction in valuing the Plan's shares.

1   the Sitrick Defendants violated those provisions by engaging in the Goodwill and

2   Repurchase Transactions.  Those allegations fail to state a claim.[14]

3      **A.     The Section 406(a) Claim Fails As A Matter Of Law.**

4          To establish a violation of Section 406(a), a plaintiff must show that a

5   fiduciary caused the plan to engage in a transaction with a party in interest,

6   *Lockheed*, 517 U.S. at 888, and that the transaction involved plan assets, *id*. at 893;

7   *Kanawi v. Bechtel Corp*., 590 F. Supp. 2d 1213, 1227 (N.D. Cal. 2008).  A non-

8   fiduciary may be liable as a party in interest, but only if the non-fiduciary had

9   "knowledge of the circumstances that rendered the transaction unlawful."  *Harris*

10  *Trust and Savings Bank v. Salomon Smith Barney*, 530 U.S. 238, 251 (2000).

11          **1.     The Goodwill Transaction Is Not Actionable Because It Was
12                   Not Caused By A Plan Fiduciary And Did Not Involve The
13                   Plan Or Plan Assets.**

14          Plaintiffs' Section 406(a) claim, to the extent it is based on the purported

15  Goodwill Transaction, fails at the outset as to all Defendants because it was not

16  caused by a plan fiduciary.  As noted, even a named fiduciary is not a fiduciary for

17  all purposes.  *Pegram*, 530 U.S. at 225-26.  Rather, a party has fiduciary status only

18  to the extent he or she is performing a fiduciary function when taking the

19  challenged action.  *Id*.  Courts regularly dismiss claims under Section 406(a) where

20  the person who was the purported cause of the challenged transaction was not

21  acting as a fiduciary.  For example, in *Saxton v. Central Pa. Teamsters Pension*

22  *Fund*, No. CIV A.02-CU986, 2003 WL 22952101 (E.D. Pa. Dec. 9, 2003), the

23  court dismissed a Section 406(a) claim against the plan trustee arising from

24  reallocations of contributions from plan participants.  *Id*. at *21.  The court held that

25

26  _____

27  [14] In violation of Rule 8, Plaintiffs fail to identify specifically the provisions of
    Section 406 which they contend were violated by defendants.  For purposes of this
    motion, the Sitrick Defendants presume that Count II encompasses claims under
28  Sections 406(a)(1)(A), 406(a)(1)(D), and 406(b)(1), the only provisions under
    Section 406 that are even arguably implicated by the allegations in the Complaint.

1    the transactions were not prohibited under Section 406(a) because the defendant, in

2    causing the transactions, was not acting in its fiduciary capacity.  *Id.*

3         Here, the Complaint concedes that the Goodwill Transaction was caused by

4    Mr. Sitrick in his "individual" and "corporate" capacities as "SCI Chief Executive

5    Officer and Director," rather than in his fiduciary capacity as Plan trustee.  (FAC

6    ¶ 37.)  Thus, even if Plaintiffs correctly characterize Mr. Sitrick as the cause of the

7    purported transaction, their own allegations foreclose any suggestion that

8    Mr. Sitrick was acting as a Plan fiduciary when taking that action.  The transaction

9    is therefore not actionable under Section 406(a) as a matter of law as to any

10   Defendant.  *See, e.g., Wright*, 360 F.3d at 1101-1102; *Bd. of Trs., Basic Crafts

11   Workers' Comp. Benefits Trust Fund v. Siemers*, No. C-10-0731EMC, 2010 U.S.

12   Dist. LEXIS 44784, at \*13-\*14 (N.D. Cal. May 6, 2010).

13        For similar reasons, Plaintiffs fail to allege that the Goodwill Transaction was

14   a transaction with the Plan, as required under Section 406(a).  As discussed above,

15   the transaction was between Mr. Sitrick and SCI, not the Plan.  Mr. Sitrick

16   allegedly agreed to license his "intangible assets" to SCI, not to the Plan.  In

17   exchange, Mr. Sitrick received royalty payments from SCI, not from the Plan.

18   These undisputed facts foreclose liability under Section 406(a) based on the

19   Goodwill Transaction.  *See, e.g., Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1125

20   (C.D. Cal. 2009) (dismissing 406(a) claim where the plan "was not a party to the

21   contract" challenged by Plaintiffs).

22        Lastly, the purported Goodwill Transaction did not involve Plan assets.  To

23   the contrary, Plaintiffs allege that the transaction constituted an attempt to

24   "misappropriate and transfer to himself, certain of the *corporate* assets through its

25   income stream."  (FAC ¶ 34 (emphasis added).)  Plaintiffs do not allege that the

26   transaction included any SCI shares owned by the ESOP.  The Plan's status as an

27   SCI shareholder did not mean that it owned SCI's underlying corporate assets.  As

28   the Department of Labor's definition of "plan assets" makes clear, a plan's

1   investment in an "operating company" (such as SCI) does not, solely by reason of

2   that investment, mean that the plan's assets include the underlying assets of the

3   company.  *See* 29 C.F.R. 2510.3-101(a)(2).[15]  Because Plaintiffs offer no other

4   basis for their assertion that the Goodwill Transaction was a prohibited transaction

5   in plan assets, their Section 406(a) claim fails to the extent that it rests on that

6   transaction.  *See Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1227 (N.D. Cal.

7   2008); *Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers and Employees of*

8   *Outside Local Unions and Dist. Counsel's Pension Plan*, 404 F. Supp. 2d 145, 152

9   (D.D.C. 2005).

10          **2.      The Sitrick Defendants Are Not Liable As Fiduciaries Or**
11                  **Parties In Interest To The Repurchase Transaction.**

12          A Section 406(a) claim may be brought against:  (1) a plan fiduciary who

13   causes a prohibited transaction; or (2) a party in interest to such a transaction.

14   Plaintiffs' allegations regarding the Repurchase Transaction fail to state a Section

15   406(a) claim against the Sitrick Defendants under either of those prongs.

16          *First*, the Complaint does not allege facts raising a reasonable inference that

17   any of the Sitrick Defendants was a Plan fiduciary who caused the Repurchase

18   Transaction.  To the contrary, Plaintiffs acknowledge that Reliance, not the Sitrick

19   Defendants, caused that transaction by "approving and closing" the sale of the

20   Plan's stock.  (FAC ¶¶ 46, 68.)  The Complaint does not allege that Reliance was

21   relieved of its responsibilities as the Plan fiduciary before the Repurchase

22   Transaction was consummated or that it shared these responsibilities at any time

23   with the Sitrick Defendants.[16]  Plaintiffs' Section 406(a) claim thus fails as a matter

24   of law to the extent it rests on the Sitrick Defendants' purported roles as causes of

25

26   [15] An "operating company" is "an entity that is primarily engaged ... in the
     production or sale of a product or service other than the investment of capital."
27   29 C.F.R. 2510.3-101(c).  SCI meets that definition.  (FAC ¶ 12-13.)

28   [16] In fact, Reliance remained the Plan's trustee until the stock sale was
     consummated.  (Brosnahan Decl. Ex. B at 171.)

SITRICK DEFS.' NOT. OF MOT. & MOT. TO DISMISS THE FIRST AMENDED COMPL.          21
CASE NO. CV-10-2741 JHN (PJWx)

that transaction.  *See Qualey v. Jackson*, No. 07-CV-10910-DT, 2007 WL 1836028, at *5 (E.D. Mich. June 25, 2007) (no Section 406(a) liability for merger because shareholders, not defendants, caused transaction by approving it); *Tullis v. UMB Bank, N.A.*, 640 F. Supp. 2d 974, 981 (N.D. Ohio 2009) (no Section 406(a) liability where defendant did not cause transaction).

  *Second*, the Complaint does not allege facts establishing that any of the Sitrick Defendants are liable as parties in interest to the transaction.  In *Harris Trust*, the Supreme Court held that a person may be liable as a party in interest under Section 406(a) only if the person had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" at the time of the transaction.  530 U.S. at 251.  A transaction involving the plan's sale of company stock is not "unlawful" if the plan received "adequate consideration" for its shares, as provided by Section 408(e).  29 U.S.C. §§ 1106(a), 1108(e); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).  The "adequate consideration" standard is satisfied if the sales price of the stock was established in "good faith."  *DeFazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1068 (E.D. Cal. 2009); *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619-20 (2d Cir. 2006) (court's role is to determine whether "the price paid represented a good faith determination of the fair market value of the asset, not to redetermine the appropriate amount for itself *de novo*"); *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir. 1996).

  Thus, to plead knowledge of the transaction's "unlawfulness," as required under *Harris Trust*, Plaintiffs must allege non-conclusory facts raising a reasonable inference that the Sitrick Defendants knew or should have known that Reliance failed to act in good faith in determining the price of the Plan's shares of SCI stock. Despite their conclusory allegation that the Plan received "less than adequate consideration" for its stock (FAC ¶ 80), Plaintiffs allege no facts suggesting that any of the Sitrick Defendants had actual or constructive knowledge that Reliance put its interests above the interests of the Plan or otherwise did not act in good faith.

1    In the absence of such facts, the Sitrick Defendants cannot be liable as parties in

2    interest to the Repurchase Transaction.  *Harris Trust*, 530 U.S. at 251; *Barry*,

3    404 F. Supp. 2d at 157; *Laborers' Pension Fund v. Arnold*, No. 00C4113, 2001

4    U.S. Dist. LEXIS 2062, at *23-*25 (N.D. Ill. Feb. 26, 2001).[17]

5          In the alternative, the Repurchase Transaction is not actionable under either

6    prong of Section 406(a) because Plaintiffs allege no facts that could disqualify the

7    transaction from the protections of Section 408(e).  A claim is subject to dismissal

8    under Rule 8 where "the well-pleaded facts do not permit the court to infer more

9    than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950.  Applying that

10   principle, numerous courts have dismissed Section 406 claims where, as here, the

11   complaint failed to "allege any basis for presuming that a defendant's conduct fell

12   outside a statutory exemption" set forth in Section 408.  *Leber v. Citigroup, Inc.*,

13   No. 07 CIV. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010); *see also In*

14   *re Honeywell Int'l ERISA Litig.*, No. Civ. 03-1214, 2004 WL 3245931, at *13-*14

15   (D.N.J. Sept. 14, 2004); *New York State Teamsters Council Health & Hosp. Fund v.*

16   *Centrus Pharm. Solutions*, 235 F. Supp. 2d 123, 129 (S.D.N.Y. 2002).

17         As discussed, Plaintiffs do not allege facts reasonably suggesting that

18   Reliance failed to act in good faith in setting the sales price of the Plan's stock.  The

19   only allegation that is even remotely relevant to this point is that Reliance assumed

20   the contractual validity of the Goodwill Transaction.  (FAC ¶ 51.)  But plaintiffs

21   allege no facts showing that, even if Reliance did assume that the transaction was

22   "contractual, valid, and binding," Reliance failed to assess whether the Goodwill

23   Transaction, and thus the Repurchase Transaction, was unfair to Plan participants or

24   had an adverse impact on the value of Plan assets.  Indeed, Plaintiffs allege no facts

25   _____

26   [17] Under *Harris Trust*, Plaintiffs must also allege non-conclusory facts showing that
     the Plan fiduciary with respect to the Repurchase Transaction—Reliance—had
27   actual or constructive knowledge that the transaction was prohibited under Section
     406(a).  530 U.S. at 251.  As discussed below, Plaintiffs allege no facts suggesting
28   that Reliance did not act in good faith in conducting the transaction or that Reliance
     knew or should have known that the transaction was unlawful.

1   showing that the purported Goodwill Transaction played any part in Reliance's

2   valuation of the Plan's stock.  Absent allegations of such non-conclusory facts,

3   Plaintiffs' challenge to the Repurchase Transaction under Section 406(a) fails as a

4   matter of law.

5         **B.   The Section 406(b) Claim Fails As A Matter Of Law.**

6         To establish a violation of Section 406(b)(1), a plaintiff must show that a

7   plan fiduciary and the plan engaged in a transaction involving plan assets.

8   29 U.S.C. § 1106(b)(1).  This claim fails for multiple reasons.  With respect to the

9   Repurchase Transaction, the Complaint fails to allege facts reasonably suggesting

10  that Mr. or Ms. Sitrick engaged in the transaction as fiduciaries or facts raising a

11  plausible inference that the transaction was not exempted under Section 408(e).

12  (*See* Section II.A.2, *supra*.)[18]  With respect to the Goodwill Transaction, Plaintiffs

13  do not and cannot allege facts showing that the Plan was a party to the transaction,

14  that the transaction involved plan assets, or that any of the Sitrick Defendants

15  engaged in that transaction as fiduciaries (*see* Section II.A.1, *supra*), much less that

16  there was such a transaction in the first place.

17  **III.   PLAINTIFFS FAIL TO STATE A CO-FIDUCIARY CLAIM UNDER**

18  **ERISA SECTION 405 (COUNT III).**

19        Only plan fiduciaries can be liable under Section 405 of ERISA.  29 U.S.C.

20  § 1105(a).  As shown above, Plaintiffs fail to allege facts raising a reasonable

21  inference that Mr. or Ms. Sitrick were Plan fiduciaries with respect to the

22  transactions challenged in the Complaint.  The co-fiduciary claim must be

23  dismissed for this reason alone.  *See, e.g., Kling v. Fidelity Mgmt. Trust Co.*, 323 F.

24  Supp. 2d 132, 145 (D. Mass. 2004).

25        In addition, a co-fiduciary claim must be supported by facts showing "actual

26  knowledge" by the defendant that another fiduciary breached a duty or knowing

27

28  _____
[18] The exemption set forth under Section 408(e) applies to claims under
Section 406(b).  *See Howard*, 100 F.3d at 1488.

SITRICK DEFS.' NOT. OF MOT. & MOT. TO DISMISS THE FIRST AMENDED COMPL.   24
CASE NO. CV-10-2741 JHN (PJWx)

1   participation by the defendant in a breach.  *Donovan v. Cunningham*, 716 F.2d

2   1455, 1475 (5th Cir. 1983).  As shown above, none of the Sitrick Defendants

3   breached any fiduciary duties under ERISA; and none, therefore, could have

4   participated in or had knowledge of a breach by the other.  Similarly, the Complaint

5   alleges no facts suggesting that either Mr. or Ms. Sitrick knew of or participated in

6   a breach of fiduciary duty by Reliance with respect to the Repurchase Transaction.

7   Count III thus fails as a matter of law.  *See Lee v. Burkhart*, 991 F.2d 1004, 1010-

8   11 (2d Cir. 1993).

9   **IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR EQUITABLE RELIEF**
10  **      (COUNT IV).**

11          Under this Count, Plaintiffs seek equitable relief for Defendants' ERISA

12  violations and "improper use of the Plan's assets."  This claim does not assert an

13  independent substantive violation of ERISA, but instead appears to seek relief

14  based on the claims asserted in Counts I-III.  As discussed above, Plaintiffs fail to

15  state a claim under those Counts as to the Sitrick Defendants.  Count IV must also,

16  therefore, be dismissed as a matter of law.

17                                    **CONCLUSION**

18          For the reasons discussed above, the First Amended Complaint should be

19  dismissed in its entirety without leave to amend.

20  Dated:  June 21, 2010

21

22  GREGORY A. GARBACZ                JAMES J. BROSNAHAN
    CONNIE M. ANDERSON                PAUL FLUM
23  KLINEDINST PC                     GEORGE C. HARRIS
                                      MORRISON & FOERSTER LLP
24  Attorneys for Defendants
    MICHAEL S. SITRICK and        By: _____*/s/ James J. Brosnahan*_____
25  NANCY SITRICK                         James J. Brosnahan
                                      Attorneys for Defendants
26                                    MICHAEL S. SITRICK, NANCY
                                      SITRICK, and the MICHAEL AND
27                                    NANCY SITRICK TRUST

28