1  KEITH D. KLEIN (184846)
   SHELLY C. GOPAUL (246382)
2  **BRYAN CAVE LLP**
   120 Broadway, Suite 300
3  Santa Monica, California 90401-2386
   Telephone: (310) 576-2100
4  Facsimile: (310) 576-2200
   E-Mail: keith.klein@bryancave.com
5         shelly.gopaul@bryancave.com

6  W. BARD BROCKMAN (GA 084230) (admitted *pro hac vice*)
   MATTHEW PEARCE (GA 569019) (admitted *pro hac vice*)
7  **BRYAN CAVE LLP**
   One Atlantic Center, 14th Floor, 1201 West Peachtree Street, NW
8  Atlanta, GA 30309-3488
   Telephone: (404) 572-6600
9  Facsimile: (404) 572-6999
   E-Mail: bard.brockman@bryancave.com
10        matt.pearce@bryancave.com

11  Attorneys for Defendant
    RELIANCE TRUST COMPANY

12

13

14            IN THE UNITED STATES DISTRICT COURT

15        FOR THE CENTRAL DISTRICT OF CALIFORNIA

16  RICHARD WOOL and ALAN MAYER, on         Case No. CV10-02741
    behalf of the Sitrick and Company Employee
17  Stock Ownership Plan,

18                    Plaintiffs,            **RELIANCE TRUST
                                             COMPANY'S NOTICE OF
19          vs.                              MOTION AND MOTION TO
                                             DISMISS FIRST AMENDED
20  MICHAEL S. SITRICK and NANCY            COMPLAINT;
    SITRICK, husband and wife; THE          MEMORANDUM OF POINTS
21  MICHAEL AND NANCY SITRICK               AND AUTHORITIES**
    TRUST, a trust; RELIANCE TRUST
22  COMPANY, a Georgia corporation;,        [Filed concurrently with Request for
                                            Judicial Notice and (Proposed)
23                    Defendants,            Order]

24                                          Date: August 2, 2010
    SITRICK AND COMPANY, INC., a            Time: 2:00 p.m.
25  California corporation; SITRICK AND     Ctrm: 790
    COMPANY EMPLOYEE STOCK               Judge: Hon. Jacqueline H. Nguyen
26  OWNERSHIP PLAN;

27              Nominal Defendants.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE THAT on August 2, 2010 at 2:00 p.m., or as soon

3    thereafter as the matter may be heard, in the Courtroom of the Honorable Jacqueline

4    H. Nguyen, Courtroom 790, located at the United States District Court, Western –

5    Roybal Division, 255 East Temple Street, Los Angeles, California, defendant

6    Reliance Trust Company ("Reliance") will and hereby does move this Court for an

7    order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing

8    the First Amended Complaint of plaintiffs Richard Wool and Alan Mayer on the

9    grounds that the plaintiffs have failed to state a claim upon which relief may be

10   granted against Reliance.

11       This motion is based on this Notice of Motion, the attached Memorandum of

12   Points and Authorities, the pleadings and papers on file in this action, the oral

13   argument of counsel, and such other and further matters as may be adduced upon

14   hearing.

15       This motion is made following the conference of counsel required by L.R. 7-

16   3, which took place on June 16, 2010.

17   Dated: June 21, 2010                    Respectfully submitted,

18
19                                           BRYAN CAVE LLP

20                                           By:   /s/ Keith D. Klein
21                                                 KEITH D. KLEIN
                                                   SHELLY C. GOPAUL
22
23                                           Attorneys for Reliance Trust Company

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 1 -

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ................................................ 2

    A.   Plaintiffs' Allegations in the First Amended Complaint ....................... 2

        1.   The Establishment of the Sitrick and Company ESOP .............. 2

        2.   The Purported "Personal Goodwill Transaction." ...................... 2

        3.   Reliance's Appointment as Trustee for the Stock
           Redemption Transaction. ...................................................... 3

    B.   Plaintiffs' Allegations Regarding the Stock Repurchase
       Transaction Are Refuted by the Valuation Report ................................ 5

III.  LEGAL STANDARD ....................................................... 7

IV.  ARGUMENT ..................................................................... 8

    A.   Plaintiffs' ERISA § 404 Breach of Fiduciary Duty Claim Against
       Reliance Fails As a Matter of Law Because It Is Premised On a
       Demonstrably False Allegation. ........................................................ 8

    B.   Plaintiffs' ERISA § 406 Prohibited Transaction Claim Against
       Reliance Fails As A Matter of Law. .................................................. 10

        1.   ERISA's Prohibited Transaction Rules and Exemptions. ......... 10

        2.   The Stock Repurchase Transaction Was Not a Prohibited
           Transaction Because the ESOP Received Adequate
           Consideration. ................................................................... 11

    C.   Plaintiffs' ERISA § 405 Co-Fiduciary Liability Claim Against
       Reliance Fails As a Matter of Law. .................................................. 12

        1.   Plaintiffs' ERISA § 405 Claim Depends Entirely on the
           False Allegation that Reliance and BCC Undervalued the
           ESOP's Stock by Considering Only a Fraction of SCI's
           Income Stream. ................................................................... 13

        2.   Plaintiffs Allege No Facts Showing that Reliance Had
           Actual Knowledge of Any Purported Fiduciary Breaches
           of the Sitricks. ................................................................... 13

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- i -

3.  Plaintiffs Fail to Plausibly Allege that the Sitricks Were Fiduciaries With Respect to the Stock Repurchase Transaction. ................................................................. 17

V.   CONCLUSION .................................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. ---, 129 S. Ct. 1937 (2009)....................................................... 7, 17, 18

*Balisteri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988)............................................................................ 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................... 7

*Davidson v. Cook,*
    567 F. Supp. 225 (E.D. Va. 1983) .................................................................. 14

*Harris v. Amgen,*
    2010 WL 744123 (C.D. Cal. 2010)................................................................. 18

*Herrington v. Household Int'l, Inc.,*
    2004 WL 719355 (N.D. Ill. March 31, 2004)................................................. 15

*In re Calpine ERISA Litig.,*
    2005 WL 1431506 (N.D. Cal. 2005) .............................................................. 18

*In re McKesson HBOC, Inc. ERISA Litig.,*
    391 F. Supp. 2d 812 (N.D. Cal. 2005)................................................... 9, 15, 16

*In re Sprint Corporation ERISA Litigation,*
    388 F. Supp. 2d 1207 (D. Kan. 2004)............................................................. 15

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)........................................................................... 5

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001)............................................................................. 5

*Newman v. OneWest Bank, FSB,*
    2010 WL 797188 (C.D. Cal. 2010)................................................................... 7

*Pesci v. IRS,*
    67 F. Supp. 2d 1189 (D. Nev. 1999), *aff'd*, 225 F.3d 663 (9th Cir. 2000)........... 7

*Stein v. Smith,*
    270 F. Supp. 2d 157 (D. Mass. 2003) ............................................................. 14

*Wright v. Oregon Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004)..................................................................... 9, 17

## STATUTES

29 U.S.C. § 1002(14) ....................................................................................... 11

29 U.S.C. § 1002(21)(A).................................................................................. 18

29 U.S.C. § 1102(18) ....................................................................................... 11

29 U.S.C. § 1104 ............................................................................................ 8, 9

29 U.S.C. § 1104(a)(1)(B).................................................................................. 8

29 U.S.C. § 1105 ..................................................................................... passim

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- iii -

29 U.S.C. § 1105(a)(1)...................................................................... 14, 16

29 U.S.C. § 1105(a)(3)........................................................................ 14

29 U.S.C. § 1106 ................................................................... 10, 11, 12

29 U.S.C. § 1106(a)(1)(D) .................................................................. 10

29 U.S.C. § 1107(d)(5)........................................................................ 11

29 U.S.C. § 1108 ......................................................................... 10, 11

29 U.S.C. § 1108(e).................................................................... 11, 12

29 U.S.C. 1002(15) ............................................................................ 11

IRC § 4975 ......................................................................................... 10

## OTHER AUTHORITIES

5C Wright & Miller, FED. PRAC. & PRO., 1363 (3d ed. 2004)................................. 8

## RULES

Fed. R. Civ. P. 12(b)(6)........................................................................ 5

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

This action arises from a December 2008 stock redemption transaction in which the Sitrick and Company Employee Stock Ownership Plan (the "ESOP") sold its shares of Sitrick and Company, Inc. ("SCI" or the "Company") stock to a trust established for the benefit of Defendants Michael Sitrick and Nancy Sitrick (the "Sitrick Trust").  Plaintiffs' First Amended Complaint refers to this transaction as the "Stock Repurchase Transaction."

Reliance was the independent fiduciary for the ESOP with respect to the Stock Repurchase Transaction.[1]  Plaintiffs charge that Reliance breached its fiduciary duties to the participants of the ESOP by approving a redemption price for the ESOP's shares that represented less than fair market value.  Plaintiffs further contend that the artificially low redemption price approved by Reliance resulted from an assumption made during the valuation process that nearly 89.5% of the Company's income stream should be viewed as the property of Mr. Sitrick, and that only 10.5% of SCI's income should be considered in the determination of the fair market value of the ESOP's stock.

Plaintiffs' allegation that Reliance breached its fiduciary duties by failing to consider all the Company's income stream during the valuation process is directly refuted by the valuation report prepared in connection with the Stock Repurchase Transaction.  That report demonstrates that all of SCI's income stream was considered the property of the Company during the valuation process, and that the division of the income alleged by Plaintiffs simply did not occur.  Because all of Plaintiffs' claims against Reliance are premised upon this demonstrably false allegation, the First Amended Complaint fails to state a plausible claim against Reliance.  Plaintiffs' claims against Reliance also suffer from other deficiencies, as detailed below.  The First Amended Complaint should therefore be dismissed

---

[1]    Reliance is one of the nation's largest independent trust companies, and it is based in Atlanta, Georgia.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  without leave to amend.

2  **II.    FACTUAL BACKGROUND**

3        **A.    Plaintiffs' Allegations in the First Amended Complaint.**

4             **1.    The Establishment of the Sitrick and Company ESOP.**

5        Plaintiffs Wool and Mayer are former participants in the ESOP. [First

6  Amended Complaint ("FAC"), ¶¶ 1-2, 57.] The ESOP was established in March

7  1999 to provide eligible employees of SCI with the opportunity to own stock in the

8  Company. [*Id.*, ¶ 17.] Prior to the formation of the ESOP, Mr. Sitrick owned 100%

9  of the Company's stock. [*Id.*, ¶ 21.]

10        In order to establish the ESOP, Mr. Sitrick sold 1,702,400 shares of Class B

11 stock to the ESOP for approximately $15,321,600. [*Id.*, ¶ 22.] To finance that

12 transaction, SCI borrowed the amount of the stock purchase price from a lender and

13 then loaned it to the ESOP. [*Id.*, ¶ 23.] The ESOP then paid Mr. Sitrick for the

14 Class B shares and delivered to SCI a promissory note payable in installments of

15 principal and interest. [*Id.*] Following the March 1999 ESOP transaction, the ESOP

16 owned 24.32% of the total equity in SCI through its Class B shares, and Sitrick

17 owned the remaining 75.68% of the total equity through his Class A shares. [*Id.*]

18        There were no employee contributions to the ESOP. Instead, SCI made

19 annual contributions to the ESOP to enable it to pay down the promissory note. [*Id.*,

20 ¶ 24.] SCI also paid discretionary dividends to the ESOP, which were used to pay

21 down the promissory note. [*Id.*]

22             **2.    The Purported "Personal Goodwill Transaction."**

23        Plaintiffs allege upon "information and belief" that sometime "between 2004

24 and 2008, Sitrick entered into a verbal or written royalty agreement with SCI under

25 which SCI was granted the nonexclusive and revocable right to use Sitrick's

26 Personal Goodwill in consideration for an annual royalty payment to Sitrick to be

27 agreed upon annually." [*Id.*, ¶ 37.] Plaintiffs contend that this transaction

28 "substantially diluted the value of SCI assets and employer securities owned by the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   ESOP." [*Id.* at ¶ 43.] Plaintiffs further allege that "Sitrick concealed the Personal

2   Goodwill Transaction and the royalty payments from SCI employees and ESOP

3   participants," and that "[t]hese facts were not discovered until 2009 when SCI's

4   financial statements for December 31, 2008, and June 30, 2009 (unaudited), were

5   filed with the Securities Exchange Commission . . . ." [*Id.*, ¶ 38.] Finally, Plaintiffs

6   contend that the "financial statements revealed that Sitrick caused SCI to expend

7   $3,400,000 for the year ended December 31, 2008, and $2,683,000 for the six month

8   period ended June 30, 2009, as the royalty due for use of the Personal Goodwill."

9   [*Id.*, ¶ 39.] Plaintiffs do not allege that Reliance played any role in the alleged

10  Personal Goodwill Transaction, if that transaction indeed occurred.[2]

11              **3.    Reliance's Appointment as Trustee for the Stock Redemption**

12                     **Transaction.**

13          In 2008, the SCI Board of Directors retained Reliance as an independent

14  fiduciary of the ESOP in connection with the proposed Stock Redemption

15  Transaction, in which the ESOP would sell its Class B shares in the Company to the

16  Sitrick Trust. [*Id.*, ¶ 46.] Reliance replaced Mr. Sitrick as the sole trustee of the

17  ESOP, a position that he held from the formation of the ESOP in 1999 to the

18  retention of Reliance in 2008. [*Id.*, ¶ 19.] As the independent fiduciary of the

19  ESOP with respect to the Stock Redemption Transaction, Reliance's task was to

20  determine whether the ESOP should sell its Class B shares to the Sitrick Trust.

21  Reliance was also responsible for ensuring that the ESOP received adequate

22  consideration for its Company stock if it determined that the ESOP should sell its

23

24  [2]     Reliance understands that the Sitrick Defendants' position is that the so-called
    Personal Goodwill Transaction never occurred. Regardless of whether or not the
25  transaction occurred, Reliance had no knowledge of it. In fact, Plaintiffs do not
    allege that Reliance had any involvement with the alleged Personal Goodwill
26  Transaction, but allege only that the Sitrick Defendants "persuaded Reliance"
    to "assume that Sitrick's Personal Goodwill represented approximately 89.5% of the
27  SCI income stream . . . ." [FAC ¶ 54.] As discussed below, this allegation is
    demonstrably false and may be disregarded by the Court in ruling on Reliance's
28  Motion to Dismiss.

1   shares. In order to make that determination, Reliance hired an independent financial

2   advisor, BCC Capital Partners ("BCC"), to prepare a valuation and fairness opinion

3   with respect to the transaction. [FAC, ¶ 46.][3]

4        Following a due diligence and valuation process, Reliance and BCC

5   determined that the Sitrick Trust's offer of $1,700,000 to redeem the ESOP's Class

6   B shares represented adequate consideration and was fair to the ESOP's participants.

7   [*Id.*, ¶ 51.] The ESOP's Class B shares were thereafter sold to the Sitrick Trust, and

8   the proceeds of the sale were distributed to the accounts of the ESOP participants,

9   including Plaintiffs. [*Id.*, ¶ 57.]

10        Plaintiffs allege that "Reliance and its financial advisor failed to make a

11   careful and prudent investigation of the circumstances prevailing at the time of the

12   proposed Stock Repurchase Transaction and failed to determine in good faith the

13   fair market value of the ESOP's Class B shares." [*Id.*, ¶ 50.] Specifically, Plaintiffs

14   allege that "[u]pon information and belief, Sitrick persuaded Reliance and their [sic]

15   financial advisor to assume that Sitrick's Personal Goodwill represented

16   approximately 89.5% of the SCI income stream and therefore any valuation utilizing

17   the SCI income stream should be treated approximately 89.5% as the property of

18   Sitrick and 10.5% as the property of SCI for purposes of valuing the ESOP's Class

19   B shares." [*Id.*, ¶ 54.] Plaintiffs further allege that because Reliance and BCC only

20   considered 10.5% of SCI's income stream to be the property of the Company, the

21   resulting valuation was a "colossal understatement of the fair market value of

22   employer securities," and that the "ESOP received far less than adequate

23   consideration" in the Stock Repurchase Transaction. [*Id.*, ¶¶ 55-56.]

24

25   [3]   The First Amended Complaint does not reference BCC by name, and instead

26   refers to an "unknown financial advisor." But BCC's identity may be derived from
the valuation report and fairness opinion prepared by BCC in connection with the

27   Stock Repurchase Transaction. As discussed below, the Court may consider the
valuation report because it is referenced in the First Amended Complaint and it is

28   central to Plaintiffs' claims against Reliance.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 4 -

**B.**   **Plaintiffs' Allegations Regarding the Stock Repurchase Transaction Are Refuted by the Valuation Report.**

All of Plaintiffs' claims against Reliance rest on the allegation, made on "information and belief," that 89.5% of SCI's income was treated as property of Mr. Sitrick during the valuation process, and that only 10.5% of SCI's income was treated as property of the Company. Plaintiffs contend that this assumption resulted in an artificially low valuation of the Company stock held by the ESOP because the majority of SCI's income stream was not considered. The valuation report prepared by BCC, however, shows that no such assumption was made. [A true and correct copy of the BCC Valuation Report and Fairness Opinion is attached to Reliance Trust Company's Request for Judicial Notice as **Exhibit A**.][4] Instead, all of SCI's income stream was treated as the property of the Company for the purposes of the valuation.

BCC utilized two valuation methods in connection with the Stock Repurchase Transaction. First, BCC applied the Discounted Cash Flow Method, in which "value is determined by performing a prospective analysis of the subject business to estimate future net cash flows." [Ex. A at p. 40.] Specifically, BCC calculated SCI's operating income in 2007 and the twelve-month period ending September 2008, and then used those figures to project the Company's income during the

---

[4]   Although the First Amended Complaint does not include the BCC valuation report as an exhibit, the Court may consider extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into a motion for summary judgment.). Here, Plaintiffs' First Amended Complaint refers to the BCC valuation report, and it also includes factual allegations regarding the purported terms and conditions of BCC's report and fairness opinion. [*See, e.g.*, FAC, ¶¶ 46, 51-52, 54.] The valuation report is integral to Plaintiffs' claims against Reliance and the Court may therefore consider it without converting the instant motion into a motion for summary judgment.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 5 -

1    ensuing four years. [*Id.* at Ex. 6.]  The Company's projected income was then used
2    to determine its enterprise value. [*Id.*]  In its application of the Discounted Cash
3    Flow Method, BCC considered all of the revenue and income of SCI to be the
4    property of SCI. [*Id.*]  BCC did not, as Plaintiffs allege, consider any portion of
5    SCI's income, whether 89.5% or otherwise, to be the property of Mr. Sitrick.  Using
6    the Discounted Cash Flow Method, BCC determined the enterprise value of SCI to
7    be $8.442 million as of December 23, 2008. [*Id.* at 43.]

8        Second, BCC used the Capitalization of Historical Earnings Method to
9    determine the value of the Company. [*Id.* at pp. 43-44.]  In its application of that
10   valuation method, BCC calculated SCI's Earnings Before Income and Taxes
11   ("EBIT") during 2006, 2007, and for the trailing twelve months ending September
12   30, 2008. [*Id.*]  BCC's calculation of the Company's EBIT over that period
13   attributed all of SCI's income to SCI, and it did not consider any of the Company's
14   income as the property of Mr. Sitrick. [*Id.* at p. 43 and Ex. 8.]  Using the
15   Capitalization of Historical Earnings Method, BCC determined the enterprise value
16   of the Company to be $8.512 million as of December 23, 2008. [*Id.* at p. 44.]

17       BCC then averaged the results of the two valuation methods, which resulted
18   in a concluded enterprise value of $8.477 million as of December 23, 2008. [*Id.* at
19   p. 44.]  BCC next added certain assets, such as the Company's aircraft, and then
20   deducted the Company's debts.  After performing these calculations, BCC reached a
21   final enterprise value of $8.23 million. [*Id.*]

22       BCC then determined that the value of the ESOP's Class B shares equaled
23   $1.96 million, considering that the ESOP held 23.81% of the outstanding shares in
24   the Company. [*Id.*]  BCC then deducted the ESOP's remaining loan balance of
25   $760,000, which resulted in a net redemption price of $1,200,000. [*Id.*]  Finally,
26   BCC established a range of value by adjusting the discount rate upwards and
27   downwards, and concluded that the value of the ESOP's stock ranged from
28   $1,080,000 to $1,330,000. [*Id.*]

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 6 -

1    As noted above, the Sitrick Trust offered to redeem the ESOP's stock in
2  exchange for a cash payment of $1,700,000, as well as an agreement to cancel the
3  ESOP's remaining indebtedness of $760,000 under the promissory note. Because
4  the value of the Sitrick Trust's offer exceeded BCC's valuation range, BCC offered
5  its opinion that the offer constituted adequate consideration and that the transaction
6  was fair from the ESOP's perspective. Relying upon BCC's valuation, and also on
7  its independent judgment, Reliance approved the Stock Repurchase Transaction.

8  ## III.   LEGAL STANDARD

9    To survive a motion to dismiss, "a complaint must contain sufficient factual
10 matter, accepted as true, to 'state a claim to relief that is plausible on its face."
11 *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp.*
12 *v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the
13 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions,
14 and a formulaic recitation of the elements of a cause of action will not do."
15 *Twombly*, 550 U.S. at 555 (citation omitted). A plaintiff cannot meet his burden
16 simply by contending that he "might later establish some 'set of [undisclosed] facts'
17 to support recovery." *Id.* at 561. Rather, a "claim has facial plausibility when the
18 plaintiff pleads factual content that allows the court to draw the reasonable inference
19 that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

20    In its consideration of a motion to dismiss, "[t]he court need not . . . accept as
21 true allegations that contradict matters properly subject to judicial notice, are
22 conclusory or mere legal conclusions, or unwarranted deductions of fact or
23 unreasonable inferences, or contradicted by documents referred to in the Complaint,
24 or are internally inconsistent." *Pesci v. IRS*, 67 F. Supp. 2d 1189, 1191-92 (D. Nev.
25 1999), *aff'd*, 225 F.3d 663 (9th Cir. 2000) (citations omitted); *see also Newman v.*
26 *OneWest Bank, FSB*, 2010 WL 797188, at *2 (C.D. Cal. 2010) ("The district court
27 will not accept as true pleading allegations that are contradicted by facts that can be
28 judicially noticed or by other allegations or exhibits attached to or incorporated in

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 7 -

the pleading") (quoting 5C Wright & Miller, FED. PRAC. & PRO., 1363 (3d ed. 2004)).  Dismissal can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV.   ARGUMENT

### A.   Plaintiffs' ERISA § 404 Breach of Fiduciary Duty Claim Against Reliance Fails As a Matter of Law Because It Is Premised On a Demonstrably False Allegation.

In Count I of the Complaint, Plaintiffs assert a breach of fiduciary duty claim against Reliance, pursuant to ERISA § 404, 29 U.S.C. § 1104.  That section of ERISA imposes upon fiduciaries a duty of prudence, a duty of loyalty to the plan participants, and a duty to comply with the plan documents.  *Id.*  Plaintiffs allege that Reliance breached its duties of prudence and loyalty in connection with the Stock Repurchase Transaction by assuming that the Personal Goodwill Transaction was valid.  [FAC, ¶ 70.]  Plaintiffs further allege that Reliance's acceptance of the validity of the Personal Goodwill Transaction led Reliance and BCC to assume during the valuation process that 89.5% of the SCI income stream should be considered the property of Mr. Sitrick, rather than the property of SCI.  [*Id.*]  Plaintiffs charge that this alleged division of SCI's income stream resulted in a depressed stock valuation, which caused the ESOP to receive less than adequate consideration in the Stock Repurchase Transaction.  [*Id.*]

To state a claim for breach of the duty of prudence imposed by ERISA § 404, Plaintiffs must allege facts showing that Reliance failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).  Moreover, in order to state a claim for breach of the duty of prudence in connection with the Stock Repurchase Transaction, Plaintiffs must

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   allege facts showing that Reliance "failed to employ[] the appropriate methods to

2   investigate the merits of the [transaction] and to structure the [transaction]." *Wright*

3   *v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004). With respect to

4   the duty of loyalty, Plaintiffs must allege facts that plausibly establish that Reliance

5   engaged in "actual disloyal conduct." *In re McKesson HBOC, Inc. ERISA Litig.*,

6   391 F. Supp. 2d 812, 834 (N.D. Cal. 2005).

7        Plaintiffs' ERISA § 404 claim against Reliance is premised entirely on the

8   allegations that (1) Reliance accepted the validity of the Personal Goodwill

9   Transaction; and (2) because Reliance accepted the validity of that transaction, it

10  accepted a valuation of the ESOP's stock performed by BCC that only considered

11  10.5% of SCI's income stream to be the property of the Company. Plaintiffs do not

12  allege that Reliance did anything else improper with respect to the Stock Repurchase

13  Transaction, and their ERISA § 404 claim therefore rises or falls on their allegation

14  as to the division of the Company's income stream during the valuation process.

15        Plaintiffs' ERISA § 404 claim against Reliance – whether premised upon an

16  alleged breach of the duty of prudence or the duty of loyalty – fails as a matter of

17  law because the purported division of SCI's income stream during the valuation

18  process simply did not occur. Instead, as discussed above and as demonstrated by

19  BCC's valuation report, all of SCI's income was considered to be the property of the

20  Company in the valuation. BCC's valuation report also makes no reference to any

21  purported Personal Goodwill Transaction, and that alleged transaction was not

22  considered by either Reliance or BCC in connection with the Stock Repurchase

23  Transaction.

24        Because Plaintiffs' allegation regarding the purported division of SCI's

25  income stream is refuted by the valuation report, the Court need not accept it as true.

26  When that false allegation is stripped from the First Amended Complaint, Plaintiffs'

27  ERISA § 404 claim against Reliance collapses. Plaintiffs' ERISA § 404 claim

28  against Reliance should therefore be dismissed.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**B.    Plaintiffs' ERISA § 406 Prohibited Transaction Claim Against Reliance Fails As A Matter of Law.**

Plaintiffs' claim that Reliance violated ERISA § 406 by engaging in a prohibited transaction in connection with the Stock Repurchase Transaction also depends on the false allegation that most of SCI's income stream was considered the property of Mr. Sitrick in BCC's valuation. Aside from that averment, Plaintiffs allege no facts showing that the ESOP failed to receive adequate consideration for its stock in the transaction. As discussed below, if the ESOP received adequate consideration in the Stock Repurchase Transaction, the redemption does not constitute a "prohibited transaction" for the purposes of ERISA § 406, regardless of Plaintiffs' allegation that the transaction involved "parties in interest."

**1.    ERISA's Prohibited Transaction Rules and Exemptions.**

Section 406 of ERISA and Section 4975 of the Internal Revenue Code prohibit plans subject to ERISA from engaging in specified transactions involving plan assets with persons or entities who are "parties in interest" within the meaning of ERISA, or "disqualified persons" within the meaning of Section 4975 of the Code, unless an exemption applies. Transactions that fall within the scope of ERISA § 406 or IRC § 4975 are referred to as "prohibited transactions." A party in interest or a disqualified person who engages in a non-exempt prohibited transaction may be subject to excise taxes and other penalties and liabilities under ERISA and the Code. In addition, the fiduciary of the plan that engages in such a non-exempt prohibited transaction may also be subject to penalties and liabilities. *See* ERISA 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

ERISA § 408, however, sets forth a number of exemptions to the prohibited transaction rules. If one or more of those exemptions apply, the prohibited transaction rules set forth in ERISA § 406 do not apply.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 10 -

2.   **The Stock Repurchase Transaction Was Not a Prohibited Transaction Because the ESOP Received Adequate Consideration.**

Plaintiffs allege that the Stock Repurchase Transaction constituted a prohibited transaction under ERISA § 406 because Mr. Sitrick, Ms. Sitrick, and the Sitrick Trust were "parties in interest" to the transaction. [FAC, ¶ 79.] Although it is not altogether clear, Plaintiffs apparently contend that those defendants were "parties in interest" to the Stock Repurchase Transaction because Mr. and Ms. Sitrick were allegedly fiduciaries with respect to that transaction, or because those parties collectively held a majority interest in the Company.[5]

Even accepting as true Plaintiffs' legal conclusion that the Stock Repurchase Transaction constituted a prohibited transaction under ERISA § 406, the inquiry does not end there. ERISA § 408 sets forth numerous exemptions to the prohibited transactions outlined in ERISA § 406. One of those exemptions provides that the provisions of ERISA § 406 "shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . if such acquisition, sale, or lease is for adequate consideration." ERISA § 408(e), 29 U.S.C. § 1108(e). "Qualifying employer securities" includes employer stock, such as the ESOP's Class B shares. ERISA § 407(d)(5), 29 U.S.C. § 1107(d)(5). In the case of non-public stock, such as the ESOP's Class B shares, "adequate consideration" is defined as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." ERISA § 3(18), 29 U.S.C. 1102(18).

Applied here, the Stock Repurchase Transaction would only be considered a prohibited transaction if Plaintiffs plausibly alleged that the transaction resulted in

---

[5]   ERISA § 3(14), 29 U.S.C. § 1002(14), defines a "party in interest" to include, in pertinent part: (1) a plan fiduciary; (2) an owner, direct or indirect, of 50% or more of the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation; and (3) a relative (as defined in ERISA § 3(15)) of any individual described in (2).

- 11 -

the ESOP receiving less than adequate consideration. If that were the case, then the exemption set forth in ERISA § 408(e) would not apply. But Plaintiffs' contention that the ESOP received less than fair market value in the Stock Repurchase Transaction is premised entirely on the false allegation that BCC and Reliance undervalued the ESOP's stock by considering only 10.5% of SCI's income stream to be the property of SCI. As discussed above, that allegation is controverted by BCC's valuation report. Aside from that allegation, Plaintiffs do not allege that the stock value determined by BCC and Reliance represented less than fair market value, or that either BCC or Reliance failed to act in good faith in connection with the valuation. Because Plaintiffs provide no factual support for the allegation that the ESOP received less than adequate consideration in the Stock Repurchase Transaction, the exemption set forth in ERISA § 408(e) applies. Accordingly, the Stock Repurchase Transaction is not a prohibited transaction, and Plaintiffs' claim against Reliance pursuant to ERISA § 406 fails as a matter of law.

### C.    Plaintiffs' ERISA § 405 Co-Fiduciary Liability Claim Against Reliance Fails As a Matter of Law.

Plaintiffs allege in Count III that Reliance is liable, pursuant to ERISA § 405, for the purported breaches of fiduciary duty of Mr. and Ms. Sitrick, who Plaintiffs contend were "de facto fiduciaries" with respect to the Stock Repurchase Transaction. Specifically, Plaintiffs allege that because Reliance allegedly "assum[ed] without reasonable basis that the Personal Goodwill Transaction was contractual, valid, and binding, Reliance Trust Company is liable as a co-fiduciary for the breaches of Defendants Sitrick and Nancy Sitrick regarding the Stock Repurchase Transaction as it participated knowingly in their fiduciary breaches, knowingly undertook to conceal their fiduciary breaches, and failed to make a reasonable effort to remedy their fiduciary breaches." [FAC, ¶ 87.] Plaintiffs' ERISA § 405 claim against Reliance fails because: (1) it is premised on the demonstrably false allegation that Reliance and BCC considered only a fraction of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 12 -

SCI's income stream in the valuation; (2) Plaintiffs fail to plausibly allege any knowing participation by Reliance in any alleged breaches committed by the Sitricks; and (3) Plaintiffs provide no factual support for the contention that the Sitricks were "de facto fiduciaries" with respect to the Stock Repurchase Transaction.

> **1.** **Plaintiffs' ERISA § 405 Claim Depends Entirely on the False Allegation that Reliance and BCC Undervalued the ESOP's Stock by Considering Only a Fraction of SCI's Income Stream.**

In support of their ERISA § 405 claim against Reliance, Plaintiffs allege that the Personal Goodwill Transaction represented a fiduciary breach by the Sitricks, and that Reliance "participated knowingly" in that alleged breach by "assuming without reasonable basis that the Personal Goodwill Transaction was contractual, valid, and binding" for the purposes of the Stock Repurchase Transaction. [FAC, ¶ 87.] Plaintiffs contend that the end result of Reliance's acceptance of the validity of the Personal Goodwill Transaction is that Reliance and BCC accepted an artificially low valuation that only considered a fraction of SCI's income stream.

As with Plaintiffs' other two claims against Reliance, Plaintiffs' ERISA § 405 claim depends entirely on Plaintiffs' false assumption that Reliance and BCC partitioned SCI's income stream during the valuation process. As shown above, that division did not occur and the alleged Personal Goodwill Transaction was not considered during in the Stock Repurchase Transaction. Because Plaintiffs do not allege that Reliance "participated knowingly" in any other alleged breaches committed by the Sitricks, Plaintiffs' ERISA § 405 claim against Reliance fails as a matter of law.

> **2.** **Plaintiffs Allege No Facts Showing that Reliance Had Actual Knowledge of Any Purported Fiduciary Breaches of the Sitricks.**

Although Plaintiffs are not specific as to what subsections of ERISA § 405 were allegedly violated by Reliance, they apparently travel under subsections

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

405(a)(1) and 405(a)(3).  ERISA § 405(a)(1) provides that a fiduciary may be liable for a breach of fiduciary duty by a co-fiduciary "if he participates *knowingly* in, or *knowingly* undertakes to conceal, an act or omission of such other fiduciary, *knowing* such act or omission is a breach." (Emphasis added). [*Compare* FAC, ¶ 87 (alleging that Reliance "participated knowingly in [Mr. and Ms. Sitrick's] fiduciary breaches," and "knowingly undertook to conceal their fiduciary breaches"). ERISA § 405(a)(3) provides for co-fiduciary liability where a fiduciary "has *knowledge* of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."  (Emphasis added). [*Compare* FAC, ¶ 87 (alleging that Reliance "failed to make a reasonable effort to remedy their fiduciary breaches").

The common element in both ERISA §§ 405(a)(1) and 405(a)(3)  is that the fiduciary must have *actual knowledge* of the alleged breach of fiduciary duty by the co-fiduciary.  *See, e.g., Stein v. Smith*, 270 F. Supp. 2d 157, 174 (D. Mass. 2003) (dismissing plaintiffs' ERISA § 405 claims after determining that the "plaintiffs have not met the standard set forth in ERISA, which requires an allegation of *knowing* participation in or facilitation of the underlying breach, by way of an independent breach by the co-fiduciaries.") (emphasis in original); *Davidson v. Cook*, 567 F. Supp. 225, 237 (E.D. Va. 1983) (dismissing plaintiff's ERISA § 405 claim after finding that defendants lacked requisite knowledge of alleged breaches, even where the court found that "at least some of the fiduciaries *should* have known of the breaches and taken steps to remedy them.") (emphasis in original).

Although ERISA § 405 requires a showing of actual knowledge by the fiduciary of a co-fiduciary's allege breach of fiduciary duty, Plaintiffs provide no factual support for the allegations that Reliance "participated knowingly" in the Sitricks' alleged fiduciary breaches, or that Reliance "knowingly undertook to conceal their fiduciary breaches." [FAC, ¶ 87.]  Instead, Plaintiffs allege that, "[i]n connection with the due diligence by Reliance and its financial advisor, Sitrick

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 14 -

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  intentionally failed to disclose information or made false or misleading statements
2  of fact which were material to the fairness of the proposed Transaction and the fair
3  market value of the ESOP's Class B shares." [FAC, ¶ 48.] Plaintiffs further allege
4  that Mr. Sitrick and Ms. Sitrick breached their fiduciary duties by failing to disclose
5  material information to Reliance in connection with the Stock Repurchase
6  Transaction. [FAC, ¶¶ 69, 71.]

7          Despite Plaintiffs' allegations that the Sitricks allegedly concealed their
8  purported fiduciary breaches from Reliance, Plaintiffs alternatively allege that
9  Reliance "participated knowingly" in those breaches. But Plaintiffs provide no
10  factual support for those allegations, and instead rely solely on conclusory
11  statements that recite the elements of the claim. Such bare and conclusory
12  allegations are insufficient to state an ERISA § 405 claim against Reliance. *See In*
13  *re Sprint Corporation ERISA Litigation*, 388 F. Supp. 2d 1207, 1230 (D. Kan. 2004)
14  (dismissing ERISA § 405 claim where plaintiff's claim was unsupported by any
15  factual allegations, and instead merely "parrot[ed] the language of the co-fiduciary
16  liability statute); *Herrington v. Household Int'l, Inc.*, 2004 WL 719355, *10 (N.D.
17  Ill. March 31, 2004) (dismissing ERISA § 405 claim after determining plaintiff's
18  allegation that the defendants breached their fiduciary duty by "knowingly
19  undertaking to conceal Household's failure to prudently and loyally manage Plan
20  assets" to be a "conclusory allegation that does not even meet the liberal
21  requirements under the notice pleading standard").

22          Plaintiffs' unsupported and conclusory allegations that Reliance knowingly
23  participated in the Sitricks' alleged breaches are similar to those found to be
24  insufficient to state a claim in *In re McKesson HBOC, Inc. ERISA Litigation*, 2002
25  WL 31431588 (N.D. Cal. Sept. 30, 2002). In *McKesson*, the court dismissed the
26  plaintiffs' ERISA § 405 claim after determining that the claim was insufficiently
27  supported by factual allegations. *Id.* at * 17. The plaintiffs in *McKesson* alleged
28  that "[t]he facts outlined in this Complaint demonstrate that the various fiduciaries

who are Defendants in this action either had knowledge of the fiduciary breaches committed and failed to take reasonable efforts to remedy the breaches, or by acts or omissions, concealed relevant information, which constituted breaches of fiduciary duty, in violation of ERISA § 405." *Id.* The *McKesson* court noted that "[t]his allegation is insufficient to put each defendant on notice of what it is that he, she, or it has done that allegedly gives rise to liability." *Id.* The court dismissed the claim with leave to amend, but instructed that if the plaintiffs elected to amend, they "shall identify the breaches of fiduciary duty, identify the defendants with knowledge of the breaches, identify how more specifically each defendants failed to take reasonable efforts to remedy the breach, and identify what acts the specific defendants took to conceal information." *Id.*

As in *McKesson*, Plaintiffs' ERISA § 405 claim against Reliance merely recites the elements of the claim, and it is unsupported by any factual allegations showing that Reliance knowingly participated in any breaches of fiduciary duty allegedly perpetrated by the Sitricks. Plaintiffs merely allege in vague and conclusory fashion that Reliance "participated knowingly in [the Sitricks'] fiduciary breaches," but they provide no specifics about any such breaches. Plaintiffs also do not specify how Reliance allegedly "knowingly undertook to conceal [the Sitricks'] fiduciary breaches"; nor do Plaintiffs explain what Reliance should have done to "remedy [the Sitricks'] fiduciary breaches." [FAC, ¶ 87.]

Plaintiffs' ERISA § 405 claim against Reliance not only lacks any factual support, but it is undermined by Plaintiffs own allegations. Although Plaintiffs allege that Reliance violated ERISA § 405 by "turning a blind eye to the [Personal Goodwill Transaction," Plaintiffs also allege that Reliance assumed that the Personal Goodwill Transaction was "contractual, *valid*, and binding." [FAC, ¶ 87.] ERISA § 405(a)(1) provides for co-fiduciary liability only where the fiduciary "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, *knowing that such act or omission is a breach.*"

- 16 -

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    (Emphasis added.) If Reliance allegedly assumed that the Personal Goodwill

2    Transaction was valid – which is what Plaintiffs allege – then Reliance did not have

3    the requisite knowledge that the transaction represented a breach of fiduciary duty.

4    In order to impose co-fiduciary liability upon Reliance related to the Personal

5    Goodwill Transaction, Plaintiffs must at least allege that Reliance was aware that

6    the transaction was invalid, and that it went along with it anyway.

> **3.    Plaintiffs Fail to Plausibly Allege that the Sitricks Were Fiduciaries With Respect to the Stock Repurchase Transaction.**

9         In order for Reliance to be liable under ERISA § 405 for the alleged breaches

10   of the Sitricks, Plaintiffs must first establish that those defendants were fiduciaries

11   with respect to the Stock Repurchase Transaction. Because the purported fiduciary

12   status of Mr. and Ms. Sitrick is an essential element of Plaintiffs' ERISA § 405

13   claim, it must be established by "factual content that allows the court to draw the

14   reasonable inference that the defendant is liable for the misconduct alleged", and

15   mere "labels and conclusions" or "formulaic recitations" are insufficient. *Iqbal,*

16   *supra,* 129 S. Ct. at 1949. To establish that the Sitricks acted as fiduciaries with

17   respect to the Stock Repurchase Transaction, Plaintiffs must show that they

18   exercised "discretionary authority or discretionary control" in connection with that

19   transaction. *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir.

20   2004).

21        Plaintiffs fail to allege any facts showing that the Sitricks exercised

22   "discretionary authority or discretionary control" with respect to the Stock

23   Repurchase Transaction. Instead, Plaintiffs acknowledge that the SCI Board of

24   Directions retained Reliance "as an independent fiduciary for the ESOP to consider

25   and approve the sale" of the ESOP's assets. [FAC, ¶ 46.] Plaintiffs further

26   acknowledge that Reliance retained a financial advisor to prepare a "valuation

27   and/or fairness opinion to support the Transaction." [*Id.*] Moreover, Plaintiffs

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

allege that Reliance and BCC determined the fair market value of the ESOP's stock, and that Reliance "acted with discretionary authority in approving and closing the 2008 Stock Repurchase Transaction." [*Id.*, ¶¶ 51, 68.]

Despite these allegations, Plaintiffs allege in Paragraph 67 that the Sitricks "were each conflicted ERISA fiduciaries that acted with discretionary authority in structuring, approving, and executing the Personal Goodwill Transaction and the Stock Repurchase Transaction . . . ." [FAC, ¶ 67.] Plaintiffs provide no factual support for their conclusory allegation that the Sitricks exercised discretionary authority with respect to those transactions, and the Court need not accept that unsupported conclusion as true. *Iqbal*, 129 S. Ct. at 1949; *see also Harris v. Amgen*, 2010 WL 744123, at *6 (C.D. Cal. 2010) (dismissing ERISA breach of fiduciary duty claims where plaintiff's allegations regarding the defendant's fiduciary status based solely on "legal conclusions that lack a sufficient factual basis"); *In re Calpine ERISA Litig.*, 2005 WL 1431506, at *3 (N.D. Cal. 2005) ("While Plaintiff has mimicked the language of [ERISA § 3(21)(A),] 29 U.S.C. § 1002(21)(A), he does not provide factual allegations in support of this conclusion sufficient to support a finding that the Director Defendants are *de facto* fiduciaries on this basis."). The only plausible inference to be drawn from Plaintiffs' allegations is that Reliance was the fiduciary to the ESOP with respect to the Stock Repurchase Transaction. Because there is no support for the notion that the Sitricks also acted as fiduciaries in connection with that transaction, Reliance cannot be held liable for their alleged acts pursuant to ERISA § 405.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

- 18 -

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Reliance should be dismissed.

Dated:  June 21, 2010

Respectfully submitted,

**BRYAN CAVE LLP**


By: /s/ Keith D. Klein
     KEITH D. KLEIN
     SHELLY C. GOPAUL


W. Bard Brockman (admitted *pro hac vice*)
Georgia Bar No. 084230
Matthew J. Pearce (admitted *pro hac vice*)
Georgia Bar No. 569019
**BRYAN CAVE LLP**
One Atlantic Center, 14th Floor
1201 West Peachtree St., NW
Atlanta, Georgia 30309
Telephone: (404) 572-6600
Facsimile: (404) 572-6999


Attorneys for Defendant
Reliance Trust Company

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

MOTION TO DISMISS FIRST AMENDED COMPLAINT

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300, Santa Monica, CA 90401. My email address is judy chiri@bryancave.com.

On June 21, 2010, I served the foregoing documents, described as **RELIANCE TRUST COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**, on the interested parties as follows:

Shelly C. Gopaul
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401
Attorneys for Defendant Reliance Trust Company

James J. Brosnahan
Paul Flum
Morrison & Foerster, LLP
425 Market Street
San Francisco, California 94105
Attorneys for Defendants Michael S. Sitrick, Nancy Sitrick, and the Michael and Nancy Sitrick Trust

☒   VIA ELECTRONIC SERVICE  The document was served via The United States District Court –Central District of California CM/ECF electronic transfer system which generates a Notice of Electronic Filing (NEF) upon the parties, the assigned judge and any registered user in the case.

☒   (BY U.S. MAIL) I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above. I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Bryan Cave LLP, Santa Monica, California. I am readily familiar with Bryan Cave LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service. Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

☒   (FEDERAL ONLY) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 21, 2010 at Santa Monica, California.

/s/ Judith C. Chiri
Judith C. Chiri

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386