Michael D. Braun
Braun Law Group, PC
10680 West Pico Blvd., Suite 280
Los Angeles, California 90064
Telephone: (310) 836-6000
Facsimile:  (310) 836-6010
service@braunlawgroup.com

Attorneys for Plaintiffs
*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WOOL and ALLAN MAYER, on behalf of the Sitrick and Company Employee Stock Ownership Plan,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL S. SITRICK and NANCY SITRICK, husband and wife; THE MICHAEL AND NANCY SITRICK TRUST, a trust; RELIANCE TRUST COMPANY, a Georgia corporation;<br><br>Defendants,<br><br>SITRICK AND COMPANY, INC., a California corporation; SITRICK AND COMPANY EMPLOYEE STOCK OWNERSHIP PLAN;<br><br>Nominal Defendants. | No. CV-10-02741 JHN-PJW<br><br>**PLAINTIFFS' OPPOSITION TO SITRICK DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: August 9, 2010<br>Judge: Hon. Jacqueline H. Nguyen |

# **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................**8**

**I. THE FAC ADEQUATELY ALLEGES THAT THE SITRICKS BREACHED THEIR FIDUCIARY DUTIES UNDER ERISA § 404 .. 12**

    A. The Sitricks Breached Their Fiduciary Duties Under ERISA By Causing The ESOP To Engage In The Repurchase Transaction ........ 12

        1. The Sitricks Were ERISA Fiduciaries With Respect to the Repurchase Transaction Because They Appointed Reliance ............................................................. 12

            *a.* *The Sitricks Had and Breached Fiduciary Duties to Prudently Select and Monitor Reliance* .................... 13

            *b.* *The Sitricks Had and Breached Fiduciary Duties to Provide Complete and Accurate Information to Reliance* .................................................................. 16

            *c.* *The Sitricks Had and Breached Fiduciary Duties to Prudently and Loyally Exercise De Facto Control Over Reliance* ........................................................... 18

            *d.* *The Case Cited by Defendant Is Distinguishable* ...... 19

        2. The Sitricks' Arguments About Their Misrepresentations and Omissions Miss the Mark ..................................... 21

    B. The Sitricks Breached Their Fiduciary Duties In Carrying Out The Goodwill Transaction ........................................................ 25

        1. The Sitricks Were ERISA Fiduciaries With Respect to the Goodwill Transaction ........................................... 25

Opposition to Sitrick Defendants'
Motion to Dismiss

2.   The Sitricks Breached Their Fiduciary Duties of Loyalty, Prudence, and Obedience in Carrying Out the Goodwill Transaction ...........................................................................32

3.   The Goodwill Transaction Resulted in Substantial Losses to the Plan ..............................................................................36

C.   Ms. Sitrick Had Involvement In And Knowledge Of The Challenged Transactions ..........................................................................38

II.   THE SITRICK DEFENDANTS CAUSED THE PLAN TO ENGAGED IN THE GOODWILL AND REPURCHASE TRANSACTIONS WHICH WERE PROHIBITED BY ERISA § 406(a) AND (b)...........................................................................39

A.   The Sitrick Defendants Are Liable Under § 406(a) And (b) Of ERISA As Fiduciaries Or Parties In Interest With Respect To The Goodwill Transaction ..................................................................39

B.   The Sitrick Defendants Are Liable Under § 406(a) And (b) Of ERISA As Fiduciaries Or Parties In Interest With Respect To The Repurchase Transaction ......................................................................43

III.   THE SITRICK DEFENDANTS ARE LIABLE AS CO-FIDUCIARIES UNDER ERISA § 405 ...................................................49

IV.   PLAINTIFFS HAVE STATED A CLAIM FOR EQUITABLE RELIEF ...............................................................................50

CONCLUSION ..............................................................................51

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

<u>**Cases**</u>:

*Akers v. Palmer*
71 F.3d 226 (6th Cir. 1995) .................................................................. 32

*Amalgamated Clothing & Textile Workers Union v. Murdock*
861 F.2d 1406 (9th Cir. 1988) ............................................................. 53

*Andrade v. Parson Corp.*
No. CV85-3344, 0090 WL 757367 (C.D. Cal. Jun. 21, 1990) ...................... 36, 37

*Ashcroft v. Iqbal*
129 S.Ct. 1937 (2009).................................................................34-35, 39

*Barry v. Trs. Of Int'l Ass'n Full-Time Salaried Officers
and Employees of Outside Local Unions and Dist. Counsel's Pension Plan*
404 F. Supp. 2d 145 (D.D.C. 2005) ....................................................... 44

*Batchelor v. Oak Hill Medical Group*
870 F.2d 1446 (9th Cir. 1989) ......................................................... 16, 45

*Beck v. PACE Int'l Union*
551 U.S. 96 (2007) .......................................................................... 31

*Bendaoud v. Hodgson*
578 F. Supp. 2d 257 (D. Mass. 2008) .................................................... 32

*Braden v. Wal-Mart Stores*
588 F.3d 585 (8th Cir. 2009) ............................................................. 50

*Concha v. London*
62 F.3d 1493 (9th Cir. 1995) ............................................................. 25

Opposition to Sitrick Defendants'
Motion to Dismiss

*Coyne & Delany Co. v. Selman*
98 F.3d 1457 (4th Cir. 1996) ................................................................. 16

*Cunha v. Ward Foods, Inc.*
804 F.2d 1418 (9th Cir. 1986) ...........................................................30-32

*DeFazio v. Hollister, Inc.*
636 F. Supp. 2d 1045 (E.D. Cal. 2009) ..........................................47-48

*Delta Star, Inc. v. Patton*
76 F. Supp. 2d 617 (W.D. Pa. 1999) ..........................................passim

*Donovan v. Bierwirth*
680 F.2d 263 (2d Cir. 1982) ......................................................... 15, 37

*Eckelkamp v. Beste*
201 F. Supp. 2d 1012 (E.D. Mo. 2002) ............................................. 32

*FTC v. Morton Salt Co.*
334 U.S. 37 (1948) ........................................................................... 50

*Harris v. Amgen, Inc.*
No.07-CV-5442, 2010 U.S. Dist. LEXIS 26283 (C.D. Cal. Mar. 2, 2010) ....21-22

*Harris v. Amgen, Inc.*
No. 07-CV-5442 (PSG), Dkt. 195 (June 18, 2010) .............................22

*Harris Trust and Savings Bank v. Solomon Smith Barney*
530 U.S. 238 (2000) ...................................................................47-49, 50

*Henry v. Champlain Enters., Inc.*
445 F.3d 610 (2d Cir. 2006) ............................................................. 48

*Howard v. Shay*
100 F.3d 1484 (9th Cir. 1996) ...............................................15, 28, 34

*In re Enron Cop. Sec. Derivative & ERISA Litig.*
284 F. Supp. 2d 511 (S.D. Tex. 2003)............................................... 19

*In re McKesson HBOC ERISA Litig.*
391 F. Supp. 2d 812 (N.D. Cal. 2005)............................................................36-37

*In re Morgan Stanley ERISA Litig.*
---F. Supp. 2d. ---, No. 07CIV 11285, 2009 WL 5947139 (S.D.N.Y. Dec. 9,
2009) ................................................................................................................18

*In re Pfizer Inc. ERISA Litig.*
No. 04CIV.10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ...................21, 45

*In re Polaroid ERISA Litig.*
362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...............................................................25

*In re Sears, Roebuck & Co. ERISA Litig.*
No. 02 C 8324, 2004 WL 407007 (N.D. Ill. Mar. 2, 2004) .................................19

*In re Syncor ERISA Litig.*
351 F. Supp. 2d 970 (C.D. Cal. 2004).................................................................18

*In re Worldcom, Inc.*
263 F. Supp. 2d 745 (S.D.N.Y. 2003) ............................................................18, 30

*Jara v. Suprema Meats, Inc.*
121 Cal. App. 4th 1238, 18 Cal. Rptr. 3d 187 (2004) .....................................38, 42

*Johnson v. Couturier*
No. 05-CV-2046, 2007 WL 3151802 (E.D. Cal. Oct. 26, 2007) .......................21

*Johnson v. Couturier*
572 F.3d 1067 (9th Cir. 2009).....................................................................passim

*Kalda v. Sioux Valley Physician Partners, Inc.*
481 F.3d 639 (8th Cir. 2007) .............................................................................31

*Kling v. Fidelity Mgmt. Trust Co.*
323 F. Supp. 2d 132 (D. Mass. 2004) .................................................................51

*Leigh v. Engle*
727 F.2d 113 (7th Cir. 1984) .........................................................................17, 34

Opposition to Sitrick Defendants'
Motion to Dismiss

*Liss v. Smith*
991 F. Supp. 278 (S.D.N.Y. 1998) ................................................................. 17, 45

*Lockheed Corp. v. Spink*
517 U.S. 882 (1996) ........................................................................................ 49

*Lowen v. Tower Asset Management, Inc.*
829 F.2d 1209 (2nd Cir. 1987)........................................................................ 50

*Martin v. Feilen*
965 F.2d 660 (8th Cir. 1992) .......................................................................... 16-17

*Martin v. Harline*
No. CIV.A. 87-NC-115J, 1992 WL 12151224 (D. Utah Mar. 30, 1992) ........... 17

*Martin v. Schwab*
No. 91-5059, 1992 WL 296531 (W.D. Mo. Aug. 11, 1992) ............................. 17

*Pegram v. Herdrich*
530 U.S. 211 (2000) ........................................................................................ 31

*Peralta v. Hispanic Business, Inc.*
419 F.3d 1064 (9th Cir. 2005) ........................................................................ 31

*Rankin v. Rots*
278 F. Supp. 2d 853 (E.D. Mich. 2003) .......................................................... 25

*Tibble v. Edison Intern.*
639 F. Supp. 2d 1074 (C.D. Cal. 2009) ........................................................... 33, 43

*Varity Corp. v. Howe*
516 U.S. 489 (1996)........................................................................................ 21, 29, 42

*Withers v. Teachers Retirement System*
447 F. Supp. 1248 (S.D.N.Y. 1978) ................................................................ 32

*Woods v. Southern Co.*
396 F. Supp. 2d 1351 (N.D. Ga. 2005) ........................................................... 19

**<u>Statutes:</u>**

29 C.F.R. § 2509.75-8 ...............................................................................15-16, 45

29 C.F.R. § 2510.3-101 ....................................................................................43

ERISA § 3, 29 U.S.C. § 1002................................................................. 16

ERISA § 404, 29 U.S.C. § 1104 ...................................................passim

ERISA § 405, 29 U.S.C. § 1105 ..................................................49-50

ERISA § 406, 29 U.S.C. § 1106....................................................passim

ERISA § 408, 29 U.S.C. § 1108....................................................passim

ERISA § 409, 29 U.S.C. § 1109 .........................................................52

ERISA § 502, 29 U.S.C. § 1132 ..................................................52-53

**<u>Rules:</u>**

Fed. R. Civ. P. 9...........................................................................21-25

Opposition to Sitrick Defendants'
Motion to Dismiss

# INTRODUCTION

Plaintiffs bring this ERISA case against the Michael and Nancy Sitrick and the Sitrick Trust (the "Sitrick Defendants") and Reliance Trust Company ("Reliance"), based on their breaches of fiduciary duty to the Sitrick And Company Employee Stop Ownership Plan (the "ESOP" or the "Plan"), an ERISA-protected retirement plan sponsored by Sitrick And Company ("SCI"). The core of the Sitrick Defendants' argument in their Motion to Dismiss is that their actions are immune from ERISA's purview because the transactions at issue in this case are not tainted by "obvious self-dealing" that permitted them to "directly profit" at the expense of the ESOP. But that is *precisely* what is alleged in this case. As alleged in detail in the First Amended Complaint ("FAC"), the Sitrick Defendants engaged in egregious self-dealing to the detriment of the ESOP both in connection with compensation paid to Sitrick during the Class Period, and subsequently in orchestrating the repurchase of the ESOP's 24% ownership interest at a fraction of its fair market value.

In the Sitrick Defendants' Motion to Dismiss (the "Sitrick Motion"), the Sitricks claim that they established the ESOP in 1999 for the benefit of SCI's employees, specifically, to allow the employees to "share [in] the benefits of [SCI]'s success." (Sitrick Motion at 3). Yet Sitrick himself was paid over $15 million for the 24% equity interest in SCI that he sold to the ESOP (implying

Opposition to Sitrick Defendants'
Motion to Dismiss

that SCI was worth at least $60 million).  In December 2008, despite SCI's profitability in the ensuing years, the Sitrick Trust purchased the ESOP's 24% interest in the Company for only $1.7 million – a loss to the ESOP of over 90 percent – suggesting a total value of SCI of only $7.3 million (the "Repurchase Transaction").  Then, ten month later, in October of 2009, the Sitricks completed the sale of SCI to Resources Connection, Inc. ("Resources") for over ***$92 million***.  Having bought out the ESOP's interest in the Company, the Sitricks pocketed the entire amount of the sale transaction – adding substantially to the $15 million that Sitrick was paid for the shares he sold to the ESOP in the first place.

The FAC sets forth detailed factual allegations in support of Plaintiffs claims.  Those allegations are summarized in Plaintiffs Statement of Facts and Standard of Review set forth in Plaintiffs' Opposition to Reliance's Motion to Dismiss, which is incorporated herein.  Of particular pertinence to the issues raised in the Sitrick Motion are the following:

- After selling 24% of SCI to the ESOP in 2004, the Sitricks engineered a transaction (the "Goodwill Transaction") to pay Sitrick disguised dividends in the form of excessive compensation which denied the ESOP its pro rata share of SCI's dividends and diluted the value of the ESOP's stake in SCI.  (FAC ¶¶ 34-43.)

- Prior to the 2008 Repurchase Transaction, the Sitricks had received numerous offers to purchase SCI for substantially more than $7.3 million, including offers from Resources and also including offers at "much higher price[s]" than the $90 million for which the Resources deal was eventually consummated.  (FAC ¶¶ 44, 63.)

- In Demeber 2008, Sitrick retained Reliance to approve the fairness of the Repurchase Transaction to the ESOP.[1]  (FAC ¶¶ 46.)

- Sitrick misrepresented or failed to inform Reliance about the true nature of the Goodwill Transaction, and also misrepresented or failed to inform Reliance about the offers to purchase SCI, including the Resources offer.  (FAC ¶¶ 48-49, 54.)

- These misrepresentations and omissions were not simply material, but absolutely central to the valuation and fairness work that Reliance was retained to carry out.

- In December 2008, the Sitrick Trust purchased the ESOP's 24% interest in the Company for only $1.7 million – a loss to the ESOP of over 90 percent – suggesting a total value of SCI of only $7.3 million. (FAC ¶¶ 51-52.)

---

[1] Although not alleged in the FAC, Plaintiffs have subsequently learned that the Sitricks retained Reliance a mere eight days prior to the closing of the Repurchase Transaction.

Opposition to Sitrick Defendants'
                                        Motion to Dismiss

- In October of 2009, the Sitricks reported that SCI had been sold to Resources for over $90 million.  (FAC ¶¶ 62.)

To say that Sitrick abused the ESOP and obtained a windfall is an understatement.  However one may characterize the Sitricks' conduct, and whatever adjectives are used, it cannot genuinely be denied that the allegations of the FAC state claims for breach of fiduciary duty under ERISA.

Specifically, Plaintiffs allege in the FAC that the Sitrick Defendants breached their fiduciary duties and engaged in prohibited transactions under ERISA §§ 404 and 406 (FAC, Counts I & II, respectively).  These breaches and prohibited transactions stem from the Sitricks' knowing and intentional repurchase of the SCI shares from the ESOP for a fraction of their real value (the Repurchase Transaction) as well as taking disguised dividends in the form of excessive compensation which denied the ESOP its pro rata share of SCI's dividends and diluted the value of the ESOP's stake in SCI (the Goodwill Transaction).  Additionally, the Plaintiffs allege that the Sitrick Defendants are liable as co-fiduciaries for each other's breaches and for the breaches of Reliance Trust Co. ("Reliance") under ERISA § 405 based on their knowing participation in each other's fiduciary breaches in connection with the Goodwill Transaction and Repurchase Transaction (FAC, Count III).  Finally, Plaintiffs

Opposition to Sitrick Defendants'
Motion to Dismiss

seek injunctive and other equitable relief to prevent redress these violations of ERISA pursuant to ERISA § 502(a)(3) (FAC, Count IV).

The Sitrick Defendants' engaged in obvious self-dealing that enabled them to directly profit at the Plan's expense.  Defendants' various efforts to suggest otherwise in their Motion are no more than an effort to dispute and distort the well-pled allegations of the FAC.  Accordingly, the Sitrick Defendants' Motion to Dismiss should be denied.

## I.  THE FAC ADEQUATELY ALLEGES THAT THE SITRICKS BREACHED THEIR FIDUCIARY DUTIES UNDER ERISA § 404

### A.  The Sitricks Breached Their Fiduciary Duties Under ERISA By Causing The ESOP To Engage In The Repurchase Transaction

#### 1.  <u>The Sitricks Were ERISA Fiduciaries With Respect to the Repurchase Transaction Because They Appointed Reliance</u>

The Sitrick Defendants[2] first argue that they are absolved of all fiduciary responsibility for the Repurchase Transaction because as directors of SCI, they

---

[2] Defendant the Sitrick Trust is named herein in a much different capacity than Michael or Nancy Sitrick.  The Sitrick Trust is only named as a defendant as a party in interest to the Repurchase Transaction in Count II of the FAC, and with respect to the equitable relief sought in Count IV of the FAC.  *See also* Part II.B *infra*.  Plaintiffs have used the Defendants' convention from their Motion of referring to Michael and Nancy Sitrick as the 'Sitrick Defendants,' but Plaintiffs do not use that term to include the Sitrick Trust unless expressly stated.

Opposition to Sitrick Defendants'
Motion to Dismiss

retained Reliance as a fiduciary.  But courts have universally found that

appointing an outside trustee does not operate as a "complete whitewash" which,

without more, satisfies ERISA's prudence requirement.  *Donovan v. Bierwirth*,

680 F.2d 263, 272 (2d Cir. 1982) (Friendly, J.); *Howard v. Shay*, 100 F.3d 1484,

1489 (9th Cir. 1996) (same).  Instead, appointing fiduciaries retain many

important fiduciary responsibilities.

### a.  *The Sitricks Had and Breached Fiduciary Duties to Prudently Select and Monitor Reliance*

Appointing fiduciaries have a duty to loyally and prudently select and

monitor their appointees.  Contrary to the Sitricks' motion, these duties squarely

apply to them in this case.  Indeed, the Sitricks do not dispute that Sitrick was

the trustee of the ESOP and that they served as members of the Board of

Directors for SCI, or that they as directors appointed Reliance as a fiduciary in

connection with the Repurchase Transaction.  In these capacities, the Sitricks

exercised discretionary control over the Plan, and as such had the fiduciary duty

to exercise prudence and loyalty in the appointment of Reliance.  *See, e.g.*, 29

C.F.R. § 2509.75-8(D-4) ("[T]he board of directors may be responsible for the

selection and retention of plan fiduciaries. In such a case, members of the board

of directors exercise 'discretionary authority or discretionary control respecting

management of such plan' and are, therefore, fiduciaries with respect to the

plan.") (citing ERISA § 3(21)(A)); *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1449 (9th Cir. 1989) ("The regulation [29 C.F.R. § 2509.75-8, D-4] sensibly grounds the existence of fiduciary duty upon a functional criterion: the selection and retention of plan administrators. Such a function involves the discretionary exercise of authority over a plan's management so as to give rise to a fiduciary duty."); *see also* ERISA § 404(a)(1)(A)-(B) (imposing duties of loyalty and prudence on ERISA fiduciaries).  Plaintiffs have alleged that the Sitricks breached their fiduciary duties by disloyally and imprudently selecting Reliance to act as a fiduciary in connection with the Repurchase Transaction. (FAC ¶¶ 45-46).

    As Department of Labor regulation and abundant case law makes clear, the Sitricks' fiduciary responsibility did not end once the appointment was made.  Instead, the Sitricks were duty bound to exercise prudence and loyalty in *monitoring* Reliance's conduct as an appointed fiduciary.  *See* 29 C.F.R. § 2509.75-8, FR-17 ("At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."); *Batchelor*, 870 F.2d at 1448-49 (9th Cir. 1989); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir.1996); *Martin v. Feilen*, 965

Opposition to Sitrick Defendants'
Motion to Dismiss

F.2d 660, 669-70 (8th Cir. 1992); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984).  The Sitricks also were responsible for evaluating whether to remove Reliance as a fiduciary.  *E.g.*, *Liss v. Smith,* 991 F. Supp. 278, 311 (S.D.N.Y. 1998) ("The duty to monitor carries with it, of course, the duty to take action upon discovery that the appointed fiduciaries are not performing properly."); *Martin v. Harline*, 1992 WL 12151138, *12 (D. Utah 1992) ("[D]efendant [appointing fiduciary] had actual or constructive knowledge of the facts constituting breaches of fiduciary duty on the part of [the appointed fiduciaries], and failed to take reasonable efforts to remedy such breaches. Such reasonable steps would include, at a minimum, the replacement of [appointed fiduciary] as trustee with a qualified person or corporation independent of [appointed fiduciary]'s influence, and the commissioning of qualified independent appraisals of value for [the company's] stock.").  To be sure, the Sitricks fell woefully short of fulfilling their fiduciary duties as appointing fiduciaries- they knew for example that Reliance vastly undervalued SCI, yet (not surprisingly given their scheme) took no action to correct the appraisal or replace Reliance. The failure of the Sitricks to take any action to protect the Plan does not mean, as the Sitricks appear to suggest, that they did not have fiduciary duties.  It shows merely that they ignored them. *Martin v. Schwab*, No. 91-5059, 1992 WL 296531, at *4 (W.D. Mo. Aug. 11, 1992) (finding "[t]he fact that

Defendants did not choose to exercise their authority did not in any way diminish the authority bestowed on them ….").

### b. The Sitricks Had and Breached Fiduciary Duties to Provide Complete and Accurate Information to Reliance

Appointing fiduciaries also must provide their appointees with critical information that their appointees need in order to perform adequately the job assigned to them.  Abundant case law supports this common sense principle. *See, e.g.*, *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 983-86 (C.D. Cal. 2004)  (plaintiffs stated claim that appointing fiduciaries breached their fiduciary duties by failing to "[e]nsure that the monitored fiduciaries had adequate information to do their job of overseeing the Plan investments…."); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity. Plaintiffs' allegation that Ebbers failed to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim."); *In re Morgan Stanley ERISA Litig.*, --- F. Supp. 2d. ---, No. 07 CIV 11285, 2009 WL 5947139 (S.D.N.Y. Dec. 9, 2009) ("The fiduciary duties imposed by ERISA § 404(a) require those fiduciaries with the power to appoint and remove plan

fiduciaries to monitor the performance of those appointees, and to provide the appointees with any adverse information that the fiduciary might possess."); *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 637 (W.D. Pa. 1999) (defendant ESOP fiduciary "breached the fiduciary duties that he owed as an ESOP trustee by concealing material information from the other members of the ESOP Board of Trustees, thus, preventing their ability to act knowingly on behalf of the … ESOP."); *Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1373-74 (N.D. Ga. 2005); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324, 2004 WL 407007, *8 (N.D. Ill. Mar. 2, 2004); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 657 (S.D. Tex. 2003).

 The FAC alleges that the Sitricks failed to provide such complete and accurate material information about SCI, the Goodwill Transaction, the value of SCI stock, and offers to purchase SCI from Resources and others, to Reliance. (FAC ¶¶ 48-49, 54). This information was not general, abstract, or tangential, it was absolutely central to the fiduciary work that Reliance was retained to perform, and by failing to provide this information completely and accurately, or by misrepresenting it, the Sitricks prevented Reliance from accurately valuing the stock or determining the fairness of the transaction. By failing to provide this information to Reliance, the Sitricks breached their fiduciary duties.

The Sitricks' argument is all the more dubious because they argue in another portion of their Motion that they are entitled to rely on Reliance's advice to dodge liability for violation of ERISA's self-dealing prohibited transaction rules. (Sitrick Motion at 22-23) (claiming that Reliance's valuation was made in "good faith" to satisfy the adequate consideration affirmative defense in ERISA § 408(e)). Because the Sitricks purport to rely on Reliance's conclusions to avoid liability for self-dealing, it would be perverse to allow them to claim that they were not fiduciaries at the time they conveyed this information (or failed to convey or conveyed misinformation).

### c. The Sitricks Had and Breached Fiduciary Duites to Prudently and Loyally Exercise De Facto Control Over Reliance

The Sitricks also had fiduciary duties to the extent they retained *de facto* control over Reliance's activities. By appointing Reliance to approve and value the ESOP's shares, the Sitricks assumed a duty to educate Reliance about the value of those shares by retaining Reliance to give a fairness opinion and approve the Repurchase Transaction. Here, the FAC alleges that the Sitricks exercised *de facto* control of Reliance by failing to provide material information and intentionally providing misleading information to Reliance. (FAC ¶48). Putting aside that Reliance should have been able to discover the Sitricks' scheme, the fact remains that the Sitricks sought to obtain the result they wanted

Opposition to Sitrick Defendants'
Motion to Dismiss

from Reliance by withholding obviously material information that would have affected Reliance's evaluation of the Repurchase Transaction.  These allegations are sufficient to survive a motion to dismiss.  ERISA § 3(21)(A); *In re Pfizer Inc. ERISA Litig.*, No. 04-CV-10071, 2009 WL 749545, *7 (S.D.N.Y. Mar. 20, 2009) (allegations that corporate entity exercised *de facto* control over the fiduciaries it appointed sufficient to overcome motion to dismiss); *Johnson v. Couturier*, No. 2:05-CV02046, 2007 WL 3151802, at *5. (E.D. Cal. Oct. 26, 2007); *see also Varity Corp. v. Howe*, 516 U.S. 489, 498, 501 (1996).

### d.   The Case Cited by Defendants Is Distinguishable

The FAC thus provides ample factual bases for the allegation that the Sitricks had and exercised fiduciaries duties to the Plan in connection with the Repurchase Transaction.  The only case offered by the Sitrick Defendants to suggest otherwise, *Harris v. Amgen*, Case No. 07-CV-5442 PSG, 2010 U.S. Dist. LEXIS 26283, at *19-20 (C.D. Cal. Mar. 2, 2010), misses the mark.  First, the portion of the opinion cited by Defendants is distinguishable.  The court ruled that certain defendants were not fiduciaries because the plaintiffs there had not adequately alleged whether a group of appointing fiduciaries in fact had the power to appoint other fiduciaries, and that the only conduct in question for these defendants was amending the plan, a settler function, not a fiduciary function.  Plaintiffs allege that the Sitricks, in their capacity as Directors of SCI,

Opposition to Sitrick Defendants'
Motion to Dismiss

were responsible for appointing Reliance.  (FAC ¶ 46.)  Additionally, none of what Plaintiffs allege in this matter is related to amending the plan documents, as was the case in *Amgen*.

Second, in *Amgen* there were several levels of fiduciary authority distributed between different fiduciary committees, with each committee having different appointment and monitoring functions.  While the court faulted the Plaintiffs for not alleging with adequate specificity what duties were owed by one particular committee, the court granted the plaintiffs there leave to amend.  Notably, after amendment, the court ruled that the plaintiffs had met the specificity requirements (although the court dismissed the complaint on unrelated substantive grounds).  *Harris v. Amgen, Inc. et al.*, No. 07-5442 (PSG), Dkt. 195 (June 18, 2010), at 4-5 of 13 (attached hereto as Exhibit A).  Here, however, Plaintiffs have alleged that the entire fiduciary responsibility for the ESOP was vested in the Sitricks as the only directors of SCI, who in turn appointed Reliance.  Thus *Amgen* stands in stark contrast to the fact of this case, and far from showing that the Sitricks were not fiduciaries, actually underscores that they were fiduciaries with respect to the appointment and monitoring of Reliance.

…

…

Opposition to Sitrick Defendants'
Motion to Dismiss

2.    **The Sitricks' Arguments About Their Misrepresentations and Omissions Miss the Mark**

The Sitricks offer three arguments why their misrepresentations and omissions to Reliance about the purchase offers received for SCI prior to the Repurchase Transaction do not amount to breaches of their fiduciary duties: first, that they were not fiduciaries for the Plan with respect to the Repurchase Transaction; second, that Fed. R. Civ. P. 9(b)'s fraud pleading requirements applies to breach of fiduciary duty and prohibited transaction allegations under ERISA and that Plaintiffs' have purportedly not met these requirements; and third, that the facts alleged in the FAC do not "rais[e] a reasonable inference" that these misrepresentations and omissions resulted in a loss to the Plan.  Each of these arguments fails.

First, as explained above, the Sitricks indisputably retained certain fiduciary duties with respect to the Repurchase Transaction, including responsibility for appointing, monitoring, removing, and providing complete and accurate information to Reliance, and were fiduciaries to the extent they exercised *de facto* control over the Plan in connection with the Repurchase Transaction.  Any statements made to Reliance were necessarily made in a fiduciary capacity, because, as explained above, the Sitricks, as appointing

fiduciaries, had a duty to provide adequate information to Reliance for Reliance to adequately value SCI's stock.

Second, the fraud pleading requirements of Fed. R. Civ. P. 9(b) do not apply to breach of fiduciary duty claims under ERISA, but even if they do, they are satisfied here.  By its own terms, 9(b) applies to allegations of "fraud and mistake," and requires that a person making such an allegation "state with particularity the circumstances constituting fraud or mistake."  This is not a fraud case, and instead, Plaintiffs' claims here are based on imprudent and disloyal breaches of fiduciary duty and violations of ERISA's prohibited self-dealing transaction rules.  Plaintiffs' claims here are based on the Sitrick Defendants failure to provide critical information to the ESOP's other fiduciaries, including Reliance, whom the Sitricks appointed.  Whether the Sitricks also made misrepresentations to the Plan participants on which participants relied is entirely beside the point and has no relevance the claims asserted in the FAC.  Numerous courts, including the Ninth Circuit, have held that Rule 8's notice pleading regime applies to such cases:

> Fraud arises from the plaintiff's reliance on the defendant's false representations of material fact, made with knowledge of falsity and the intent to deceive. … [T]he circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage. Where a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a

> position to describe with particularity the events constituting the alleged misconduct. These facts will frequently be in the exclusive possession of the breaching fiduciary. Even in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant.

*Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995); *see also In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) ("[A]llegations of intentional conduct do not transmogrify breach of fiduciary claims into causes of action for fraud. … Moreover, knowing conduct is a prerequisite for co-fiduciary liability under ERISA."); *Rankin v. Rots*, 278 F. Supp. 2d 853, 856 (E.D. Mich. 2003).  As noted by the Ninth Circuit in *Concha*, fraud claims require reliance by the plaintiff—here, the misstatements and omissions were not made to the Plaintiffs, they were made by one fiduciary to another fiduciary. Thus 9(b) is inapplicable to the misconduct alleged in this case.  While Sitrick's conduct may indeed have risen to the level of fraud, fraud is not a necessary element of an ERISA breach of fiduciary duty claim.  To suggest otherwise would be to elevate the pleading standard far above what Congress intended when subjected ERISA fiduciaries to the "highest duties known to law."

However, even if this Court rules that 9(b) applies here, Plaintiffs' allegations are adequate to satisfy 9(b).  In fact, as Defendants point out, Plaintiffs allege that Mr. and Ms. Sitrick "failed to disclose or misrepresented" (1) "offers to purchase SCI," (2) "formal or informal offers to purchase SCI

from Resources," and (3) "the Goodwill Transaction." Sitrick Motion at 10. The

Defendants also correctly explain that Plaintiffs' allegations detail that the

Sitricks "directed Reliance and its financial advisor to assume that the Personal

Goodwill Transaction was contractual, valid, and binding, and that the ESOP

equity in SCI was equal to only 10.5% of the SCI income stream." These

misrepresentations and omissions were, of course, made during the time that

Reliance acted as a fiduciary to the Plan. These allegations are made with

adequate specificity for Defendants' to respond (as evidenced by their detailed

and lengthy motions to dismiss on grounds that these alleged misrepresentations

do not constitute fiduciary breaches).

Third, the facts alleged in the FAC support the reasonable inference that

the Sitricks' breaches of fiduciary duty in connection with the Repurchase

Transaction caused substantial losses to the Plan, and inured to the substantial

benefit of the Sitricks. By withholding or misrepresenting this information, the

Sitrick's prevented Reliance from accurately valuing the SCI stock in

connection with the Repurchase Transaction. (FAC ¶¶ 48-49, 54-55.) Had

these statements been accurate, Reliance would not have approved (at least, not

consistent with any accepted standard of fiduciary conduct) the transaction

repurchasing for $1.7 million SCI stock worth at least $15-20 million. (FAC ¶¶

48-49, 53-56.) This caused substantial harm to the ESOP and its participants,

namely the difference between what they received for their SCI stock and the true value of this stock, which obviously must include or reflect at some level the value that parties are willing to pay for the stock in an arm's length transaction.  (FAC ¶¶ 55-56, 62.)

**B.      The Sitricks Breached Their Fiduciary Duties In Carrying Out The Goodwill Transaction**

**1.      <u>The Sitricks Were ERISA Fiduciaries With Respect to the Goodwill Transaction</u>**

While the Sitricks argue that they were not ERISA fiduciaries with respect to the Goodwill Transaction, but instead acted in a purely corporate capacity, the Ninth Circuit last year reached the opposite conclusion in precisely the same situation in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009).  In *Johnson v. Couturier*, the defendant ESOP trustee was also an officer and director of the corporation, and had caused the corporation to grant him various types of excessive compensation.  In an effort to resist ERISA liability, the defendant made the same argument offered here, that the compensation decisions were corporate matters not subject to ERISA.  The Ninth Circuit rejected this contention, stating:

> Decisions relating to corporate salaries generally do not fall within ERISA's purview. But where plan assets include the employer's stock, the value of those assets depends on the employer's equity. Employee compensation levels are, of course, one of the many business expenditures reducing the value of the overall equity of

any company. … Taken to its logical conclusion, therefore, this line of thinking would, in the case of an ESOP, extend the application of ERISA to a corporation's annual expenditures on office supplies- clearly an absurd result. …

Nonetheless, we conclude that applying ERISA to the instant case does not risk encompassing within its confines any and all day-to-day corporate decisions shielded by the business judgment rule. **Where, as here, an ESOP fiduciary also serves as a corporate director or officer, imposing ERISA duties on business decisions from which that individual could directly profit does not to us seem an unworkable rule.** To the contrary, our holding merely comports with congressional intent in establishing ERISA fiduciary duties as "the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996) (quotation omitted). **To hold otherwise would protect from ERISA liability obvious self-dealing, as Plaintiffs allege occurred here, to the detriment of the plan beneficiaries.**

*Johnson v. Couturier*, 572 F.3d at 1077 (emphasis added).

The Plaintiffs here allege in the FAC that Sitricks—the sole directors of SCI and the sole trustee of the ESOP—engaged in "obvious self-dealing" whereby they "directly profited" at the expense of the ESOP, just as the defendants did in *Johnson v. Couturier*. The Sitricks engineered the Goodwill Transaction to divert a substantial portion of the value of SCI to Sitrick himself, but looking to the substance of the transaction, the only other stockholder of SCI besides the Sitricks was the ESOP. In the Goodwill Transaction, Sitrick took disguised dividends in the form of excessive compensation which denied the ESOP its pro rata share of the dividends and diluted the value of the ESOP's stake in SCI. Contrary to his fiduciary duties as the ESOP's only trustee, he

Opposition to Sitrick Defendants'
Motion to Dismiss

allowed this transaction, and took no action to protect the ESOP.  Instead, as alleged in the FAC, the sole purpose and effect of the Goodwill Transaction was to divert money and rights from the ESOP to Sitrick himself.  (FAC ¶¶ 34-35, 37, 43.)  The Sitrick Defendants' attempt to distinguish *Johnson v. Couturier* on the grounds that *Johnson v. Couturier* involved "obvious self-dealing" (Sitrick Motion at 15 n.12) shows precisely why the case is on point.  As alleged in the FAC, Sitrick engaged in self-dealing, and profited handsomely as a result. Defendants should not be allowed to prevail on their motion to dismiss by ignoring the FAC's well-pled factual allegations.  Defendants' protestations aside, *Johnson v. Couturier* is fatal to Defendants' argument that their self-dealing conduct in the Goodwill Transaction was carried out in a purely corporate capacity.

Moreover, the Supreme Court has clarified that when an ERISA fiduciary wears 'two hats,' both as a corporate officer and as an ERISA fiduciary, certain conduct the fiduciary engages in can implicate both roles.  *See Varity Corp. v. Howe*, 516 U.S. at 498, 501.  This means that a fiduciary need not only wear his corporate hat – it is called the "two hat rule" for a reason.  Thus the Sitrick Defendants' argument that because he was acting in his corporate capacity he could not also be acting in a fiduciary capacity is simply wrong as a matter of law.  *E.g., Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (An ESOP

fiduciary must 'wear two hats ... [and] '*administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA*.'") (emphasis in original); *In re WorldCom, Inc.*, 263 F. Supp. 2d at 765 (S.D.N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").  As explained above, *Johnson v. Couturier* provides that when a fiduciary's corporate conduct amounts to obvious self-dealing at the Plan's expense, those 'corporate hat' actions are imputed to the fiduciary in their fiduciary capacity.  In his capacity as Plan trustee, Sitrick had a duty to ensure that the ESOP was treated fairly in the Goodwill Transaction.  (FAC ¶ 42).  But the Sitricks took no action to protect the ESOP, nor did they seek to ensure that the ESOP received a reasonable share of SCI's dividends.  Instead, the Sitricks abused their fiduciary role for their own benefit. As such, the ordinarily 'corporate hat' compensation decisions at issue here can be imputed to the Sitricks in their fiduciary capacities, just as the Ninth Circuit ruled in *Johnson v. Couturier*.

The cases cited by Defendants are not to the contrary.  In *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432 (9th Cir. 1986) (cited on page 13 of the Sitricks' Motion), the Ninth Circuit ruled that "the decision to terminate" a plan is a "business decision" falling under corporate law principles.  But the

Goodwill Transaction does not fall within the special situation of Plan termination. *E.g.*, *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) ("It is well established in this Court's cases that an employer's decision whether to terminate an ERISA plan is a settlor function immune from ERISA's fiduciary obligations."); *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064 (9th Cir. 2005) (citing *Cunha* for the proposition that "[i]t is indisputable that an employer has a right to eliminate an ERISA-governed benefit plan", but distinguishing this from other fiduciary duties, such as the duty to inform participants of the pending plan termination).

In *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 646 (8th Cir. 2007), the Eight Circuit ruled that corporate officers (who were also plan fiduciaries) did not breach their fiduciary duties when they chose to merge with one company instead of another company that the plan participant plaintiff argued they should have chosen. Nor does the Supreme Court's clarification in *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)--that while wearing their corporate hats fiduciaries can take actions "to the disadvantage of employee beneficiaries"--compel a different conclusion. In *Pegram*, the Court made clear that ordinary business decisions "unrelated to the ERISA plan" such as terminating employees are not prevented by ERISA. *Id.* Here, on the other hand, the business decision was not ordinary, and was not simply adverse to the

Plan—it was adverse to the Plan in the same way that the Plan's only trustee personally benefited from the transaction.  *Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995) is even further afield.  There, the Sixth Circuit found that ERISA fiduciary duties do not inhere "*prior* to the creation of an employee benefit plan."  *Id.* at 230 (emphasis in original).[3]

Here, like the Defendants in *Johnson v. Couturier*, the Sitricks caused SCI to engage in a transaction that substantially depleted SCI's resources and value, affecting only the two shareholders of SCI: the Sitricks and the ESOP.  Thus the transaction had no impact other than to reduce the value of the benefits of the ESOP and proportionally increase the amount of money received by the other shareholder.  In *Cunha*, one of the cases cited by Defendants, the Ninth Circuit made clear that "when a fiduciary's actions that are taken in connection with the performance of his duties as trustee or administrator are in his own interest as well, we rigorously scrutinize the conduct."  *Cunha*, 804 F.2d at 1432 (*citing Withers v. Teachers Retirement System*, 447 F. Supp. 1248, 1256-57 (S.D.N.Y. 1978) (although city comptroller's interest conflicted with pension plan's

---

[3] *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), and *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257 (D. Mass. 2008) do generally stand for the proposition that day to day corporate functions do not implicate ERISA fiduciary duties.  *Bendaoud*, however, notes that if the fiduciaries had used plan assets "to make a profit for themselves," they would be liable for breaching their fiduciary duties.  *Bendaoud*, 578 F. Supp. at 273. However, to the extent that these cases are inconsistent with *Johnson v. Couturier*, 572 F.3d at 1077, they are not the law in this Circuit.

Opposition to Sitrick Defendants'
                                                                   Motion to Dismiss

interest, he was not incapable of acting as a trustee, but he had an "especial obligation to act fairly on behalf of those concerned with the results of the action taken.")).

Of course, Plaintiffs do not rest their allegations on a claim that the Sitricks committed a *per se* breach of ERISA § 404(a)(1) by having dual loyalties to themselves and to the Plan. *See Tibble v. Edison Intern.*, 639 F. Supp. 2d 1074, 1106 (C.D. Cal. 2009) ("[I]n many circumstances, ERISA contemplates the fact that a fiduciary will 'wear two hats,' and may have conflicting loyalties. However, a conflict of interest is not a per se breach: 'nowhere in the statute does ERISA explicitly prohibit a trustee from holding positions of dual loyalties.' Instead, in order to prove a violation of the duty of loyalty, the plaintiff must go further and show 'actual disloyal conduct.'") (citations omitted). Plaintiffs here "go further and [allege] actual disloyal conduct" like that found by the Ninth Circuit in *Johnson v. Couturier*. The Sitricks, while wearing two hats (corporate officer and plan trustee) caused SCI, the stock of which was the sole asset of the ESOP, to vastly increase the compensation received by Mr. Sitrick to the detriment of the ESOP. …

…

…

Opposition to Sitrick Defendants'
Motion to Dismiss

2.      **The Sitricks Breached Their Fiduciary Duties of Loyalty, Prudence, and Obedience in Carrying Out the Goodwill Transaction**

<u>Prudence</u>.  Defendants only argument that Plaintiffs do not allege a breach of the duty of prudence with respect to the Goodwill Transaction is to simply point to the allegations in the FAC and label them "conclusory," with a passing reference to the Supreme Court's decision in *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ("*Iqbal"*).  The prudence claims here are that during the time that the Sitricks were engaging in disloyal and self-interested transactions at the expense of the Plan, the Sitricks quite obviously did not engage in the type of prudent review of these transactions that is required of ERISA fiduciaries.  The Ninth Circuit has explained: "When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1996) (quoting *Leigh v. Engle*, 727 F.2d at 125-26); *see also Delta Star v. Patton*, 76 F. Supp. 2d at 637.

Here, Plaintiffs allege that the Sitricks took no action in their capacity as ESOP trustees to protect the interests of the ESOP in connection with the Goodwill Transaction.  (FAC ¶ 69(b).)  In the face of a duty to act to protect the plan, allegations that no such action was taken are clearly sufficient no matter

how one reads *Iqbal*.  Strangely, the Defendants list allegations as missing from the FAC when they are, in fact, plainly in the FAC.  Compare Motion at 16 "Plaintiffs do not claim that the [Goodwill transaction] resulted in … a net decrease in SCI's assets" with FAC ¶ 43 "The Personal Goodwill Transaction substantially diluted the value of SCI's assets and employer securities owned by the ESOP."  Moreover, Sitrick complains that "Plaintiffs allege no facts whatsoever suggesting that Mr. or Ms. Sitrick had any reason to believe, at the time of the purported transaction, that it would harm SCI or the Plan or that any further investigation into the merits of the transaction was warranted."  (Motion at 16.)  But in Paragraph 34, the FAC alleges that the motivation behind the Goodwill Transaction was to divert money from an eventual sale of SCI from the ESOP to himself.

Other allegations Defendants list as missing from the FAC are reasonably inferred from the factual averments in the FAC.  *Compare* Sitrick Motion at 16 ("Plaintiffs do not claim that the [Goodwill Transaction] resulted in a net increase in the amounts paid by SCI to Mr. Sitrick"); *with* FAC ¶¶ 36-40 (stating that the Sitricks took royalty payments starting in  2004, and continuing through 2008, which constituted the payment of unreasonable compensation and improper dividends to Sitrick).  Conversely, the Sitrick Defendants fault Plaintiffs for failing to allege that the Goodwill Transaction "caused a decrease

in the benefits enjoyed by SCI from Mr. Sitrick's services and 'intangible

assets.'" (Sitrick Motion at 16.)  Such an allegation is wholly impertinent,

irrelevant, and inconsistent with the factual allegations in the FAC, at ¶¶ 26, 34-

40.

 

      <u>Loyalty</u>.  Defendants rely on *In re McKesson HBOC, Inc. ERISA Litig.*,

391 F. Supp. 2d 812, 834 (N.D. Cal. 2002) regarding their disloyal conduct

towards the Plan, arguing that "a plaintiff must demonstrate that the defendants

did more than 'merely creating *the potential* for a conflict of interest.'"  Sitrick

Motion at 16.  But Plaintiffs have, of course, alleged much more than a mere

potential conflict of interest.  Not only were the Sitricks in a conflicted position,

but they used their conflicted position to divert millions of dollars from SCI,

and, hence, the ESOP.  (FAC ¶¶ 33-43.)  This is precisely the type of "actual

disloyal conduct" that the court found lacking in *McKesson* and which the Ninth

Circuit found actionable in *Johnson v. Couturier*.

      Similarly, in *Andrade v. Parson Corp.*, No. CV85-3344, 0090 WL

757367 (C.D. Cal. Jun. 21, 1990), the court concluded (after a trial) that the

evidence showed that the conflicted trustees were adequately shielded from the

fiduciary transaction in question.  There, the fiduciaries were "men of character

and integrity" that "testified that they acted independently, solely and

Opposition to Sitrick Defendants'
                                         Motion to Dismiss

exclusively for the benefit of the ESOP participants." *Id.* at *4. In demonstrating a breach of the duty of loyalty at trial, the plaintiffs in *Andrade* were required "to offer sufficient proof demonstrating that the members of the [fiduciaries] did not act with an eye single to the interests of the ESOP participants in the [buyout] transaction." *Id.* at *6 (*citing Donovan v. Bierwirth*, 680 F.2d 271 (2d Cir. 1982)). Because the plaintiffs in *Andrade* did not offer any evidence at trial controverting the testimony of the fiduciaries that they acted in the best interests of the participants, the claims in *Andrade* failed. *Id.* Here the FAC is replete with allegations that the Sitricks breached their duty of loyalty to the participants in the ESOP by engaging in the Goodwill Transaction. (FAC ¶¶ 33-43.) Accepting these allegations as true, the FAC easily states a claim under *McKesson* and *Andrade*, the cases cited by the Defendants.

Obedience. ERISA does not permit the imprudent and disloyal conduct described in the FAC. Thus any of the breaches described in the FAC would also likely be breaches of the ESOP Plan documents, an independent violation of ERISA § 404(a). However, Plaintiffs have not yet obtained a copy of the Plan document and are unable, as such, to point to the specific provisions which have been violated here. Once the Plan document has been obtained through

discovery, Plaintiffs will be able to amend the FAC to specify the provisions of the document that were violated.

### 3.   <u>The Goodwill Transaction Resulted in Substantial Losses to the Plan</u>

The FAC alleges that the Goodwill Transaction was a mechanism by which Sitrick could misappropriate most of the ESOP's share of SCI and transfer to himself certain of the corporate assets through the income stream. (FAC ¶¶ 34-35.)  Plaintiffs further alleged that Sitrick's plan was carried out between 2004 and 2008 through Sitrick's receipt of annual royalty payments (FAC at ¶ 36.  The Goodwill Transaction resulted in Sitrick receiving the royalty payments during the years 2004 through 2008, which constituted the taking of excessive and unreasonable compensation and/or improper dividends (FAC at ¶ 40.  Plaintiffs also alleged that the Goodwill substantially diluted the value of SCI's assets and employer securities owned by the ESOP (FAC at ¶ 43).

Contrary to the argument of the Sitrick Defendants, Plaintiffs have more than plausibly alleged losses to the Plan from the Goodwill Transaction.  First, the ESOP suffered a loss of its share of dividend income.  *See Jara v. Suprema Meats, Inc.*, 121 Cal App. 4th 1238, 1252-53, 18 Cal. Rptr. 3d 187, 197-98 (Cal. App. 2004) (holding the exertion of control by a majority shareholder to pay

himself disguised dividends in the form of excessive compensation which deprives a minroty shareholder of his fair share of profits is a breach of fiduciary duty under California law); *see also Johnson v. Couturier*, 572 F.3d at 1079 and *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d at 637-38 (both holding that an ESOP trustee/director who exerts his control to pay himself excessive compensation depriving an ESOP of its fair share of profits violates his fiduciary duty under ERISA).

Second, the ESOP suffered a substantial dilution in the value of Plan assets – namely the employer stock – by declaring a substantial part of SCI's income stream as "personal goodwill" owned by Sitrick not SCI.  The reasonable inferences that can be drawn from these allegations are that the valuation methodologies used by appraisers would understate the value of the ESOP's shares since these methodologies (i.e., discounted cash flow and market comparable methods) rely heavily upon cash flow and income streams to arrive at their value.

Plaintiffs' factual allegations go well beyond what is required by *Iqbal*, and at a minimum allow the Court to draw the plausible inference that the Sitricks breached their fiduciary duties under ERISA in the manner described in the FAC.  The Sitricks will no doubt seek to defend themselves on the merits, and in that regard are certainly free to argue, as they do here, that ERISA

allowed them to purchase shares for $1.7 million that they knew to be worth many times that, and to pay Sitrick excessive compensation for several years through manipulations of the balance sheet.  Plaintiffs obviously disagree, and will present evidence in support of their claims.  Such a dispute cannot be resolved on a motion to dismiss, however.

### C.    Ms. Sitrick Had Involvement In And Knowledge Of The Challenged Transactions

Plaintiffs have alleged that as a director of the company, Ms. Sitrick had knowledge of the offers to purchase to purchase SCI and of Mr. Sitrick's grossly excessive compensation reflected in the Goodwill Transaction. (FAC ¶¶ 33, 71.) Also as a director of the company, she was a fiduciary of the ESOP with respect to the appointment both of Mr. Sitrick as sole trustee and Reliance as a special trustee, yet did not disclose to Reliance her knowledge about these transactions or take any other action to ensure that prudent and loyal conduct towards the ESOP by Mr. Sitrick or Reliance.  Thus, as explained above with regards to both Mr. and Ms. Sitrick, Ms. Sitrick is also liable as a fiduciary.

…

…

…

## II.   THE SITRICK DEFENDANTS CAUSED THE PLAN TO ENGAGE IN THE GOODWILL AND REPURCHASE TRANSACTIONS WHICH WERE PROHIBITED BY ERISA § 406(a) AND (b)

ERISA § 406 prohibits certain types of transactions that bear a substantial risk of self-dealing.  In pertinent part, § 406(a) prohibits fiduciaries from causing the "(A) sale or exchange, or leasing, of any property between the plan and a party in interest; or … (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…."  Similarly, § 406(b)(1)-(3) prohibits transactions between a fiduciary (acting in any capacity) and a plan  that involve self-dealing or are in the best interests of someone other than the plan.  The Sitrick defendants caused the ESOP to engage in precisely these types of prohibited transactions, and are therefore liable under § 406(a) & (b) of ERISA.

### A.   The Sitrick Defendants Are Liable Under § 406(a) And (b) Of ERISA As Fiduciaries Or Parties In Interest With Respect To The Goodwill Transaction

In order to escape liability under § 406(a) of ERISA for self-dealing with the ESOP assets, the Sitricks make three arguments, all of which are unavailing: that Sitrick was acting in his corporate capacity when carrying out the Goodwill Transaction, that the Goodwill Transaction was not a transaction with the Plan, and that the Goodwill Transaction did not involve Plan assets.  Distilled to its

Opposition to Sitrick Defendants'
Motion to Dismiss

essence, the Sitricks ask this court to adopt a rule whereby an ERISA fiduciary should be allowed to deal with ESOP assets for his own benefit simply by claiming to take off his fiduciary hat.  While there are two hats, there is only one head.

Sitrick argues that since he was acting in his corporate capacity, it was impossible as a matter of law for him to be acting simultaneously in his fiduciary capacity.  As explained *supra* in Part I.B.1, the Supreme Court has rejected this 'only-one-hat-at-a-time' approach.  *Varity Corp. v. Howe*, 516 U.S. at 498, 501.[4]  Most importantly, the Sitricks' argument is completely contrary to the Ninth Circuit's decision in *Johnson v. Couturier*, which held that in cases of obvious self-dealing, ordinarily corporate decisions by which an ESOP fiduciary directly profits at the expense of the ESOP can become fiduciary decisions.  The Sitricks ignore both of these cases in the prohibited transaction portion of their brief.

Moreover, Sitrick, as ESOP trustee, breached his fiduciary duty to the ESOP when he either approved the conflicted Goodwill Transaction involving the taking of excessive compensation, or when he knowingly failed to object and sue himself, if necessary, under state law to recover the ESOP's pro-rata share

---

[4] To the extent it is unclear from the FAC whether Sitrick's fiduciary capacity with respect to the Goodwill Transaction was adequately alleged, Plaintiffs respectfully request the opportunity to file a Second Amended Complaint which will correct any such deficiency.

Opposition to Sitrick Defendants'
Motion to Dismiss

of dividends under *Jara. See Johnson v. Couturier,* 572 F.3d 1067, 1079 (9th Cir. 2009); *Delta Star, Inc. v. Patton,* 76 F. Supp. 2d 617, 637-638 (W.D. Pa. 1999), both holding that an ESOP trustee/director/shareholder breaches his ERISA fiduciary duties when he exerts his control to pay himself excessive compensation, thereby depriving the ESOP of its fair share of the corporate profits.)

Looking past the form of the Goodwill Transaction to its substance, the only parties affected by the transaction were the Sitricks and the ESOP, as they were the only shareholders of SCI. The case cited by Defendants is distinguishable. In *Tibble v. Edison Intern.*, 639 F. Supp. 2d at 1125-26 (C.D. Cal. 2009), the Central District ruled that there was no prohibited transaction when a third party service provider mailed an invoice to a plan fiduciary, and that the fiduciary's failure to "recapture the float for the benefit of the Plan" was not a transaction. Here, there clearly was a transaction, the transaction in question occurred when Sitrick caused SCI to pay Sitrick disguised dividends in the form of excessive compensation to the detriment of SCI's only other shareholder—the ESOP.

The Sitricks also argue that SCI's assets cannot be Plan assets, thus dealing with SCI's assets can never be a prohibited transaction under ERISA. But Defendants argument is again directly contrary to the Ninth Circuit's ruling

Opposition to Sitrick Defendants'
Motion to Dismiss

in *Johnson v. Couturier*, 572 F.3d at 1080 (citing 29 C.F.R. 2510.3-101), which specifically held that when a corporate transaction would reduce the assets remaining for an ESOP and would have no other affect, the corporation's assets can be considered plan assets. Defendants ask for a rule which would essentially give unscrupulous fiduciaries (such as Defendants here) carte blanche to ruin the values of the ESOPs they are charged to protect by diverting assets to themselves through the guise of corporate transactions. In *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213 (N.D. Cal. 2008), the Court ruled that when the costs of providing certain investments for a 401(k) plan were born by the sponsor company, there was no prohibited transaction. But there, the company was not owned even in part by an ESOP, thus when the company bore the costs, no ESOP was affected in form or substance. Here, on the other hand, when Sitrick caused SCI to pay him disguised dividends in the form of excessive compensation, the ESOP was substantially affected.

In *Barry v. Trs. of Int'l Ass'n Full-Time Salaried Officers and Employees of Outside Local Unions and Dist. Counsel's Pension Plan*, 404 F. Supp. 2d 145, 152 (D.D.C. 2005), the court ruled on summary judgment that the plaintiff had failed to create a genuine issue of fact as to whether certain shares of stock "were in fact 'earmarked' for repurchases from other … shareholders, including the [p]lan." Thus the dispute in *Barry* was whether certain particular shares had

ever been transferred to the plan. Here, on the other hand, there can be no dispute that the Goodwill Transaction, though in form involving only SCI's assets, in substance amounted to a diversion of corporate resources from one shareholder (the ESOP) to another (the Sitricks)—at the time of the Goodwill Transaction Sitrick was the ESOP's only fiduciary. Thus the Sitricks used their corporate and fiduciary capacities to engage in a transaction to their personal benefit at the expense of the ESOP, and now ask this Court to bless the transaction because Sitrick engaged in no efforts as a fiduciary to ensure the interests of the Plan were protected.

**B.     The Sitrick Defendants Are Liable Under § 406(a) And (b) Of ERISA As Fiduciaries Or Parties In Interest With Respect To The Repurchase Transaction**

For the reasons previously set forth herein, the Sitrick Defendants are liable as fiduciaries with respect to the Repurchase Transaction in their capacity as appointing and monitoring fiduciaries (arising from their service as directors of an ESOP company). *Batchelor v. Oak Hill Medical Group,* 870 F.2d at 1448-1449; 29 C.F.R. §2509.75-8 at D-4 and FR-17; *Liss v. Smith,* 991 F. Supp. at 311. In addition, the Sitrick Defendants are *de facto* fiduciaries to the extent they exercised discretion in controlling, shaping, or limiting the material information provided to Reliance and/or its financial advisor in determining the

fairness of the Repurchase Transaction to the ESOP.  *In re Pfizer Inc. ERISA Litig.*, 2009 WL 749545,  at *7; *Johnson v. Couturier*, 2007 WL 3151802, at *5.

Contrary to the argument of the Sitrick Defendants, Plaintiffs have expressly alleged these facts as to their fiduciary status (FAC at ¶¶3, 12, 19, 46, 48-49, 54, 75-78).  Drawing all reasonable inferences therefrom, Plaintiffs have more than adequately alleged fiduciary status of the Sitrick Defendants in the Repurchase Transaction.

Plaintiffs have also adequately alleged the liability of the Sitrick Defendants as parties in interest to the Repurchase Transaction under ERISA §406.  A party in interest is defined to include any fiduciary, officer, director, or owner, direct or indirect, of 50% or more of the combined voting power of all classes of stock of the employer corporation.  ERISA §3(14), 29 U.S.C. §1002 (14).  The FAC clearly alleges that Sitrick was the ESOP Trustee (except for approval of the Repurchase Transaction), an officer and director of SCI, and an owner of a greater than 50% interest in all combined classes of SCI stock, direct or indirect, during the Repurchase Transaction (FAC at ¶¶3, 12, 18-22, 46-49, 54, 67, 69, 75-78).  The FAC further alleges that Nancy Sitrick was an officer and director of SCI and an ESOP fiduciary (with respect to appointing, retaining and monitoring other fiduciaries and exercising discretion in withholding

material information from Reliance and its financial advisor in the Repurchase Transaction) (FAC at ¶¶3, 19, 46, 48, 67, 71, 78).

Similarly, Plaintiffs have alleged in the alternative that the Sitrick Trust is either a party in interest under ERISA §3(14)(G) or a transferee of ill-gotten trust assets (FAC at ¶¶4, 58, 91-92).  See *Harris Trust and Savings Bank v. Solomon Smith Barney*, 530 U.S. 238, 250-251 (2000) ("*Harris Trust*") (holding that a transferee of ill-gotten trust assets in a prohibited transaction may be held liable, unless he purchased the property for value and without notice of the fiduciary's breach of duty).

However, the Sitrick Defendants also contend that the FAC is deficient in failing to plead that the Sitrick Defendants had actual or constructive knowledge that the Repurchase Transaction was prohibited under §406 and non-exempt under §408.  Not only do the Sitrick Defendants rely upon a misreading of *Harris Trust* in making this Argument, but more importantly, the FAC adequately alleges the facts that would be required if Plaintiffs need to plead such actual and constructive knowledge that the Repurchase Transaction was a prohibited transaction.

Regardless of how one reads *Harris Trust*, the facts alleged by the Plaintiffs here—that no well-informed or good faith investigation of the merits of the Repurchase Transaction took place—would satisfy § 408 of ERISA, even

if §408 were not an affirmative defense on which the Defendants bore the burden of proof.  The cases cited by defendants bear this out.  *DeFazio v. Hollister, Inc.*, 636 F. Supp. 2d 1045, 1068 (E.D. Cal. 2009) (*quoting Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006)), for example, requires fiduciaries to engage in an "intensive and scrupulous independent investigation" of a transaction, and that "whether a fiduciary has made a proper determination of fair market value depends on whether the parties are well-informed about the asset and the market for the asset."  Plaintiffs have alleged that Reliance did not make an intensive investigation, and that the Sitricks in bad faith withheld information about the existence and value of offers to purchase SCI.  Thus even if Plaintiffs are required to plead that defendants have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" and plead that "the sales price of the stock was [not] established in good faith," as Defendants suggest, then the allegations in the FAC are sufficient to state a claim.

In *Harris Trust*, the Supreme Court held that parties in interest as defined in ERISA may be sued in equity for their knowing participation in breaches of fiduciary duty and prohibited transactions by ERISA fiduciaries pursuant to ERISA §502(a)(3).  *Harris Trust, supra* at 245-249.  Applying longstanding principles of the common law of trusts, parties in interest and their transferees

Opposition to Sitrick Defendants'
Motion to Dismiss

may be held liable for equitable remedies such as restitution, disgorgement of proceeds, disgorgement of profits and constructive trust where such parties have obtained ill-gotten trust assets in a breach of trust transaction. *Harris Trust, supra* at 250-251.

Defendants' claim that "knowing participation" requires detailed factual pleading demonstrating that a prohibited transaction is not exempt is neither supported by *Harris Trust* nor other applicable law.[5]  *Harris Trust* is an action on summary judgment, and thus provides no meaningful insight on the pleading requirements of this type of action involving a prohibited stock transaction between a plan and a fiduciary/party in interest.  Nor does *Harris Trust* indicate anywhere that "knowing participation" means having knowledge that the transaction does not satisfy any exemption contained in ERISA §408.  In fact, *Harris Trust* requires only "actual or constructive knowledge of the facts satisfying the elements of a §406 transaction." *Harris Trust, supra* at 251 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888-889 (1996)).  Because a prohibited transaction is a *per se* violation of ERISA, all that is required for knowing participation is actual or constructive knowledge of one of the transactions enumerated in ERISA §406.

---

[5] Contrary to the argument of the Sitrick Defendants, Plaintiffs plead the Sitricks knowingly participated in a prohibited transaction (FAC ¶¶49, 54-56, 59-62, 67, 69, 71, 92).

Opposition to Sitrick Defendants'
Motion to Dismiss

Moreover, it does not make sense to require ERISA Plaintiffs to provide detailed factual allegations that a prohibited transaction does not fit within any of the §408 exemptions (such as the "adequate consideration" exemption) to overcome a Motion to Dismiss.  Laying aside the logistical hurdles of requiring affirmative pleading that none of the myriad prohibited transaction exemptions apply (*e.g.*, ERISA § 408; 29 C.F.R. § 2550.408), such a requirement is inconsistent with the rule that fiduciaries charged with prohibited transactions bear the burden of proving "by a preponderance of the evidence that the transaction in question fell within an exemption."  *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987); *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) (holding it is a general rule of statutory construction that the burden of proving justification or exemption under a special exception to the prohibitions of a state generally rests on one who claims its benefits").

In *Braden v. Wal-Mart Stores,* 588 F.3d 585, 600-602 (8th Cir. 2009), the defendant had urged that an MTD should be granted dismissing a prohibited transaction claim against a party in interest because Plaintiff had failed to plead facts raising a plausible inference that the alleged improper payments were not exempted by ERISA § 408.  The Eighth Circuit rejected this argument because (1) ERISA § 406 does not by its terms demand that a plaintiff make any allegation to disprove a statutory exemption, the burden of proving which rests

on defendant; (2) a reasonable interpretation of *Harris Trust*, traditional

principles of trust law and ERISA are inconsistent with defendant's argument;

and (3) at this early stage in the litigation, no plaintiff could be reasonably

expected to make such allegations when such information was kept secret by

defendants.  *Id*. at 602.  The Court stated:

> "It would perverse to require plaintiffs bringing prohibited
> transactions claims to plead facts that remain in the sole control of
> the parties who stand accused of wrongdoing."  Id.

For all of the same reasons, the Sitrick Motion should be denied as to the

§406 prohibited transaction claims.[6]

## III.   THE SITRICK DEFENDANTS ARE LIABLE AS CO-FIDUCIARIES UNDER ERISA § 405

Defendants conclusory arguments regarding § 405 must be rejected.  As

explained above, Defendants had fiduciary duties and were fiduciaries both for

the Goodwill Transaction and for the Repurchase Transaction.  They can as such

be liable for breaches of other fiduciaries if the requirements of § 405 are met, as

they are in this case.  The single case cited by Defendants bears this out. In

---

[6] Plaintiffs would also point out to the Court that, even if Plaintiffs were required to plead factual allegations demonstrating that no §408 exemption applies, Plaintiffs have done so in the FAC at ¶¶48-56 and 80-81.

*Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 143-45 (D. Mass. 2004) ("second tier" fiduciaries could be liable as co-fiduciaries even for fiduciary breaches involving conduct that fell wholly outside their fiduciary authority and wholly within the fiduciary authority of other fiduciaries).

The FAC alleged that the Sitricks knowingly participated in each other's breaches of trust as well as the breaches of trust by the Reliance Trust Company, knowingly undertook to conceal these other breaches, and failed to take an action to remedy these breaches.  (FAC ¶¶ 86, 88.)  Accepting these allegations as true, the Plaintiffs have stated claim sufficient to survive a motion to dismiss.

## IV.   PLAINTIFFS HAVE STATED A CLAIM FOR EQUITABLE RELIEF

ERISA contains a catchall equitable relief provision in § 502(a)(3). Section 502(a)(3) allows "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  This relief is separate from and in addition to the relief provided under § 409 of ERISA for claims under § 502(a)(2) (such as the imprudent and disloyal management claims in Counts I-II of the FAC), and is also distinct from the

Opposition to Sitrick Defendants'
Motion to Dismiss

relief provided for in ERISA's prohibited transactions regime. The purpose of this provision is to ensure that participants and beneficiaries whose retirement savings have been unfairly diminished are able to recoup this money, regardless of the legal maneuverings of plan fiduciaries that breach their positions of trust.

In this case, for example, the Sitrick Trust was the recipient of much of the money that was unfairly denied to or diverted from the ESOP. Under the clearly established law of the Ninth Circuit, one of the equitable remedies available to courts faced with this type of situation is the constructive trust. *See Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F. 2d 1406, 1431 (9th Cir. 1988); *Johnson v. Couturier*, 572 F.3d at 1067.

As such, defendants fiduciary breaches and prohibited transactions also render them liable for equitable relief under § 502(a)(3). Granting Defendants' Motion as to these claims would effectively read § 502(a)(3) out of the statute.

## CONCLUSION

For all of the foregoing reasons, this Court should deny the Sitrick Defendants' Motion to Dismiss.

Opposition to Sitrick Defendants'
Motion to Dismiss

DATED: July 19, 2010.

KELLER ROHRBACK, P.L.C.
By: _____/s/ Gary D. Greenwald_____
Gary D. Greenwald
Gary A. Gotto
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Telephone: (602) 248-0088
Facsimile:  (602) 248-2822
ggreenwald@krplc.com
ggotto@krplc.com

KELLER ROHRBACK, LLP
Juli E. Farris
Derek W. Loeser
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
jfarris@kellerrohrback.com
dloeser@kellerrohrback.com

BRAUN LAW GROUP, PC
Michael D. Braun
10680 West Pico Blvd., Suite 280
Los Angeles, California 90064
Telephone: (310) 836-6000
Facsimile:  (310) 836-6010
service@braunlawgroup.com

Attorneys for Plaintiffs

Opposition to Sitrick Defendants'
Motion to Dismiss