1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WOOL and ALLAN MAYER, on behalf of the Sitrick and Company Employee Stock Ownership Plan, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL S. SITRICK and NANCY SITRICK, husband and wife; THE MICHAEL AND NANCY SITRICK TRUST, a trust; RELIANCE TRUST COMPANY, a Georgia corporation SITRICK AND COMPANY, INC., a California corporation; <br><br> Defendants, <br><br> SITRICK AND COMPANY EMPLOYEE STOCK OWNERSHIP PLAN; <br><br> Nominal Defendant. | Case No. 2:10-cv-02741-JHN-PJWx <br><br> **ORDER GRANTING IN PART AND DENYING IN PART THE SITRICK DEFENDANTS' MOTION TO DISMISS** <br><br> Judge: Honorable Jacqueline H. Nguyen |

The matter is before the Court on the Sitrick Defendants' Motion to
Dismiss the Second Amended Complaint ("Motion") (docket no. 72), filed on
October 18, 2010. The Court has considered the briefs filed in this matter, and
deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ.
P. 78; Local Rule 7-15. Accordingly, the hearing set for December 6, 2010, is
removed from the Court's calendar. For the reasons herein, the Court GRANTS

1    IN PART and DENIES IN PART the Motion.

2                                             I.

3                              **FACTUAL BACKGROUND**

4            In 1989, Defendant Michael S. Sitrick ("Sitrick") founded Sitrick and

5    Company, Inc. ("SCI"), a company providing "strategic communication services"

6    to various businesses, agencies, and individuals. (Second Am. Compl. ("SAC") ¶¶

7    3, 6, 12.) Sitrick was SCI's sole shareholder. (*Id.* at ¶ 18.)

8    **A.      The Employee Stock Ownership Plan**

9            On March 1, 1999, SCI established the Sitrick and Company Employee

10   Stock Ownership Plan ("ESOP") and the Employee Stock Ownership Trust.

11   (SAC ¶ 17.) "The ESOP is a stock bonus plan qualified under § 401(a) of the

12   Internal Revenue Code of 1986 as amended and is an employment stock

13   ownership plan as defined under ERISA." (*Id.*) SCI appointed Sitrick as the

14   ESOP's sole trustee and issued 1,702,400 shares of Class B stock to the Michael

15   and Nancy Sitrick Trust ("Sitrick Trust"). (*Id.* at ¶ 19–21.) The Sitrick Trust sold

16   all those shares of Class B stock to the ESOP for approximately $15,321,600 or

17   $9.00 per share. (*Id.* at ¶ 22.) This transaction left the ESOP with 24.32% of the

18   total equity in SCI, while Sitrick owned the remaining equity in SCI through his

19   Class A shares. (*Id.*) SCI financed the stock purchase by borrowing the amount of

20   the purchase price and loaning it to the ESOP. (*Id.* at ¶ 23.) "The ESOP paid the

21   Sitrick Trust for the Class B shares and executed and delivered to SCI a

22   promissory note payable in installments of principal and interest." (*Id.*) Plaintiffs

23   allege that "the total equity of the SCI exceeded the sum of $60 million in or

24   about March 1999." (*Id.* at ¶ 25.)

25           From 2001 to 2008, SCI "continued to grow and prosper" with, for

26   instance, over $22.5 million in total revenues for the year ending December 31,

27   2008. (SAC ¶ 29.) However, "[d]espite the profitability and growth of the

28   Company, as well as the reduction of the ESOP indebtedness each year, the ESOP

                                             2

1  reported to its participants and beneficiaries a decline in the value of Plan assets
2  and share value virtually every year from 2001 to 2008." (*Id.* at ¶ 31.) "As a
3  result, the gross value of Plan assets declined from a reported high of
4  approximately $17.36 million in 2000, to a reported low of approximately $1.7
5  million in 2008, despite the fact that the original ESOP indebtedness of
6  approximately $15.3 million was almost fully repaid by December 31, 2008." (*Id.*
7  at ¶ 32.)

8       Plaintiffs contend that this loss of nearly 90% of the ESOP's original fair
9  market value resulted, in large part, from "self-dealing by Sitrick and [a] breach
10  of his fiduciary duties as trustee of the ESOP." (SAC ¶ 33.) In particular, Plaintiff
11  contends the loss stemmed from payments to Sitrick beginning in or around 2005
12  and a "2008 Stock Repurchase Transaction." (*Id.* ¶¶ 34–103.)

13  **B.    Payments to Sitrick**

14       Plaintiffs allege that SCI made payments to Sitrick beginning in or around
15  2005 that the SAC describes as "Excessive Compensation payments," "Personal
16  Expenditures," and "Airplane Expenditures." (SAC ¶¶ 34–68.)

17       According to the SAC, Sitrick himself determined the amount of
18  compensation he received from SCI. (SAC ¶ 37.) He received both an annual
19  salary of $600,000 and other compensation. Before 2005, his other compensation
20  included an annual bonus of between $500,000 and $1 million (*Id.* at ¶ 36.)
21  Beginning in 2005, he received other compensation of greater than $3 million per
22  year. (*Id.* at ¶ 40.) The SAC alleges that these latter payments were royalty
23  payments for SCI's use of Sitrick's personal goodwill and reputation, which he
24  believed was responsible for more than 90% of SCI's business. (*Id.* at ¶¶ 35, 42.)
25  Sitrick's other compensation in 2005 represented more than 44% of SCI's
26  earnings before interest and taxes, and his other compensation in 2006–2008
27  represented more than 60% of the company's earnings before interest and taxes.
28  According to the SAC, the Excessive Compensation payments "constitute

1   excessive and unreasonable compensation to Sitrick which he approved as a

2   director and ESOP Trustee while acting with a conflict of interest." (*Id.* at ¶ 44.)

3        "Personal Expenditures" refers to payments SCI made for legal and other

4   expenses related to litigation involving Sitrick in his individual capacity or in his

5   capacity as trustee of the Sitrick Trust. (SAC ¶¶ 49–50.) "Airplane Expenditures"

6   refers to payments SCI made to purchase airplanes used mainly by Sitrick and his

7   family for personal use. (*Id.* at ¶ 56–64.) One airplane was purchased at a cost of

8   more than $14 million, which represented almost 63% of SCI's total revenues for

9   2008. (*Id.* at ¶¶ 60–63.)

10        For all three forms of payments to Sitrick, the SAC alleges that the

11   payments represented the payment of dividend income to Sitrick and that the

12   ESOP was entitled to receive a pro rata share as a minority shareholder in SCI.

13   (SAC ¶¶ 46, 52, 65.) Additionally, the SAC alleges that Sitrick breached his

14   fiduciary duty as a director of SCI by approving the Personal Expenditures and

15   Airplane Expenditures (*id.* at ¶¶ 53, 66), and that Sitrick, as an ESOP trustee (and,

16   for the Excessive Compensation payments, as an SCI director), though aware of

17   these payments to himself, did not object to the payments themselves or the

18   failure to pay the ESOP its pro rata share, and did not take legal action to recover

19   the losses to the ESOP. (*Id.* at ¶¶ 47, 54, 67.) All forms of payments to Sitrick

20   diluted the value of the ESOP's ownership interest in SCI and led to ESOP

21   valuations below the market value for the shares it held. (*Id.* at ¶¶ 48, 55, 68.)

22   **C.**    **The 2008 Stock Repurchase Transaction**

23        With respect to the 2008 Stock Repurchase Transaction (or "Repurchase

24   Transaction"), Sitrick allegedly learned of an offer from Resources Connection,

25   Inc. ("Resources") to purchase SCI assets or stock for an amount in excess of $70

26   million. (SAC ¶ 69.) Upon learning of this lucrative offer, Sitrick deferred the

27   offer in order to first buy the ESOP's SCI shares, through the Repurchase

28   Transaction. (*Id.* at ¶¶ 70–71.) Sitrick "conceived the concept for the Repurchase

4

1    Transaction" and determined the price for the stock, in the range of $2 million.

2    (*Id.* at ¶¶ 71, 73.) Sitrick and Nancy Sitrick, as SCI directors, engaged an

3    independent fiduciary, Reliance Trust Company ("Reliance"), as a special trustee

4    for the ESOP to approve the transaction even though Sitrick and Nancy Sitrick

5    "knew that the Repurchase Transaction was unfair to the ESOP, and that under

6    the Repurchase Transaction, the ESOP would receive consideration worth far less

7    than the value of its SCI stock." (*Id.* at ¶¶ 75–76.)

8         Reliance engaged an appraiser that valued the ESOP shares at less than $2

9    million. (*Id.* at ¶ 78.) The appraiser's primary source of information was Sitrick

10   and SCI's chief financial officer. (*Id.* at ¶ 81.) Sitrick breached his duty as an

11   ESOP trustee to provide Reliance with information relevant to the approval

12   decision by failing to provide various items of information, including information

13   about other companies' interest in purchasing SCI; the course of negotiations with

14   Resources; and the conflicted transactions involved in the Excessive

15   Compensation payments, the Personal Expenditures, and the Airplane

16   Expenditures; and the information that "no reasonably prudent and diligent ESOP

17   fiduciary informed of all relevant facts and circumstances relating to SCI and its

18   value would approve the proposed Repurchase Transaction for any purchase price

19   in the range of $2 million." (*Id.* at ¶ 82.)

20        In terms of Reliance's purported liability, the SAC claims that Reliance

21   failed to conduct a "careful and prudent investigation" into the circumstances

22   surrounding the Repurchase Transaction and "failed to determine in good faith

23   the fair market value of the ESOP's Class B shares." (SAC ¶ 83.) Instead,

24   "Reliance and its financial advisor assumed that the Excessive Compensation

25   payments, the Personal Expenditures and the Airplane expenses were necessary

26   and proper business expenses and/or contractual, valid, and binding." (*Id.* at ¶

27   85.) Reliance also failed to approve the use of a minority interest value to

28   determine the fair market value of the ESOP's shares. (*Id.* at ¶ 87.) As a result,

1    Reliance and its advisor determined that about $1.7 million was a fair price for

2    the ESOP shares for purposes of the Repurchase Transaction. (*Id.* at ¶ 88.) Given

3    the ESOP's share of SCI stock, this implied a total value of $7.23 million for the

4    company, a reduction of about 90% of value from 1999 to 2008, "despite the fact

5    that Sitrick had received offers to purchase SCI in excess of $60 million from in

6    or about 2000 through 2008." (*Id.* at ¶¶ 89–90.)

7         As a result of the Repurchase Transaction, Plaintiffs allege that the

8    valuation of the ESOP's Class B shares was "a colossal understatement" of their

9    fair market value and that the ESOP received "far less than adequate

10   consideration in this prohibited transaction between the ESOP and parties in

11   interest." (SAC ¶¶ 91–92.)

12                                    **II.**

13                        **PROCEDURAL HISTORY**

14        On April 15, 2010, Plaintiffs Richard Wool and Allan Mayer (collectively

15   "Plaintiffs") filed this lawsuit on behalf of the ESOP. Plaintiffs filed their FAC on

16   May 15, 2010, against Defendants Sitrick, Nancy Sitrick, and the Sitrick Trust

17   (the "Sitrick Defendants" or "Defendants"), and Defendant Reliance and Nominal

18   Defendants SCI and the ESOP. On August 10, 2010, the Court issued an order

19   (the "August 10 Order"; docket no. 49) granting in part motions to dismiss by the

20   Sitrick Defendants and Reliance. Plaintiffs filed the SAC on September 13, 2010,

21   naming the same defendants but changing SCI's status from that of a nominal

22   defendant to a defendant. Plaintiffs assert the following causes of action under the

23   Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001

24   *et seq.*:

25        (1)   Violation of Section 404 of ERISA, 29 U.S.C. § 1104, against

26              Sitrick and Nancy Sitrick;

27        (2)   Violation of Section 404 of ERISA, 29 U.S.C. § 1104, against

28              Sitrick for failing to provide material information to Reliance;

                                       6

1    (3)   Violation of Section 404 of ERISA, 29 U.S.C. § 1104, against

2          Reliance;

3    (4)   Violation of Sections 406 and 408 of ERISA, 29 U.S.C. §§ 1106 and

4          1108, against Sitrick, Nancy Sitrick, the Sitrick Trust, Reliance, and

5          SCI;

6    (5)   Violation of Section 405 of ERISA, 29 U.S.C. § 1105, against

7          Sitrick and Reliance; and

8    (6)   Equitable remedies under Sections 409(a) and 501(a)(3) of ERISA,

9          29 U.S.C. §§ 1109(a) and 1132(a)(3), against the Sitrick Trust.

10        On October 18, 2010, the Sitrick Defendants filed the instant Motion.

11   Plaintiffs subsequently filed an Opposition, and the Sitrick Defendants thereafter

12   filed a Reply.

13                                    **III.**

14                            **LEGAL STANDARD**

15        Rule 12(b)(6) permits a defendant to seek dismissal of a complaint that

16   "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P.

17   12(b)(6). In evaluating a motion to dismiss, the Court generally cannot consider

18   material outside the complaint, such as facts presented in briefs, affidavits, or

19   discovery materials, unless such material is alleged in the complaint or judicially

20   noticed. *McCalip v. De Legarret*, No. CV 08-2250 CAS (FFMx), 2008 U.S. Dist.

21   LEXIS 87870, at *4 (C.D. Cal. Aug. 18, 2008); *see Jacobson v. AEG Capital*

22   *Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). The Court must accept as true all

23   material factual allegations in the complaint and construe them in the light most

24   favorable to the plaintiff. *Nursing Home Pension Fund, Local 144 v. Oracle*

25   *Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004). However, this tenet is inapplicable to

26   legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Court

27   need not accept as true "[t]hreadbare recitals of the elements of a cause of action,

28   supported by mere conclusory statements." *Id.* The Court, based on judicial

                                       7

1    experience and common sense, must determine whether a complaint plausibly

2    states a claim for relief. *Id.* at 1950.

3         Part of the Court's determination as to whether a claim plausibly states a

4    claim for relief involves an analysis of a pleading's factual specificity. Asserting

5    more than mere conclusory statements, a complaint must provide a factual basis

6    showing that a plaintiff is entitled to relief and to give the defendant fair notice of

7    claims and relief asserted. *Id.* at 1950–51; *Bell Atl. Corp. v. Twombly*, 550 U.S.

8    544, 556 (2007); Fed. R. Civ. P. 8(a)(2). Although a lengthy factual background

9    is unnecessary, dismissal of a complaint is warranted where the plaintiff fails to

10   allege specific facts needed to support the plausibility of a claim or provide fair

11   notice to the opposing party. *See id.*

12        Dismissal is also warranted where a complaint alleging fraud fails to meet

13   the heightened pleading standards of Federal Rule of Civil Procedure 9(b).

14   Although "[m]alice, intent, knowledge, and other conditions of a person's mind

15   may be alleged generally," a complaint "must state with particularity the

16   circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of

17   fraud must be accompanied by 'the who, what, when, where, and how' of the

18   misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

19   Cir. 2003) (citation omitted). This includes allegations as to the particular

20   statement and why it was false or misleading. *Id.* Failure to sufficiently allege

21   fraud claims mandates their dismissal. *Id.* Failure to sufficiently allege fraud as

22   part of a claim of which fraud is not a necessary element requires that the court

23   determine whether, disregarding the allegations of fraud, the complaint

24   sufficiently states a claim under the Rule 12(b) standard. *Id.* at 1104–05.

25        If a complaint is dismissed, leave to amend is liberally granted. Fed. R. Civ.

26   P. 15(a); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th

27   Cir. 1990). However, it is proper to deny leave to amend if the amendment would

28   be futile or the complaint has previously been amended. *AmerisourceBergen*

8

1  *Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *Ascon Props.,*

2  *Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

3                                          **IV.**

4                                    **DISCUSSION**

5         Defendants' Motion seeks dismissal of Counts I, II, and V of the SAC on

6  various grounds. For the reasons set forth below, the Court dismisses Count I in

7  part, strikes Count II, and dismisses Count V as alleged against Sitrick.

8  **A.     Count I**

9         Plaintiffs assert Count I—for violation of section 404 of ERISA, 29 U.S.C.

10 § 1104—against Sitrick and Nancy Sitrick. Section 404 imposes many duties on

11 ERISA fiduciaries, including the obligation to discharge one's duties "with

12 respect to a plan solely in the interest of the participants and beneficiaries" and

13 "with the care, skill, prudence, and diligence under the circumstances then

14 prevailing that a prudent man acting in a like capacity and familiar with such

15 matters would use in the conduct of an enterprise of a like character and with like

16 aims." 29 U.S.C. § 1104(a).

17 1.      Preemption of Claim Based on SCI's Payments to Sitrick

18        The Court previously held that a claim under a separate ERISA provision,

19 section 406, 29 U.S.C. § 1106, prohibiting certain transactions between a plan and

20 a fiduciary or party in interest, could not be maintained on the basis of the royalty

21 payments to Sitrick, because those payments were made by SCI rather than by the

22 ESOP. (Aug. 10 Order 14–15.) On the basis of that holding, Defendants seek

23 dismissal of Count I in that it is based on payments by SCI for the Excessive

24 Compensation payments, the Personal Expenditures, and the Airplane

25 Expenditures.

26        Plaintiffs assert that the SAC brings this claim based on a new theory and

27 new allegations. The SAC alleges that Sitrick and Nancy Sitrick breached

28 fiduciary duties imposed on them as directors—and for Sitrick, as an officer—of

                                             9

1  SCI. (SAC ¶ 108.) This breach consisted of Sitrick and Nancy Sitrick's approval

2  of—and for Sitrick, benefiting from—the Excessive Compensation Payments, the

3  Personal Expenditures, and the Airplane Expenditures. (*Id.*) The SAC further

4  alleges that Sitrick, as an ESOP trustee, had a duty to bring a state law derivative

5  action on behalf of the ESOP as a shareholder of SCI, to recover the ESOP's pro

6  rata share of dividend income represented by those payments to Sitrick. (*Id.* at ¶¶

7  109–110.) Because Sitrick, as an ESOP trustee, failed to bring that state law

8  shareholder's derivative action, Sitrick breached his duty as an ERISA fiduciary

9  under section 404. (*Id.*)

10  Defendants counter that the SAC still fails to state a claim, even under this

11  new theory, because the applicable shareholder's derivative action would be

12  preempted by ERISA. Defendants argue both express preemption and conflict

13  preemption.[1] (Mot. 7–13.)

14  Conflict preemption applies where a state law creates an obstacle to

15  achieving Congress's purpose in enacting a federal law. *Gade v. Nat'l Solid*

16  *Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). The Supreme Court has found

17  conflict preemption applicable to state laws conflicting with ERISA's goals. For

18  example, "any state-law cause of action that duplicates, supplements, or supplants

19  the ERISA civil enforcement remedy conflicts with the clear congressional intent

20  to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*

21  *Inc. v. Davila*, 542 U.S. 200, 209 (2004).

22  The Court has already held that a claim based on expenditures of non-plan

23  assets is not actionable under ERISA section 406, the provision barring interested

24  transactions. (Aug. 10 Order, 14–15.) As the Ninth Circuit explained in *Johnson*

25  *v. Couturier*, 572 F.3d 1067 (9th Cir. 2009), allowing recovery under ERISA for

26

27  _____

[1] Because the Court agrees with Defendants' conflict preemption argument, it

28  does not reach the issue of express preemption.

1    business decisions such as corporate salaries would extend the reach of ERISA

2    far beyond its intended purview. *Id.* at 1077. ERISA fiduciary duties are properly

3    circumscribed to apply to transactions involving *plan* assets.[2] *Id.* Plaintiffs' theory

4    would extend ERISA liability precisely into an area outside its purview. Thus,

5    allowing Plaintiffs' claim to go forward would "supplement" ERISA in a way

6    that clearly conflicts with congressional intent. Accordingly, the Court finds the

7    claim based on Plaintiffs' theory of a duty to bring a shareholder's derivative

8    action preempted. Count I is dismissed to the extent its allegations support that

9    theory.

10   2.    Claims Based on a Duty to Monitor and Inform Reliance

11           The SAC presents another new theory for the imposition of ERISA

12   fiduciary duties on the Sitricks: that they failed to monitor or fully inform

13   Reliance of facts necessary to its evaluation of the Repurchase Transaction. (SAC

14   ¶¶ 115–116.)

15           ERISA defines a fiduciary as an individual who "exercises any

16   discretionary control respecting management or [an ERISA] plan or exercises any

17   authority or control respecting management or disposition of its assets." 29

18   U.S.C. § 1002(21)(A)(i). "Where members of an employer's board of directors

19   have responsibility for the appointment and removal of ERISA trustees, those

20   directors are themselves subject to ERISA fiduciary duties, albeit only with

21   respect to trustee selection and retention." *Johnson*, 572 F.3d at 1076; *see also*

22   *Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1449 (9th Cir. 1989). These

23   Ninth Circuit cases rely on a Department of Labor interpretive bulletin that also

24   provides that "[a]t reasonable intervals the performance of trustees and other

25   fiduciaries should be reviewed by the appointing fiduciary in such manner as may

26

27          [2] Johnson found plan assets implicated on the facts of that case; as the Court

28   previously concluded, similar facts do not exist here. (Aug. 10 Order 15.)

1   be reasonably expected to ensure that their performance has been in compliance

2   with the terms of the plan and statutory standards." 29 C.F.R. § 2509.75-8 (FR-

3   17).

4          On the basis of this authority, the Court agrees that a duty to monitor an

5   appointed fiduciary exists.[3]

6          Defendants argue that even if such a duty exists, it should not apply under

7   the facts of this case. (Reply 10.) Here, they argue, the Sitricks appointed

8   Reliance to determine the propriety of the Repurchase Transaction because of the

9   Sitricks' conflict of interest with respect to the transaction; imposing a duty on the

10  Sitricks to monitor Reliance would implicate that conflict of interest. (*Id.*) The

11  Court agrees that this set of facts is particularly problematic. However, it does not

12  agree that the Sitricks were relieved of ERISA fiduciary duties because they were

13  interested parties in the transaction. Rather than being relieved of duties, an

14  interested party in particular must be subject to ERISA's requirements. "Although

15  the scope of the duty to monitor is often unclear, many courts have declined to

16  dismiss a duty to monitor claim on a motion to dismiss." *In re Syncor ERISA*

17  *Litig.*, 351 F. Supp. 2d 970, 986 (C.D. Cal. 2004). The Court agrees with the

18  wisdom of this approach and declines to dismiss Count I to the extent that it is

19  premised on a duty to monitor Reliance.

20         An appointing fiduciary's duties with respect to the appointed fiduciary

21  also logically includes a duty to fully inform the appointed fiduciary so that it

22  may meet its responsibilities under ERISA. *See id.* ("Courts have repeatedly

23  acknowledged that a board of directors may have a duty to monitor investments,

24

25         [3] The Court also finds persuasive the out-of-circuit authority to which Plaintiffs

26  cite in their Opposition and finds the approach of the district court cases cited in
    Defendants' Motion needlessly restrictive. The discretionary control over the retention
27  of an appointed fiduciary implies the duty to affirm that the fiduciary should be

28  retained; the mechanism for meeting this duty is to monitor the appointed fiduciary.

1   and that the duty sometimes includes a duty to disclose information to committee

2   members."). Plaintiffs have sufficiently alleged a failure to inform Reliance of

3   other companies' interest in purchasing SCI, the course of negotiations with

4   Resources, and the conflicted transactions involved in the payments to Sitrick.

5   (SAC ¶ 82.) Each of these allegations is supported by further factual detail in the

6   SAC. (*Id.* at ¶¶ 34–68, 101–102.) This is material information with respect to

7   Reliance's evaluation of the value of the ESOP's shares and the fairness of the

8   Repurchase Transaction. Accordingly, the Court declines also to dismiss Count I

9   to the extent that it is premised on a failure to inform Reliance.[4]

10       In sum, the Court dismisses Count I to the extent it is based on breaches

11   related to the payments to Sitrick but declines to dismiss Count I to the extent it is

12   based on breaches related to Reliance's appointment and retention. Because

13   Plaintiffs have previously been given leave to amend and because the Court finds

14   the dismissed portions of Count I to be preempted as a matter of law, the

15   dismissal is *with prejudice*. *See Ascon Props.*, 866 F.2d at 1160.

16   **B.     Count II**

17       Plaintiffs assert Count II—also for violation of section 404 of ERISA, 29

18   U.S.C. § 1104—against Sitrick. Defendants focus on the Court's previous order,

19   which determined that the allegations related to Sitrick's failure to inform

20   Reliance did not meet the heightened pleading standard of Rule 9(b). (Mot.

21

22

23   [4] The Court acknowledges Defendants' final argument in their Motion and
     Reply, which is based on their claim that evidence exists showing Sitrick informed

24   Reliance of the negotiations with Resources. (Mot. 20–21; Reply 19.) However, on
     a motion to dismiss, the Court must base its decision on the allegations in the

25   complaint and cannot here consider the additional information submitted with

26   Defendants' Reply. (Reply Ex. A.) The Court assumes that Plaintiffs are aware of their
     Rule 11 obligations and that if Plaintiffs reach the conclusion that their allegations are

27   without a factual basis, Plaintiffs will seek leave to amend rather than be subject to

28   sanctions.

13

1    16–18.) In that order, the Court observed that "Plaintiffs' claims against Sitrick

2    are grounded in fraud. For instance, with regard to the Stock Repurchase,

3    Plaintiffs allege that Sitrick 'conceived [a] plan' to repurchase the ESOP stock for

4    his personal financial gain and 'carr[ied] out his plan' by 'caus[ing]' SCI to hire

5    Reliance." (Aug. 10 Order 12.)

6    　　　　Defendants argue that the allegations in the SAC are still grounded in

7    fraud. The Court disagrees. First, the specific language to which the Court

8    previously pointed has been changed or excised in the SAC. Moreover, the

9    allegations in the SAC to which Defendants point do not necessarily support a

10   theory of a fraudulent course of conduct. Plaintiffs allege that Sitrick "conceived

11   the concept" to purchase the ESOP's stock for less than $2 million (SAC ¶¶ 71,

12   73), that he engaged Reliance "in an effort to gain approval of the proposed

13   Repurchase Transaction even though he knew that the Repurchase Transaction

14   was unfair to the ESOP" (*id.* at ¶ 75), that he engaged Reliance "for the sole

15   purpose of effectuating the Repurchase Transaction" (*id.* at ¶ 112), and that he

16   "controlled the information flow to the appraisers and Reliance." (*Id.* at ¶ 111.)

17   Though the Court agrees that such allegations could support a claim for fraud, the

18   SAC does not allege an intent to defraud. These allegations as plausibly go to an

19   intent to manipulate, which is distinguishable. The Court therefore declines to

20   find that the SAC alleges a fraudulent course of conduct and reads the SAC

21   accordingly—that is, the Court finds that the SAC alleges an intentional breach of

22   Sitrick's fiduciary duty, for which ERISA may provide relief.[5]

23   　　　　However, the Court finds Count II problematic for a separate reason not

24   identified by Defendants: it is entirely duplicative of the allegations in Count I

25   that Sitrick breached his fiduciary duty by failing to inform Reliance of the

26

27   　　　　[5] The Court notes that because it reads the SAC as not containing allegations
     of fraud, the forms of relief attendant on a finding of fraud are not available to
28   Plaintiffs.

14

1    material information necessary to its evaluation of the Repurchase Transaction.

2    For example, in the discussion above regarding Count I, the Court identified

3    paragraph 82 of the SAC as providing factual allegations that Sitrick failed to

4    inform Reliance. This paragraph supports the allegation in Count I that Sitrick

5    breached his fiduciary duties to the ESOP by "failing to ensure that Reliance was

6    fully informed of all relevant facts and circumstances in determining the fairness

7    of the Repurchase Transaction." (SAC ¶ 115(G).) The allegations in paragraph 82

8    are repeated verbatim in paragraph 123, under Count II. Accordingly, the Court

9    strikes Count II as duplicative of Count I. *See Atlantic Richfield Co. v. Ramirez*,

10   No. 98-56372, 1999 WL 273241, at *2 (9th Cir. May 4, 1999); *Wilkerson v.*

11   *Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

12   **C.    Count V**

13        Plaintiffs assert Count V—for violation of section 405 of ERISA, 29

14   U.S.C. § 1105, against Sitrick and Reliance. Section 405 imposes liability on a

15   fiduciary for another fiduciary's breach if the fiduciary knows of the breach by

16   the other fiduciary and either knowingly participates in the breach or conceals it,

17   or does not make reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a)(1),

18   (3).

19        The Court's prior order concluded that Count V—Count III of the First

20   Amended Complaint—"failed to allege a sufficient factual basis to support the

21   scienter requirement" in the ERISA provision. (Aug. 10 Order 18.)

22        Plaintiffs assert that the SAC includes "detailed allegations about Sitrick's

23   'actual knowledge' of Reliance's breaches," and point to paragraphs 150–152.

24   (Opp'n 25.) Paragraph 150 lays out several items of information that Sitrick

25   allegedly knew. However, none of these items of information refers to Reliance.

26   Paragraph 151 alleges that Sitrick knew Reliance had not asserted the ESOP's

27   claim against Sitrick or SCI. This is sufficient to allege knowledge of a breach by

28   Reliance. However, there are not sufficient factual allegations that establish

15

1   Sitrick's knowing participation in or concealment of that breach, or Sitrick's

2   failure to take reasonable efforts to remedy the breach. Paragraph 152 makes

3   these legal allegations in conclusory fashion but does not support them with a

4   plausible factual basis.

5          Accordingly, the Court dismisses Count V as to Sitrick. Because Plaintiffs

6   have previously been given leave to amend this count, the dismissal is *with*

7   *prejudice*. *See Ascon Props.*, 866 F.2d at 1160.

8                                          **V.**

9                                    **CONCLUSION**

10         For these reasons, the Court GRANTS IN PART and DENIES IN PART

11  the Sitrick Defendants' Motion (docket no. 72).  The Court GRANTS the Motion

12  and dismisses *with prejudice* Count I (with respect to the payments to Sitrick

13  only) and Count V as alleged against Sitrick. The Court also STRIKES Count II.

14  The Court DENIES the Motion otherwise.

15  IT IS SO ORDERED.

16

17  Dated: November 30, 2010

18                                                  _____
                                                    Honorable Jacqueline H. Nguyen
19                                                  UNITED STATES DISTRICT COURT

20

21

22

23

24

25

26

27

28