1  Michael D. Braun (167416)
2  service@braunlawgroup.com
   BRAUN LAW GROUP, P.C.
3  10680 West Pico Boulevard, Suite 280
4  Los Angeles, CA  90064
   Phone: (310) 836-6000
5  Fax: (310) 836-6010

6  Attorneys for Plaintiffs
7  *Additional Counsel on Signature Page*

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

10 | RICHARD WOOL and ALLAN | **No. 2:10-cv-02741-JHN-PJWx** |
11 | MAYER, on behalf of the Sitrick and | |
12 | Company Employee Stock Ownership | **PLAINTIFFS' MEMORANDUM IN** |
   | Plan, | **SUPPORT OF MOTION FOR FINAL** |
13 | | **APPROVAL OF SETTLEMENT,** |
14 |              Plaintiffs, | **NOTICE AND PLAN OF** |
   | | **ALLOCATION** |
15 | v. | |
16 | | **DATE   : APRIL 23, 2012** |
17 | MICHAEL S. SITRICK and NANCY | **TIME   : 2:00 P.M.** |
   | SITRICK, husband and wife; THE | **CTRM : 790** |
18 | MICHAEL AND NANCY SITRICK | |
19 | TRUST, a trust; RELIANCE TRUST | **BEFORE THE HON. JACQUELINE** |
   | COMPANY, a Georgia corporation; | **HONG-NGOC NGUYEN** |
20 | | |
21 |              Defendants, | |
22 | | |
   | SITRICK AND COMPANY, INC., a | |
23 | California corporation; SITRICK AND | |
24 | COMPANY EMPLOYEE STOCK | |
   | OWNERSHIP PLAN; | |
25 | | |
26 |              Nominal Defendants. | |
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................... 1

II.     NATURE OF THE ACTION ........................................................................ 3

        A.      The Claims Asserted ........................................................................ 3

        B.      Damages ........................................................................................... 5

        C.      The Settlement .................................................................................. 7

        D.      Preliminary Approval and Notice .................................................... 8

        E.      Plan of Allocation ............................................................................ 8

III.    THE PROPOSED SETTLEMENT MERITS FINAL
        APPROVAL ................................................................................................. 9

        A.      The Strength of Plaintiffs' Case ..................................................... 10

        B.      The Risk, Expense, Complexity, and Likely Duration of
                Further Litigation ........................................................................... 10

        C.      The Risk of Maintaining Class Action Status Throughout
                the Trial .......................................................................................... 12

        D.      The Amount Offered in Settlement ................................................ 13

        E.      The Extent of Discovery Completed and the Stage of the
                Proceedings .................................................................................... 14

        F.      Experience and View of Counsel ................................................... 15

        G.      The Presence of a Governmental Participant ................................. 16

        H.      The Reaction of ESOP Participants to the Proposed
                Settlement ...................................................................................... 16

IV.     THE FORMS AND METHODS OF NOTICE WERE
        REASONABLE AND SATISFIED RULE 23 AND DUE
        PROCESS ................................................................................................... 18

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- i -

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ...................20

VI.    CONCLUSION............................................................22

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- ii -

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) ................................................................15

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .........................................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................................1, 9

*In re Chicken Antitrust Litig.*,
   669 F.2d 228 (5th Cir. 1982) ..........................................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..........................................................................13

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ..........................................................................20

*In re Oracle Sec. Litig.*,
   No. C90-0931-VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994)................21

*In re Pacific Enters. Sec. Litig.*,,
   47 F.3d 373 (9th Cir. 1995) ............................................................................15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ...................................................................20

*In re Train Derailment*,
   No. Civ.A MDL 1531, 2006 WL 644494 (E.D. La. Jan. 27, 2006)................17

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000).............................................................21

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ........................................................................18

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- iii -

*Mendoza v. Tucson Sch. Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980), *rev'd on other grounds*, 475 U.S.
    717 (1986) ........................................................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .........................................................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................14, 15, 18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................................9

*Rodriguez v. West Pub. Corp*, No. CV05-3222, 2007 WL 2827379
    (C.D. Cal. Sep. 10, 2007) .................................................................................19

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ...........................................................................19

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .............................................................................9

**Statutes**

29 U.S.C. § 1001 et seq. .............................................................................................1

**Rules**

Fed. R. Civ. P. 23(e)(2) ..............................................................................................9

**Other Authorities**

5 MOORE'S FEDERAL PRACTICE § 23.85[2][d] (3d ed. 1997) ...............................18

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 8.32
    (4th ed. 2002) ...................................................................................................19

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995) ..............................14

*The Private Securities Litigation Reform Act of 1995: Rebalancing
    Litigation Risks and Rewards for Class Action Plaintiffs,*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- iv -

*Defendants and Lawyers*,
51 Bus. Law. 1009 & n.131 (1996) ................................................................14

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- v -

## I.   INTRODUCTION

Plaintiffs Richard Wool and Allan Mayer, on behalf of the Sitrick and Company Employee Stock Ownership Plan (the "*ESOP*") (collectively "*Plaintiffs*"), respectfully move the Court for final approval of the proposed settlement (the "*Settlement*") of this action, which asserts claims for breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1]   The *Settlement* entered into between all parties in this litigation on November 29, 2011 (the "*Settlement Agreement*")[2] resolves all ERISA claims asserted by *Plaintiffs* against Michael S. Sitrick, Nancy Sitrick, the Michael and Nancy Sitrick Trust, Sitrick and Company, Inc. (the "*Sitrick Defendants*"), and Reliance Trust Company ("*Reliance*") (collectively "*Defendants*").

Although this litigation is not a class action, for reasons discussed in *Plaintiffs'* prior filings to the Court in connection with *Plaintiffs'* motion for preliminary approval (*see* ECF Nos. 129 and 135), and pursuant to the Court's directive in the preliminary approval hearing held on February 13, 2012, this *Settlement* should be measured under the governing standards for evaluating class action settlements in the Ninth Circuit.  *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting forth the factors courts should balance to assess a settlement).  The *Settlement*, consisting of a cash payment of $6,250,000, provides a substantial benefit to *Plaintiffs*, and as discussed in detail below, is fair, reasonable and adequate under this Circuit's standards.

---

[1] All italicized words contained herein are similarly italicized and defined in the Notice of Proposed Settlement (the "*Notice*") sent to all participants of the *ESOP* on February 17, 2012.  *See* Declaration of Derek W. Loeser, Ex. D.

[2] A complete and final version of the *Settlement Agreement* has previously been filed with the Court.  (ECF No. 133, Ex. A).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 1 -

1      Moreover, following the Court's order "indicat[ing] approval of the

2  settlement; form to be determined" on February 13, 2012 (*see* ECF No. 138), and

3  pursuant to the proposed schedule contained in *Plaintiffs'* Preliminary Approval

4  Motion (*see* ECF No. 129 at 8), *Plaintiffs' Counsel* effectuated delivery of the

5  *Notice* to all 86 participants of the *ESOP* within seven days from the date the Court

6  preliminary approved the *Settlement.* As of this filing, two objections have been

7  filed to the *Settlement*, and as addressed below, neither should preclude the Court

8  from finding that *Settlement* is fair, adequate and reasonable. No other objections

9  have been filed. In addition, the Department of Labor ("DOL")—which conducted

10  an investigation with respect to the *ESOP*—has noted that it does not object to the

11  *Settlement*. The *Settlement* has also been reviewed and approved by an

12  Independent Fiduciary hired by Sitrick and Company, Inc. ("SCI") pursuant to

13  DOL Prohibited Transaction Class Exemption 2003-39. Lastly, *Plaintiffs' Counsel*

14  have conferred with counsel for *Defendants* and they have indicated that they do

15  not oppose this motion.

16      Accordingly, for the reasons discussed herein, as well as in *Plaintiffs'*

17  Memorandum in Support of Motion for Preliminary Approval of Proposed

18  Settlement, Approval of Notice Plan, and Time for Fairness Hearing (ECF No.

19  129), and *Plaintiffs'* Supplemental Brief in support thereof (ECF No. 135),

20  *Plaintiffs* respectfully request that the Court: (1) grant final approval of the

21  *Settlement* in the proposed form attached hereto (which is substantially similar to

22  Exhibit B of the *Settlement Agreement* [3]); (2) approve the forms and methods of

23  ———————————————

24  [3] Pursuant to § 6.2 of the *Settlement Agreement*, the parties agreed that *Plaintiffs'*

25  *Counsel* would submit a proposed final order substantially similar to Exhibit B of

    the *Settlement Agreement*. For the convenience of the Court, *Plaintiffs* have re-

26  submitted a proposed order in a format consistent with all pleadings filed in

27  connection with *Plaintiffs'* Motion for Final Approval and Motion for Attorneys'

    Fees and Expenses.

28

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

1  *Notice* to the *ESOP's* participants; and (3) approve the proposed *Plan of Allocation*
2  of the *Settlement Fund*.

## II.   NATURE OF THE ACTION

**A.    The Claims Asserted**

As this *Court* is well aware through the extensive briefing that has occurred
in this case, this matter is an ERISA breach of fiduciary duty action brought by
*Plaintiffs* against the fiduciaries of the *ESOP*.  *Plaintiffs* allege that the fiduciaries
approved a transaction in which the *ESOP's* interest in SCI was repurchased at a
price that did not reflect the true value of the *ESOP's* approximate 25% interest in
SCI.  The *ESOP* was entitled to more than the $2.36 million paid by SCI to the
*ESOP* in connection with this transaction (the "2008 Repurchase Transaction") as
evidenced by a subsequent sale of SCI through a merger and acquisition with
Resources Global Professionals ("Resources").  This deal closed in 2009 with
Resources paying Sitrick and SCI $25 million in cash, approximately $15 million
in restricted Resources stock, and an earn-out that could have yielded Sitrick an
additional $35 million (and possibly more) after five years provided that certain
benchmarks were met, bringing the total potential value of the Resources deal to
approximately $75 million.

As a result, *Plaintiffs* allege that *Defendants* failed to prudently and loyally
manage the *ESOP*, and entered into prohibited transactions with the *ESOP* for less
than adequate consideration.  As fiduciaries, *Defendants* had a duty to act solely in
the interest of the participants and beneficiaries of the *ESOP*, and to exercise the
required skill, care, prudence, and diligence in administering plan assets.  *Plaintiffs*
allege in their Complaint that *Defendants* fell short of these standards.

Prior to entering into the *Settlement Agreement*, *Plaintiffs' Counsel* reviewed
approximately 4,000 documents totaling nearly 45,000 pages in response to
Requests for Production to SCI and *Reliance*, as well as from third-party

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 3 -

subpoenas to Resources and BCC Capital ("BCC"), a financial advisory firm retained by *Reliance* in connection with the 2008 Repurchase Transaction. *Plaintiffs* believe that these documents—which included thousands of pages of financial statements of SCI that were provided to several different third parties—support *Plaintiffs'* causes of action under ERISA, and affirm the financial information contained in the operative complaint, including most notably the section discussing Sitrick's self-dealing and manipulation of financial information provided separately to Resources and to *Reliance*. (*See* ECF No. 119, ¶¶ 75-89). [4]

*Plaintiffs* note in particular that in their view discovery showed that prior to the 2008 Repurchase Transaction of the *ESOP's* stock in SCI, Sitrick had engaged in discussions with Resources and others that suggested that the value of the *ESOP's* SCI stock was much higher than was paid in the 2008 Repurchase Transaction.  In addition, documents showed that Sitrick provided separately to Resources and *Reliance* adjusted EBITDA calculations that were markedly different:  a much lower EBITDA calculation was provided to Resources in order to support a low valuation of the *ESOP's* interest in SCI, while a higher EBITDA calculation was provided to Resources to support a higher payment by Resources when it purchased SCI.

Nevertheless, as discussed below, *Plaintiffs* recognized that *Defendants* vigorously contested liability on *Plaintiffs'* ERISA claims.  In addition, as the case progressed, it became clear that whatever the strength of *Plaintiffs'* claims from a liability perspective, the recoverable damages were likely significantly lower than *Plaintiffs* believed at the outset of the litigation.

---

[4] Indeed, much of this discovery was referenced in *Plaintiffs'* Fourth Amended Complaint filed on July 1, 2011.  (ECF No. 119).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 4 -

**B.     Damages**

The damages recoverable in this case would be the loss suffered by the *ESOP* as the result of the *Defendants* causing the *ESOP* to sell its SCI stock to SCI for less than its fair value.  In connection with the 2008 Repurchase Transaction, the *ESOP* received $1.6 million in cash and SCI canceled the *ESOP's* remaining $760,000 of indebtedness owed by the *ESOP* to *SCI* from the original 1999 leveraged transaction.  As such, SCI provided the *ESOP* with $2.36 million in monetary benefits for the *ESOP's* 24.3% ownership interest in SCI.  This implies a total value for SCI of approximately $9.7 million.

*Plaintiffs* are confident that had the case been fully litigated, they would have established that SCI's value was significantly higher than $9.7 million and therefore the *ESOP* received less than fair value for its 24.3% interest.  *Plaintiffs* believe that the valuation of SCI could be determined by either of two methods: adoption of the price paid in the Resources transaction in 2009 for all of the stock in SCI, or by a capitalization method using SCI's adjusted EBITDA for 2008.  *Plaintiffs* estimate that the range of damages using these methods would have been $5.1–12.3 million.[5]

In the Resources transaction, Sitrick and SCI received cash and Resources stock worth approximately $40 million, as well as an earn-out that was contingent upon SCI's future performance.  The *ESOP's* 24.3% interest in $40 million,

_____

[5] Prior to mid-2011, *Plaintiffs* believed that significantly higher damages could be established, based on the expectation that the earn-out feature of the Resources transaction could have paid as much as $35 million or more if SCI met certain performance benchmarks five years after the 2009 Resources deal.  In the second half of 2011, however, it became clear that it is very unlikely that any amount would be paid under the earn-out because SCI's performance in 2009-2011 fell well short of applicable benchmarks.  Regardless of the potential for success on the merits, the failure of the earn-out greatly reduces the potential damages.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 5 -

without application of a minority discount, would have entitled it to approximately $10 million, plus the present value of the potential earn-out.

As noted above in FN 5, however, it now appears highly likely that there will be no payment on the earn-out.  Thus, *Plaintiffs* anticipate that a fact-finder would have given no value to the earn-out in using the Resources transaction as the basis for determining the value of the *ESOP's* SCI stock.  Further, while *Plaintiffs* do not believe that it would be appropriate to apply a minority discount to the Resources transaction, they recognize the possibility that *Defendants* may have successfully argued for a minority discount of as much as 25%.[6]  Thus, the *ESOP's* "share" of the Resources transaction could range from approximately $7.5 (25% minority discount) to $10 million (no minority discount).  The *ESOP* received $2.36 million in the 2008 Repurchase Transaction; thus when subtracting this amount from the above figures, the damages would be in the range of approximately $5.1–$7.6 million.

Apart from the Resources transaction, *Plaintiffs* believe that if a capitalized adjusted EBITDA method had been used for valuation of the *ESOP's* interest, the indicated value of SCI would have been $50 to $60 million (5-6 times adjusted EBITDA of approximately $10 million).  Thus, the *ESOP's* "share" using this method could range from $9.2–$11 million (25% minority discount) to $12.2–$14.7 million (no minority discount).  Again, after crediting the $2.36 million received by the ESOP in the 2008 Repurchase Transaction, damages would be in the $6.8–$12.3 million range.

---

[6] Consistent with Generally Accepted Accounting Principles ("GAAP"), a "minority" discount is a valuation adjustment that reduces the overall value of an interest because the interest represents a non-controlling interest (as opposed to a "control" premium which increases the value of a security where the interest represents majority ownership or control).  The determination of whether to apply a minority discount depends on the facts and circumstances of the valuation.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 6 -

Consequently, *Plaintiffs* believe that the range of damages when using the two different analyses above—had the case been litigated to a conclusion—would likely be $5.1–$12.3 million.  These figures also assume that *Plaintiffs* would prevail on the threshold issue of liability; that *Plaintiffs* would likewise prevail on various arguments *Defendants* would advance to reduce damages, including the arguments that a significant portion of SCI's revenues were not corporate assets but were instead attributable to Sitrick's personal goodwill; and that *Plaintiff's* adjusted EBITDA of $10 million is too high because it treats as personal to Sitrick (and therefore not a deduction from EBITDA) various expenses that were in fact SCI corporate expenses.  While *Plaintiffs* believe they would have prevailed on these points, they recognize that there was meaningful risk associated with litigating these matters to a conclusion and that if *Defendants* had prevailed on any of these points, damages would have been reduced substantially and perhaps eliminated entirely.

## C.   The Settlement

The parties first met on April 18, 2011 in Phoenix to explore the possibility of settlement.  Shortly thereafter, and as described in *Plaintiffs'* Preliminary Approval Memorandum, the parties and all applicable insurance carriers participated in a lengthy personal mediation facilitated by mediator Robert Meyer—notably a mediator with extensive experience mediating ERISA breach of fiduciary matters similar to this case—in Los Angeles on June 13, 2011. Negotiations facilitated by the mediator continued for several months, and after a rigorous, arm's-length process, the parties reached a settlement on November 29, 2011 for $6.25 million.  In accepting the *Settlement Amount*, *Plaintiffs* took into account, among other things, the strong likelihood that the earn-out benchmarks of the Resources deal would not be met, as described above.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 7 -

**D.      Preliminary Approval and Notice**

On the basis of the foregoing facts and those described in *Plaintiffs'* preliminary approval papers and supplemental briefing thereto, the Court entered an Order "indicat[ing] approval of the settlement; form to be determined" on February 13, 2012.  (ECF No. 138).  The Court also ordered that the *ESOP* participants be given *Notice* of the *Settlement* and an opportunity to object according to a set schedule, and scheduled a final fairness hearing for the Settlement on April 23, 2012.

*Plaintiffs' Counsel* timely complied with the notice provisions pursuant to the *Settlement Agreement* and the proposed schedule for approval which the *Court* granted in the February 13, 2012 hearing.  Specifically, on February 17, 2012— and based on information provided by the *Sitrick Defendants—Plaintiffs' Counsel* caused the *Notice* to be mailed by first-class mail, postage prepaid, to the last known address of each *Affected Participant*.[7]  *Plaintiffs' Counsel* also created a website containing relevant information regarding the *Settlement*, and directed each *Affected Participant* to the website through the *Notice*.[8]

**E.      Plan of Allocation**

The *Plan of Allocation* provides that *Affected Participants* (defined by the *Settlement Agreement* and *Notice* as all participants and beneficiaries who had a vested balance in the *ESOP* as of December 23, 2008) will receive an allocation of the proceeds of the *Settlement* which will be disbursed to the 401(k) Plan in accordance with the percentage (referred to as the "*Applicable Percentage*") such *Affected Participant* received of the total allocations to all *Affected Participants* of the proceeds of the *ESOP's* sale of its stock in SCI in 2008 (the 2008 Repurchase Transaction).  The actual *Applicable Percentage* was intentionally left blank in

---

[7] *See* Loeser Decl., ¶¶ 23, Ex. D.

[8] *See* http://www.kellersettlements.com/sitrick.html

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 8 -

Exhibit A to the Plan of Allocation in order to ameliorate any individual confidentiality concerns amongst the *ESOP* participants.  The *Sitrick Defendants* have provided *Plaintiffs' Counsel* with a breakdown of each *Affected Participants'* recovery in connection with the 2008 Repurchase Transaction, and *Plaintiffs' Counsel* shall use this information to disburse funds from the *Settlement Amount.*[9]

## III.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The law favors settlement, particularly in complex cases or class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Final approval of a proposed class action settlement will be granted where it is established that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In determining whether to grant final approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  In evaluating whether a settlement is fair, reasonable, and adequate, courts are guided by the eight factors set forth in *Hanlon*:

> [a] the strength of the plaintiffs' case; [b] the risk, expense, complexity, and likely duration of further litigation; [c] the risk of maintaining class action status throughout the trial; [d] the amount offered in settlement; [e] the extent of discovery completed and the stage of the proceedings; [f] the experience and views of counsel; [g] the presence of a governmental participant; and [h] the reaction of the class members to the proposed settlement.

150 F.3d at 1026.  "The relative importance to be attached to any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique

---

[9] *See* Loeser Decl., ¶ 13, Ex. A (filed under seal). (*See* ECF No. 143)**.**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 9 -

facts and circumstances presented by the individual case." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citation omitted).  For the reasons discussed in *Plaintiffs'* Preliminary Approval Memorandum and the supplemental briefing thereto, as well as the discussion set forth below, the *Settlement* satisfies the *Hanlon* factors and should be approved as fair, reasonable, and adequate.

**A.    The Strength of Plaintiffs' Case**

*Plaintiffs* believe strongly in the merits of this case.  The information obtained through formal and informal discovery and described above demonstrates a compelling argument that *Defendants* knew or should have known that the valuation of SCI in connection with the 2008 Repurchase Transaction was fundamentally flawed, and that *Defendants* knew or should have known that Sitrick manipulated the financial accounting statements in his favor and at the expense of the *ESOP*.  *Plaintiffs* further believe that the evidence accumulated in discovery demonstrates that *Defendants* failed to act in a prudent manner and in the best interests of the *ESOP* by approving the 2008 Repurchase Transaction.  The discovery reveals that *Defendants* had full knowledge of Resources' term sheet that valued SCI at a substantially higher price before re-purchasing the *ESOP's* interest in SCI, yet nonetheless proceeded with the 2008 Repurchase Transaction.  Furthermore, *Plaintiffs* believe the evidence would show that each *Defendant* was a Plan fiduciary, yet failed to take any action to protect the *ESOP's* best interests as required by ERISA.

**B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Notwithstanding *Plaintiffs' Counsel's* views, further litigation presents a significant risk to both sides and would require considerable additional expenses.  If the parties were to continue litigating this case, both sides would need to spend hundreds of thousands of dollars in witness and expert depositions, summary

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 10 -

judgment briefings, and pre-trial preparation.  Moreover, proceeding through trial, and the likely subsequent appeals would undoubtedly require a significant undertaking by all parties.  Thus, the *Settlement* cuts short the additional months (if not years) of litigation, conserves judicial resources, and reduces the expense associated with continued litigation.

In addition, *Plaintiffs* recognize the risks of an adverse outcome, including the strong likelihood that Sitrick and SCI would not meet the earn-out provisions of the Resources deal.[10]  *Plaintiffs* also readily acknowledge that many of the complex factual and legal issues involved in this action are contested, as reflected by the three motions to dismiss filed by *Defendants*.  Indeed, the Court agreed with *Defendants'* arguments regarding *Plaintiffs'* allegations that Sitrick failed to bring a shareholder derivative action as fiduciary to the *ESOP*, and *Defendants* sought to capitalize on this ruling by arguing that *Plaintiffs'* claims were insufficient to the extent such claims were premised on certain corporate expenditures.

There were also significant complexities associated with *Plaintiffs'* ERISA § 404 claims against the *Sitrick Defendants* and *Reliance*.  The claims against both sets of *Defendants* required two different sets of proof, and *Defendants* presented solid factual and legal defenses against *Plaintiffs'* claims.  *Defendants* argued that the *ESOP* had in fact received adequate consideration at the time of the 2008 Repurchase Transaction, notwithstanding the term sheet for the Resources deal and the actual value SCI received from Resources in 2009.  The *Sitrick Defendants* argued that the decline in valuation of the *ESOP's* interest in SCI reflected changes in the overall economy—the 2008 Repurchase Transaction occurred in December, 2008 in the depths of the financial meltdown—and the departure of key SCI

---

[10]  Notably, the DOL indicated to *Plaintiffs' Counsel* that the *Settlement* does not settle or release any claims that the DOL may have against *Defendants* for past and future conduct.  Loeser Decl., ¶ 18, Ex. B.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 11 -

rainmakers between 1999 and 2008.  The *Sitrick Defendants* also argued that the bulk of the consideration received from the Resources transaction was for Sitrick's personal goodwill, as evidenced by the fact that Resources required Sitrick to enter into a long-term employment and non-compete argument.  Additionally, *Reliance* argued it lacked the requisite knowledge with respect to *Plaintiffs'* ERISA § 405 co-fiduciary liability claim.  Moreover, *Defendants* had proffered evidence to support their competing views of the case.

The Independent Fiduciary reviewing the *Settlement* also recognized these legal risks and the risks associated with SCI's likely failure to achieve the earn-out described above.  The Independent Fiduciary—who notably has extensive experience in serving as an ERISA independent fiduciary for ESOPs and other retirement vehicles—specifically indicates:

> [*Plaintiffs*] faced impediments to various components of their claims, including the issues of payment of excessive compensation as an ERISA fiduciary breach; the appropriateness of derivative actions and dividend characterization issues; and the scope of fiduciary monitoring responsibilities; equally limiting was the extreme unlikelihood that the Court would include in damages amounts relating to the contingent earn-out compensation which [*Defendants*] are now perceived as unlikely ever to receive.[11]

Thus, while *Plaintiffs* believe this is a strong case for *Plaintiffs*, the outcome of continued litigation remains uncertain, and the *Settlement* reflects *Plaintiffs'* consideration of this risk.  This factor weighs in favor of approving the *Settlement*.

## C.   The Risk of Maintaining Class Action Status Throughout the Trial

As described in *Plaintiffs'* supplemental brief in support of preliminary approval (*see* ECF No. 135 at 6), there is no requirement that participants of an ERISA plan proceed as a class under Rule 23 when bringing claims under ERISA

---

[11] *See* Loeser Decl., ¶ 19, Ex. C at 7.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 12 -

§§ 502(a)(2) and/or (a)(3).  Because *Plaintiffs* did not move for class certification, and in fact were not required to do so, this factor supports approval of the *Settlement* as there is no risk of maintaining class action status throughout this litigation.

**D.    The Amount Offered in Settlement**

The $6.25 million offered in the *Settlement* is an excellent recovery for the *ESOP*.  This amount takes into account a broad range of potential recovery based on various scenarios, as well as the possibility that *Defendants* could prevail on one or more of their legal or factual arguments.

As discussed above, *Plaintiffs* estimate that had the matter been litigated to a conclusion, they would have established damages of $5.1–$12.3 million, although there is a meaningful risk that the damages amounts could have been lower based on arguments advanced by *Defendants* regarding Sitrick's personal goodwill and regarding the appropriate adjustments to be made to EBITDA.  Thus, the $6.25 million settlement amount is approximately 123% greater than the low end of the likely damages range ($5.1 million), and over 50% of the high end ($12.3 million).[12]  *Plaintiffs' Counsel* submit that this is an extraordinary result and well in excess of the range that courts traditionally have found to be fair and adequate under the law.  *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with all defendants that comprised one sixth of plaintiffs' potential recovery); Richard M. Phillips & Gilbert C. Miller, *The Private Securities Litigation Reform Act of 1995: Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*, 51 Bus. Law. 1009,

---

[12]   As noted above, this range is neither discounted for the risk of not establishing liability, nor for the possibility that the Court would adopt a damages methodology that yields a smaller number, as *Defendants* undoubtedly would have argued for at trial.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 13 -

1029 & n.131 (1996) (finding that recoveries are typically within 7-11% of claimed losses).

   Additionally, as set forth in *Plaintiffs' Counsel* motion for attorneys' fees and costs, the proposed recovery for each participant is substantial.  Assuming the Court accepts *Plaintiffs' Counsel's* cap of 27.5% on fees and reimburses *Plaintiffs' Counsel* for expenses they advanced in prosecuting this litigation, there are 29 individuals who will receive over $50,000, 17 individuals who will receive over $100,000, and four individuals who will receive over $200,000.[13]  In fact, even two individuals who are on the lowest-end of the settlement will receive nearly $5,000.  The *Settlement* is unequivocally a meaningful recovery for the *ESOP* participants, and is in fact *more than 250%* of what the *ESOP* participants received as part of the 2008 Repurchase Transaction.  Indeed, the Independent Fiduciary hired by *Defendants* to review the *Settlement* has indicated that it "is reasonable and provides a very substantial recovery in the aggregate to participants."[14]

   As a result, because the *Settlement* provides a substantial recovery for each *ESOP* participant, and the overall amount far exceeds those typically found to be fair even when using a conservative damages model, this factor supports approval.

**E.   The Extent of Discovery Completed and the Stage of the Proceedings**

   Although there is no bright-line test for determining how much work needs to be done in a case for a court to evaluate a settlement, the extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of the case.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *Id.* at 528.

---

[13] *See Plaintiffs'* Motion for Attorneys' Fees at 12; *see also* Loeser Decl., Ex. A.
[14] *See* Loeser Decl., Ex. C at 7.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 14 -

Here, *Plaintiffs* have undertaken significant discovery as described above, including *inter alia*:  propounding Requests for Production and interrogatories; serving third parties with subpoenas for additional documents; obtaining public documents and information from other lawsuits; reviewing and coding tens of thousands of pages of documents; informally interviewing several individuals with knowledge of SCI; and retaining valuation experts to analyze the improper financial statements created by Sitrick.  *Plaintiffs* have also had the benefit of refining their case through four amended complaints after extensive briefing and litigation in connection with *Defendants'* motions to dismiss.  Based on motions practice and discovery, *Plaintiffs* have gained in-depth knowledge of the factual and legal issues of this case.  *Plaintiffs* and *Plaintiffs' Counsel* are fully aware of the strength of the claims and potential risks, and believe without hesitation that the *Settlement* is fair, reasonable, adequate, and in the best interest of the *ESOP*.

## F.   Experience and View of Counsel

The Ninth Circuit recognizes that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (internal quotation marks and citation omitted); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

Here, *Plaintiffs' Counsel* are highly experienced in litigating and settling ERISA breach of fiduciary duty claims in cases similar to this one.  *Plaintiffs' Counsel* have specific experience representing ESOPs against defendants who engage in prohibited transaction and otherwise engage in faulty valuations,

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 15 -

including several cases in this Circuit. *Plaintiffs' Counsel* have also tried several ESOP cases, and these experiences litigating cases to a jury verdict played an integral role in determining the appropriate settlement figure.[15] Based on this substantial experience with respect to ERISA— which notably also allowed *Plaintiffs' Counsel* to work efficiently—as well as the specific considerations presented under the facts and circumstances of this particular case, *Plaintiffs' Counsel* have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the *Court* for approval.

**G.      The Presence of a Governmental Participant**

In this case, the Government is not a party or a formal participant. However, the DOL has conducted its own investigation with respect to the *ESOP* and have indicated to *Plaintiffs Counsel* that they do not object to the *Settlement*.[16] To the extent the Court analyzes this factor, the DOL's view supports approval.

**H.      The Reaction of ESOP Participants to the Proposed Settlement**

*Plaintiffs* Richard Wool and Allan Mayer have been kept informed of the settlement negotiations throughout the settlement process. *Plaintiffs* support the *Settlement* and have given it their approval.[17] Moreover, the *Notice* approved by the Court was mailed to all 86 participants of the *ESOP* and a summary notice with relevant documents was published on a website maintained by *Plaintiffs' Counsel*. To date, only two participants have objected to the *Settlement*.

The first objector objected on the following grounds: that he believed he would not receive any allocation in the *Settlement*; that he believed he should have been credited for service after the termination of the *ESOP*; and that he believed his *ESOP* credit should have reflected certain compensation amounts to which he

---

[15] *See* Loeser Decl., ¶¶ 15-16, 53-56, Ex. G.

[16] *Id.*, Ex. B.

[17] *Id.*, ¶ 17.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 16 -

believed he was entitled but not paid.  (ECF No. 139).  *Plaintiffs' Counsel* reviewed the objection, and has spoken with the objector and provided him with information regarding his participation in the *ESOP*.  *Plaintiffs' Counsel* informed the objector that under the proposed *Plan of Allocation*, he would in fact receive an allocation of a portion of the *Settlement* proceeds proportionate to his share of the 2008 Repurchase Transaction proceeds.  The objector was also informed that there was no basis in ERISA to credit him for service after the termination or to credit his *ESOP* account for compensation he did not receive.  *Plaintiffs' Counsel* believes that they have fully responded to the objector's concerns, and have invited him to contact them if he has further questions or concerns.

In addition, a second individual submitted an anonymous and unsigned objection to the Court that was received on March 19, 2012, indicating the he or she believes the *Settlement* is too low and the attorneys' fees requested are too high.  (ECF No. 141).  As a preliminary matter, it must be noted that an anonymous objection is highly irregular and as a general matter should be disregarded.  *See In re Train Derailment,* No. Civ.A MDL 1531, 2006 WL 644494, at *4 (E.D. La. Jan. 27, 2006) ("Non-written objections, untimely objections, incomplete objections, and unsigned objections to the proposed settlement will not be considered by the Court.").  Indeed, the *Notice* provided specific instructions for *Affected Participants* to include "name, address, telephone number [and] signature."[18]

Moreover, even if the second objection is considered, it is without merit. For the reasons discussed above with respect to the potential damages that can be recovered here, as well as the potential hurdles *Plaintiffs* faced with respect to proving their case, the suggestion that *ESOP* participants are not receiving full

---

[18] *See* Loeser Decl., Ex. D.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 17 -

1  value for the *Settlement* is simply untenable.  Nor is there any merit to the

2  objector's suggestion that *Plaintiffs' Counsel* request for compensation is

3  excessive.  *Plaintiffs' Counsel* dedicated considerable time and effort to the case,

4  and achieved an excellent result for the *Plaintiffs*.  *Plaintiffs' Counsel* bore the

5  entire financial risk of prosecuting this litigation, and pursuant to the common fund

6  doctrine, *Plaintiffs' Counsel* should be compensated for creating the benefit to the

7  *Affected Participants*.  As such, the Court can fully and finally endorse the

8  *Settlement* as fair and reasonable despite these objections.

9      The fact that no other objections have been filed demonstrates that the

10  participants strongly support the *Settlement*.  *Nat'l Rural Telecomms. Coop*., 221

11  F.R.D. at 528 ("'The reactions of the members of a class to a proposed settlement

12  is a proper consideration for the trial court.'" (quoting 5 MOORE'S FEDERAL

13  PRACTICE § 23.85[2][d]) (3d ed. 1997)).  Accordingly, the fairness, reasonableness,

14  and adequacy of the *Settlement* are well supported by *ESOP* participants' reactions,

15  as well the factors discussed above.

16  **IV.    THE FORMS AND METHODS OF NOTICE WERE REASONABLE**
17  **AND SATISFIED RULE 23 AND DUE PROCESS**

18      While this is not a class action, because the *Settlement* affects the rights of

19  non-*Plaintiff* ESOP participants, *Plaintiffs* submit that it is appropriate to evaluate

20  notice of the settlement in accordance with principles of due process that apply in

21  the class action setting.  To satisfy due process, notice must be "reasonably

22  calculated under all the circumstances, to apprise interested parties of the pendency

23  of the action and afford them an opportunity to present their objections."  *Mullane*

24  *v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Marshall*

25  *v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977) (finding that due

26  process requires notice to "present a fair recital of the subject matter and proposed

27

28

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 18 -

terms and give[] an opportunity to be heard to all class members"). Notice is
proper if it provides:

> (a) the material terms of the proposed settlement; (b) disclosure of any
> special benefit to the class representatives; (c) disclosure of the
> attorneys' fees provisions; (d) the time and place of the final approval
> hearing and the method for objecting to the settlement; (e) an
> explanation regarding the procedures for allocating and distributing
> the settlement funds; and (f) the address and phone number of class
> counsel and the procedures for making inquiries.

*Rodriguez v. West Pub. Corp*, No. CV05-3222, 2007 WL 2827379, at *6 (C.D.
Cal. Sep. 10, 2007) (citations omitted) *rev'd on other grounds by* 563 F.3d 948
(9th Cir. 2009).

Here, the *Notice* satisfies all applicable criteria described above. It describes
the terms and operation of the *Settlement Agreement*, the considerations that
caused *Plaintiffs* and *Plaintiffs' Counsel* to conclude that the *Settlement* is fair and
adequate, the maximum attorneys' fees and expenses that may be sought, the
procedure for objecting to the *Settlement*, and the date and place of the *Fairness
Hearing*. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §
8.32 (4th ed. 2002). Furthermore, the *Notice* was mailed within seven (7) days
after the *Court* directed *Plaintiffs* to effectuate *Notice*, and the *Notice* fairly
apprised all *Affected Participants* of the details of the *Settlement*. *Plaintiffs'
Counsel* also created a website informing all *Affected Participants* of the
*Settlement* and their rights and options thereto. Under such circumstances, the
*Notice* satisfies due process requirements. *See Silber v. Mabon,* 18 F.3d 1449,
1452-54 (9th Cir. 1994) (approving notice by first class mail as the "best notice
practicable"); *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir.
1980), *rev'd on other grounds*, 475 U.S. 717 (1986) (stating that notice is adequate

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 19 -

if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").[19]

Consistent with *In re Mercury Interactive Corp. Sec. Litig.*, the *Notice* also allows *Affected Participants* with the ability to object to this motion and "to review and prepare objections to class counsel's completed fee petition."  618 F.3d 988, 994-95 (9th Cir. 2010).  *Affected Participants* will specifically be allowed to file their objections to the *Settlement* and *Plaintiffs' Counsel's* motion for attorneys' fees and expenses no later 21 days prior to the *Fairness Hearing*, or April 2, 2012.  If any objections are filed, *Plaintiffs' Counsel* will respond to those in a reply brief no later than 14 days prior to the *Fairness Hearing*.  This time frame comports with the Local Rules of the Court.  *See Mercury*, 618 F.3d at 995, n.2

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

In connection with final approval of the *Settlement*, *Plaintiffs* also request that the Court approve the proposed *Plan of Allocation* of the *Settlement Fund*. The *Plan of Allocation* is an efficient means of fairly distributing the *Settlement Fund* among the *ESOP's* participants in proportion with their losses.

Like the *Settlement*, the *Plan of Allocation* should be fair, reasonable, and adequate.  *In re Chicken Antitrust Litig.*, 669 F.2d 228, 240 (5th Cir. 1982).  An appropriate plan of allocation should not be overly complex and it should be responsive to the interests of the beneficiaries of the common fund in the litigation. Thus, "[a] plan of allocation that reimburses [plaintiffs] based on the extent of their

---

[19] *Plaintiffs' Counsel* has received one returned *Notice* since mailing the *Notice* on February 17, 2012.  *Plaintiffs' Counsel* asked the *Sitrick Defendants* for more information and are conducting their own internal investigation to locate this individual.  In any event, "[i]t is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]

- 20 -

injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. Jun. 18, 1994). Courts give "substantial weight to the opinions of experienced counsel . . . regarding the fairness" of an allocation. *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).

Here, the *Plan of Allocation* was designed by experienced *Plaintiffs' Counsel* who have prepared similar plans for numerous other cases.[20] The *Plan of Allocation* reflects *Plaintiffs' Counsel's* informed consideration of the relevant legal and factual matters pertaining to each *Affected Participant's* claims. It provides recovery to all *Affected Participants*, net of administrative expenses and attorneys' fees and expenses that the Court may choose to award, on a pro rata basis according to their recognized claims of damages. No *Affected Participant* is singled out for either disproportionately favorable or unfavorable treatment; all participate in recoveries pursuant to the *Plan of Allocation* in the same manner.

Generally, each *Affected Participant* will receive the same percentage (the *Applicable Percentage*) of the *Settlement Fund* after attorneys' fees and expenses that he or she received in connection with the 2008 Repurchase Transaction. As set forth previously, *Plaintiffs' Counsel* left the *Applicable Percentage* for each *Affected Participant* blank in order to maintain confidentiality amongst and between the *ESOP* participants. To date, *Plaintiffs' Counsel* have received no objections to the proposed *Plan of Allocation* or manner in which the *Applicable Percentage* will be employed, both of which were described in the *Notice* and posted on the *Settlement* website. *Plaintiffs' Counsel* believe the proposed *Plan of Allocation* is fair, reasonable, and not unduly complicated or expensive. Accordingly, *Plaintiffs* request that the Court adopt and approve it.

---

[20] *See* Loeser Decl., ¶¶ 28-33.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 21 -

## VI.   CONCLUSION

For the reasons set forth above, the *Settlement* is a fair, adequate, and a reasonable resolution of the claims asserted against *Defendants* in this action. Thus, *Plaintiffs* respectfully request that the *Court* grant final approval of the *Settlement*, determine that the forms and methods of Notice to the *ESOP's* participants were appropriate and sufficient, and approve the proposed *Plan of Allocation* of the *Settlement Fund*.  A proposed form of Order and Final Judgment has been filed concurrently herewith.

DATED this March 26, 2012.


Respectfully submitted,


/s/ Derek W. Loeser_____
KELLER ROHRBACK, P.L.C.
Gary A. Gotto
ggotto@krplc.com
Gary D. Greenwald
ggreenwald@krplc.com
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
Tel: (602) 248-0088 • Fax: (602) 248-2822

KELLER ROHRBACK L.L.P.
Derek W. Loeser
dloeser@kellerrohrback.com
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel: (206) 623-1900 • Fax: (206) 623-3384

Michael D. Braun (167416)
service@braunlawgroup.com
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, CA  90064

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 22 -

Tel: (310) 836-6000 • Fax: (310) 836-6010

*Attorneys for Plaintiffs*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT, NOTICE AND PLAN OF ALLOCATION [NO. 2:10-CV-02741-JHN-PJWX]**

- 23 -